## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HILLCREST CHILDREN'S CENTER** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **GIBRALTAR ASSET MANAGEMENT GROUP, LLC,** | ) **Case No. 11-cv-223-JEB** |
| **GIBRALTAR ASSET MANAGEMENT GROUP, INC.,** | ) |
| **GARFIELD TAYLOR,** | ) |
| **JEFFREY A. KING,** | ) |
| **MAURICE TAYLOR,** | ) |
| **RANDOLPH TAYLOR,** | ) |
| **BENJAMIN DALLEY,** | ) |
| **STUART H. GARY,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **GARY & REGENHARDT PLLC,** | ) |
| | ) |
| **Defendants** | ) |

## HILLCREST CHILDREN'S CENTER'S MEMORANDUM OF FACT AND LAW IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS GIBRALTAR ASSET MANAGEMENT GROUP, LLC, GIBRALTAR ASSET MANAGEMENT GROUP, INC., AND GARFIELD TAYLOR

Joel S. Green, Esq.
D.C. Bar No. 493912
WILMER CUTLER PICKERING
  HALE and DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6936
Facsimile:  (202) 663-6363

*Attorney for Plaintiff, Hillcrest*
*Children's Center*

November 16, 2012

# <u>TABLE OF CONTENTS</u>

BACKGROUND FACTS ................................................................................................1

ARGUMENT ..............................................................................................................8

    I.   THIS COURT SHOULD ENTER A JUDGMENT BY
        DEFAULT AGAINST THE DEFAULT DEFENDANTS .........................................8

        A.   Entry of Default Judgment Against Default Defendants is Appropriate .............8

        B.   Counts I and II — Breach of Contract Against All Default Defendants .............9

        C.   Counts III and IV — Breach of the Implied Covenant of
            Good Faith and Fair Dealing Against All Default Defendants ..........................10

        D.   Count V — Breach of Fiduciary Duty Against All Default Defendants ............12

        E.   Count VI — Promissory Estoppel in the Alternative to
            Breach of Contract Against All Default Defendants ..........................................14

        F.   Count VII — Fraudulent Inducement of Contract
            Against All Default Defendants ........................................................................16

        G.   Count VIII — Fraud Against Gibraltar and Taylor ...........................................18

        H.   Count IX — Conspiracy to Commit Fraud Against Taylor ...............................20

        I.   Counts X and XI — Conversion Against All Default Defendants ....................21

        J.   Counts XII and XIII — Negligent Misrepresentation
            Against All Default Defendants ........................................................................22

        K.   Count XIV — Securities Fraud (§ 10(b) and Rule 10b-5)
            Against Taylor and Gibraltar ...........................................................................24

        L.   Count XV — Securities Fraud: Violation of
            D.C. Code § 31-5605.05(a)(3) Against All Default Defendants .......................26

        M.   Count XVI — Unjust Enrichment in the Alternative to
            Breach of Contract Against All Default Defendants ........................................27

    II.   Default Judgment Should be Entered Against the Default Defendants
        in the Amount of $6,603,536, Plus Pre- and Post-Judgment Interest .........................28

        A.   This Court Should Award $6,603,536 in Damages for the
            Loss of Hillcrest's Principal Investment ..........................................................28

        B.   Hillcrest Should be Awarded Pre- and Post-Judgment Interest ........................29

CONCLUSION................................................................................................................................30

## TABLE OF AUTHORITIES

### CASES

*4934, Inc. v. Dist. of Columbia Dep't of Emp't Servs.,*
   605 A.2d 50 (D.C. 1992) ........................................................................................27

*Abrahamson v. Fleschner,*
   568 F.2d 862 (2d Cir. 1977)...................................................................................12

*Adkins v. Teseo,*
   180 F. Supp. 2d 15 (D.D.C. 2001) .........................................................................28

*Allworth v. Howard Univ.,*
   890 A.2d 194 (D.C. 2006) ...............................................................................10, 11

*Armenian Genocide Museum and Mem'l, Inc. v. Cafesjian Family Found., Inc.,*
   607 F. Supp. 2d 185 (D.D.C. 2009).......................................................................12

*Bennett v. Kiggins,*
   377 A.2d 57 (D.C. 1977) .......................................................................................18

*Breaking the Chain Found., Inc. v. Capitol Ed. Support, Inc.,*
   589 F. Supp. 2d 25 (D.D.C. 2008) ..........................................................................9

*Burlington Ins. Co. v. Okie Dokie, Inc.,*
   329 F. Supp. 2d 45 (D.D.C. 2004)...................................................................22, 23

*Burman v. Phoenix Worldwide Indus.,*
   384 F. Supp. 2d 316 (D.D.C. 2005).......................................................................22

*Busby v. Capital One, N.A.,*
   772 F. Supp. 2d 268 (D.D.C. 2011)...........................................................19, 20, 21

*Ca de Lupis v. Bonino,*
   2010 WL 1328813 (D.D.C. Mar. 31, 2010)...........................................................18

*Calvetti v. Antcliff,*
   346 F. Supp. 2d 92 (D.D.C. 2004) .........................................................................21

*Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC,*
   498 F. Supp. 2d (D.D.C. 2007) ..........................................................................9, 28

*Curaflex Health Servs., Inc. v. Bruni,*
   877 F. Supp. 30 (D.D.C. 1995) ..............................................................................21

*Day v. Avery,*
    548 F.2d 1018 (D.C. Cir. 1976) ........................................................................26

*Dist. Cablevision Ltd. P'ship v. Bassin,*
    828 A.2d 714 (D.C. 2003) ...............................................................................30

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005)..........................................................................................24

*EastBanc, Inc., v. Georgetown Park Assocs. II, L.P.,*
    940 A.2d 996 (D.C. 2008) ...............................................................................14

*Fed. Mktg. Co. v. Virginia Impression Prods. Co., Inc.,*
    823 A.2d 513 (D.C. 2003) ...............................................................................29

*Flynn v. Mastro Masonry Contractors,*
    237 F. Supp. 2d 66 (D.D.C. 2002) ...................................................................28

*Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.,*
    944 A.2d 1055 (D.C. 2008) .............................................................................18

*Greenwich Ins. Co. v. ICE Contractors, Inc.,*
    541 F. Supp. 2d 327 (D.D.C. 2008)...................................................................9

*Griffith v. Barnes,*
    560 F. Supp. 2d 29 (D.D.C. 2008)..............................................................29, 30

*Gutierrez v. Berg Contracting Inc.,*
    No. 99-3044, 2000 WL 331721 (D.D.C. Mar. 20, 2000) ...................................8

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. 1983) ...............................................................................20

*Hanley-Wood LLC v. Hanley Wood LLC,*
    783 F. Supp. 2d 147 (D.D.C. 2011) ...................................................................8

*Hill v. Medlantic Health Care Grp.,*
    933 A.2d 314 (D.C. 2007) ...............................................................................20

*In re Fannie Mae Sec. Litig.,*
    503 F. Supp. 2d 25 (D.D.C. 2007) ...................................................................25

*In re McKenney,*
    953 A.2d 336 (D.C. 2008) ...............................................................................16

*Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC,*
    531 F. Supp. 2d 56 (D.D.C. 2008) .................................................................8, 9

*Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*,
   808 F. Supp. 2d 89 (D.D.C. 2011) ........................................................................9

*Jackson v. Beech,*
   636 F.2d 831 (D.C. Cir. 1980) .............................................................................8

*Jacobs v. Dist. Unemp't Comp. Bd.*,
   382 A.2d 282 (D.C. 1978) ............................................................................18, 19

*Kauffman v. Int'l Brotherhood of Teamsters,*
   950 A.2d 44 (D.C. 2008) ...................................................................................14

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*,
   786 F. Supp. 2d 240 (D.D.C. 2011) ...................................................................10

*Libby v. L. J. Corp.*,
   247 F.2d 78 (D.C. Cir. 1957) .............................................................................14

*Matrixx Initiatives, Inc. v. Siracusano*,
   131 S.Ct. 1309 (2011) .......................................................................................24

*McWilliams Ballard, Inc. v. Level 2 Dev.*,
   697 F. Supp. 2d 101 (D.D.C. 2010) ...................................................................16

*Media Gen., Inc. v. Tomlin*,
   2001 WL 1230880 (D.D.C. Aug. 9, 2001) .........................................................18

*News World Communications, Inc. v. Thompsen*,
   878 A.2d 1218 (D.C. 2005) ...............................................................................27

*Nugent v. Unum Life Ins. Co. of America*,
   752 F. Supp. 2d 46 (D.D.C. 2010) ...............................................................10, 11

*O'Callaghan v. Dist. of Columbia,*
   741 F. Supp. 273 (D.D.C. 1990) ........................................................................21

*P. Erica John Fund, Inc. v. Halliburton Co.,*
   131 S.Ct. 2179 (2011) .......................................................................................25

*Paul v. Howard Univ.,*
   754 A.2d 297 (D.C. 2000) .................................................................................11

*Paul v. Judicial Watch, Inc.*,
   543 F. Supp. 2d 1 (D.D.C. 2008) .......................................................................12

*Powell v. Dist. of Columbia Hous. Auth.,*
   818 A.2d 188 (D.C. 2003) .................................................................................18

*Redmond v. State Farm Ins. Co.*,
  728 A.2d 1202 (D.C. 1999) ............................................................................... 22

*Riggs Nat'l Bank v. District of Columbia*,
  581 A.2d 1229 (D.C. 1990) ............................................................................... 30

*Rodriguez v. Dist. of Columbia Dept. of Emp't Servs.*,
  452 A.2d 1170 (D.C. 1982) ............................................................................... 18

*Savoy Const. Co., Inc. v. Atchison & Keller, Inc.*,
  388 A.2d 1221 (D.C. 1978) ............................................................................... 21

*SEC v. Bolla*,
  401 F. Supp. 2d 43 (D.D.C. 2005), *aff'd in part sub nom*, *SEC v. Washington Inv. Network*, 475 F.3d 392 (D.C. Cir. 2007), *vacated on other grounds*, *SEC v. Bolla*, 550 F. Supp. 2d 54 (D.D.C. 2008) ............................................................................... 12

*SEC v. Moran*,
  922 F.Supp. 867 (S.D.N.Y. 1996) ...................................................................... 12

*SEC v. Steadman*,
  967 F.2d 636 (D.C. Cir. 1992) ........................................................................... 25

*Simard v. Resolution Trust Corp.*,
  639 A.2d 540 (D.C. 1994) ................................................................................. 14

*Simms v. Dist. of Columbia*,
  699 F. Supp. 2d 217 (D.D.C. 2010) ................................................................... 22

*Sind v. Pollin*,
  356 A.2d 653 (D.C. 1976) ................................................................................. 14

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008) ..................................................................................... 24, 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .......................................................................................... 24

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*,
  109 F.3d 105 (2d Cir. 1997) .............................................................................. 28

*United States v. O'Hagan*,
  521 U.S. 642 (1997) .......................................................................................... 24

*United States. v. Philip Morris USA Inc.*,
  566 F.3d 1095 (D.C. Cir. 1996) ......................................................................... 18

*Virginia Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs.*,
  878 A.2d 1226 (D.C. 2005) ..................................................................16

*Weishapl v. Sowers*,
  771 A.2d 1014 (D.C. 2001) ..................................................................20

*Willens v. 2720 Wisconsin Ave. Coop. Ass'n, Inc.*,
  844 A.2d 1126 (D.C. 2004) ..................................................................10

## STATUTES

15 U.S.C. § 78j ..........................................................................................24, 26

15 U.S.C. § 80b-2(a)(11) ...........................................................................12

28 U.S.C. § 1961 ........................................................................................30

D.C. Code § 28-2203(a) .............................................................................30

D.C. Code § 28-2203(c) .............................................................................30

D.C. Code § 28-3302 ..................................................................................30

D.C. Code § 31-5605.05(a)(3) ...................................................................26

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5 ................................................................................24

Federal Rule of Civil Procedure 55(b)(2) .......................................1, 8, 9, 28

Restatement (Second) of Torts ....................................................................22

*Restatement (Second) of Torts* § 538(2)(a) (1977) .....................................18

*Restatement (Second) of Torts* § 552 (1977) .............................................23

*Restatement (Third) of Restitution and Unjust Enrichment* § 29 ................27

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff, Hillcrest Children's Center ("Hillcrest"), through its counsel, files this Memorandum of Fact and Law in Support of its Motion for Entry of Default Judgment against Gibraltar Asset Management Group, LLC ("Gibraltar"), Gibraltar Asset Management Group, Inc. ("Gibraltar Inc."), and Garfield Taylor ("Taylor," and collectively with Gibraltar and Gibraltar Inc., the "Default Defendants") for damages and interest incurred by Hillcrest.

## BACKGROUND FACTS

As the Court is aware from the filings in this matter, Hillcrest, a non-profit organization serving the needs of families and children in the District of Columbia (*see* Compl. ¶ 13, ECF No. 1 (the "Complaint")), was victimized by a Ponzi scheme created and led by the Default Defendants. Through this Ponzi scheme, the Default Defendants defrauded Hillcrest out of $8 million and substantially depleted Hillcrest's endowment, which was a primary source of funds on which Hillcrest relied at the time. *Id.* ¶ 26.

### Hillcrest Contracted with Gibraltar Inc. for a $1.2 Million Investment

In the spring of 2008, Hillcrest considered whether it should invest a portion of its endowment with new investment advisers. *Id.* ¶ 27. After vetting multiple investment advisers, Hillcrest's Board of Directors elected to invest $1.2 million from Hillcrest's endowment with Gibraltar Inc.[1] *Id.* ¶¶ 48-49. Hillcrest based its investment decision on the written and verbal representations of the Default Defendants. The following promises and representations, which are further detailed in the Complaint, were made to Hillcrest's Board by the Default Defendants orally or in writing prior to Hillcrest's investment:

---

[1]     Hillcrest has not received any information during discovery suggesting that Gibraltar Asset Management Group, Inc. was a separate and distinct entity from Gibraltar Asset Management Group, LLC. In fact, an email from defendant Benjamin Dalley confirms that the two entities are the same, and that a reference to Gibraltar Inc. was a "typo." *See* Exhibit 1 at 1 (email from Mr. Dalley to Elaine Crider, Hillcrest Board member, dated Aug. 6, 2008). Because Gibraltar and Gibraltar Inc. are the same entity, the representations made by Gibraltar Inc. should also be considered to be the representations of Gibraltar.

- Gibraltar would protect the principal of Hillcrest's investment, which would "stay intact," "[l]ike an endowment";

- Gibraltar would return all of Hillcrest's $1.2 million principal investment;

- Gibraltar would manage Hillcrest's investment solely by using its proprietary covered call strategy;

- Gibraltar would "ALWAYS LIMIT[]" risk;

- Gibraltar would "totally control our downside risk";

- Gibraltar's proven proprietary trading strategy offered "a low risk, high yield alternative to mutual funds, index funds, and other investment options"; and

- "Gibraltar implements a profit protection strategy to ensure that gains are not lost in the market."

Ex. 2 at 2-6, 10, 23-27 (copy of presentation that Default Defendants provided to Hillcrest); *see* Compl. ¶¶ 30-38, 42. During these meetings with Hillcrest's Board, Taylor also emphasized his own trading experience and Gibraltar's prior experience managing investments on behalf of local nonprofits and churches. Compl. ¶ 32. Following these meetings, the Default Defendants provided Hillcrest with other written materials that detailed the investment returns Hillcrest would receive if Hillcrest invested with the Default Defendants. *Id.* ¶¶ 39-40.

In addition to the representations and promises outlined above, the Default Defendants also provided seemingly reliable and reasoned answers in response to Hillcrest's questions. For example, Hillcrest board members asked how the Default Defendants could produce such favorable returns given the weak financial market and why other investment advisers were not engaging in the same covered call strategy, if the strategy was so successful. *Id.* ¶ 44. Taylor responded by explaining the complicated nature of the strategy and stating that other investment advisers did not have the time, knowledge, or experience to execute Gibraltar's "proprietary" trading strategy. *Id.* ¶¶ 45-46. Hillcrest believed—based on the information provided by the

Default Defendants—that Gibraltar, Taylor, and his associates were legitimate investment managers.

On July 14, 2008, based on the Default Defendants' representations, Hillcrest invested $1.2 million via a promissory note (the "Note," attached as Exhibit 3) as a "trial" investment. *Id.* ¶ 49. The Note provided that Gibraltar Inc. would pay Hillcrest monthly interest payments of $20,000 for a six-month term and return to Hillcrest the $1.2 million principal on January 14, 2009. Ex. 3 at 1. Hillcrest discharged its contractual obligations by loaning $1.2 million to Gibraltar Inc. *See* Ex. 4 (check from Hillcrest to Gibraltar Asset Management, dated July 10, 2008, for $1.2 million). In order to induce Hillcrest to make a larger investment, Gibraltar Inc. made six payments of $20,000 each to Hillcrest, ostensibly in accordance with the Note's terms. Compl. ¶¶ 50-54, 66-67. As explained below, once the Default Defendants' plan had worked and Hillcrest agreed to a larger investment, the Default Defendants stole the $1.2 million principal investment, in direct violation of the Note's terms. *Id.* ¶ 99.

### Hillcrest Contracted with Gibraltar for an $8 Million Investment

Based on the Default Defendants' purported performance with the $1.2 million trial investment and additional representations from Gibraltar and Taylor in the fall of 2008 (*see Id.* ¶¶ 55-69), Hillcrest's Board decided to place a second, much larger investment with Gibraltar. *Id.* ¶¶ 83-84. For this investment, Hillcrest would loan $8 million to a special purpose entity ("SPE"), Hillcrest Funding LLC, which was to be deposited into a trading account at Charles Schwab (the "Trading Account").[2] Taylor, as the Operations Manager appointed by Gibraltar SPE, LLC (the joint owner of Hillcrest Funding LLC), would manage the Trading Account for

---

[2]       Although Hillcrest loaned the $8 million to Hillcrest Funding LLC and not Gibraltar, as admitted by Taylor and Gibraltar, Hillcrest Funding LLC was the alter ego of Gibraltar and Taylor. Compl. ¶¶ 112-116. As detailed in the Complaint, Hillcrest Funding LLC was located in the same office space as Gibraltar, shared the same principal place of business, had the same offices and agents, comingled assets, and admittedly treated itself as an interchangeable entity with Taylor and Gibraltar. *Id.* Accordingly, breaches by Hillcrest Funding LLC amount to breaches committed by Taylor and Gibraltar.

Hillcrest's benefit using only Gibraltar's propriety covered call trading strategy.  *Id.* ¶¶ 73-74. Gibraltar and Taylor represented that by following their strategy, Hillcrest's $8 million principal would stay intact and Hillcrest would receive a monthly interest payment of $200,000.  *Id.* Furthermore, no withdrawals from the Trading Account could be made without the approval of the two Administrative Security Managers, both of which were to be appointed by Hillcrest SPE, LLC (the other joint owner of Hillcrest Funding LLC).  *Id.* ¶ 76.  In addition to the foregoing representations regarding strategy, risk, and return, Taylor and Gibraltar made the following promises and misrepresentations before Hillcrest invested the $8 million:

- Gibraltar would protect the principal of the $8 million investment;

- Gibraltar would transfer Hillcrest's $1.2 million trial investment to be part of the $8 million;

- Hillcrest would retain control over the $8 million principal;

- Taylor, the Operations Manager, would provide monthly reports to Hillcrest; and

- Gibraltar would establish a reserve account that would not be traded and would function as collateral or security for Hillcrest's loan to Hillcrest Funding LLC.

*See* Ex. 5 (PowerPoint presentation, entitled "Transaction Structure Presentation to Hillcrest Children's Center").  Hillcrest would not have invested the $8 million absent any of these representations.  The problem was that not a single one of these representations was true:  the Default Defendants designed the investment structure to strip Hillcrest of any control or authority, thereby allowing the Default Defendants to loot the Trading Account.

On February 28, 2009, Hillcrest and Hillcrest Funding LLC—the alter ego of Taylor and Gibraltar (*see supra* at 4 n.2)—signed the Loan and Security Agreement (the "Loan Agreement," attached as Exhibit 6) and the Operating Agreement (attached as Exhibit 7).  Compl. ¶¶ 87-88. As required by the Loan Agreement, Hillcrest authorized the transfer of $8,003,486.78 into the Trading Account.  This approximate $8 million investment was supposed to include the $1.2

million "trial" investment from Hillcrest, which Hillcrest instructed Gibraltar and Taylor to transfer into the Trading Account. *Id.* ¶¶ 84, 88-92. Hillcrest's accountant, Jerome Jackson, sent Taylor a memorandum in May 2009 confirming that Hillcrest had transferred the funds to the Trading Account. *See* Ex. 8 (memorandum from Jerome Jackson to Gibraltar and Taylor detailing Hillcrest's transfers of $8,003,486.78 and requesting access to the Trading Account).

### Gibraltar and Taylor Steal Hillcrest's $8 Million Investment

Once Hillcrest funded the second investment, the Default Defendants defaulted on both the Loan Agreement and the Operating Agreement by refusing to provide Hillcrest with the promised account statements, failing to execute the covered call strategy, and most importantly, looting the Trading Account by withdrawing millions of dollars without Hillcrest's knowledge or consent. Compl. ¶¶ 102-106. As detailed in the Complaint (*id.* ¶¶ 95-98) and the Expert Report submitted by Mr. Martin S. Wilczynksi (the "Report," attached as Exhibit 9), Gibraltar and Taylor "withdrew or transferred approximately $7.65 Million in withdrawals (or transfers to accounts not controlled by Hillcrest)," which "resulted in a loss of $6.6 million in principal for Hillcrest Children's Center, and between $1.3 million and $5.0 million in interest on the principal entrusted to the representatives of [Gibraltar]."[3]   Ex. 9 at 8; *see also* Ex. 10 (compilation of monthly statements from March to June 2009 for the Trading Account).[4]   The unauthorized withdrawals began on March 10, 2009, when Taylor and Gibraltar stole $300,000 from the Trading Account. Ex. 10 at 2. In March 2009, Taylor and Gibraltar stole a total of

---

[3]      In addition, the Loan Agreement required Hillcrest Funding LLC to maintain Hillcrest's collateral, maintain financial statements, books, and records, and provide Hillcrest with third-party reports, including those generated by Charles Schwab, within five days of their receipt by Taylor. Ex. 6 at ¶¶ 5-7, 10. However, Taylor and Gibraltar failed to do so and Taylor refused to provide Hillcrest with the account statements even after the Trading Account was fully funded and Hillcrest demanded the statements. Compl. ¶¶ 93, 95, 97. Without these account statements, Hillcrest was prevented from learning about and stopping the unauthorized withdrawals and transfers.

[4]      Charles Schwab Account 97629251 is a Charles Schwab account registered to Hillcrest. The journal transfers from this account shown in the March and April statement excerpts (Ex. 10 at 2, 8) evidence the transfers Hillcrest made to the Trading Account. All transfers listed as "Wired Funds Disbursed" and "Journal to 12807100" are withdrawals and transfers made by Gibraltar and Taylor to accounts outside of Hillcrest's control.

$1.65 million from Hillcrest. *Id. See also* Ex. 9 at 12. In April 2009, Taylor and Gibraltar stole an additional $1.9 million from Hillcrest. Ex. 10 at 8. In May 2009, Taylor and Gibraltar stole $3.1 million from Hillcrest. *Id.* at 15. During this time, Taylor refused to provide Hillcrest with the promised account statements until July 2009. Compl. ¶¶ 93-94. As a result, each of these transfers and withdrawals were made without the knowledge or consent of Hillcrest's board members or the administrative security managers who were to be appointed by Hillcrest, and directly violated the terms of the Operating Agreement.[5]

Moreover, Gibraltar and Taylor represented that Hillcrest's $8 million investment would be traded using Gibraltar's proprietary, safe, and proven covered call strategy. Compl. ¶ 73. Gibraltar and Taylor failed to do this. *Id.* at ¶¶ 100-01. In fact, Mr. Wilczynksi concluded that "none of the approximate 2,750 trades [in the Trading Account] were executed consistent with this strategy." Ex. 9 at 14. Finally, the Default Defendants kept Hillcrest's initial $1.2 million investment and never transferred it to the Trading Account. Compl. ¶ 99.

In July 2009, after finally receiving the account statements, Hillcrest confronted Taylor and Gibraltar about the unauthorized withdrawals and risky trading. In response, Taylor admitted to removing profits from the Trading Account, allowing the account balance to fall

---

[5]     The Operating Agreement provided that no withdrawals could be made unless four conditions were met: (1) an amount equal to the original principal of the $8 million Hillcrest Loan would remain in the Trading Account after the proposed withdrawal; (2) Hillcrest Funding LLC was not in default under the Hillcrest Loan; (3) Hillcrest Funding LLC's Purpose (defined as owning, managing, and growing its assets) was not impeded, impaired, or otherwise harmed; and (4) the Reserve Account was funded to 25% of the Hillcrest Principal. Ex. 9 at 10-13; *see also* Ex. 7 at ¶¶ 4.2(b), 5.2(a)(iv). According to the Report, all of Taylor and Gibraltar's withdrawals from March to August 2009 failed to satisfy one or more of the four criteria. Ex. 9 at 13. Regarding the last criteria, Mr. Wilczynksi was unable to determine "the actual status, ownership and activity conduced within Charles Schwab Account 12807100," the account that Gibraltar and Taylor represented was the Reserve Account. Ex. 9 at 12 n. 28; *see* Ex. 11 (Taylor and Gibraltar explaining to Hillcrest that funds were journaled into Hillcrest's reserve account).

After Mr. Wilczynksi published the Report, Hillcrest received account statements verifying that the alleged Reserve Account was not created for Hillcrest Funding LLC. Rather, the account belonged to Garfield Taylor, Inc., an entity created and owned by Garfield Taylor that operated as a Ponzi scheme. *See SEC v. Garfield Taylor, Inc.,* 1:11-cv-2054, Compl. ¶¶ 1-2, 38-39, 43, 84-89, ECF No. 1 (complaint by the SEC against Garfield Taylor, Inc. and others alleging that Garfield Taylor, Inc. and Gibraltar were Ponzi schemes created and operated by Taylor). Therefore, the last criterion for withdrawals was never satisfied because the Reserve Account for Hillcrest Funding LLC did not exist and instead served as the trading account for a related Ponzi scheme. *See* Ex. 12 (compilation of excerpts from Garfield Taylor Inc.'s monthly statements showing transfers from Hillcrest's Trading Account).

below the principal investment, and trading the funds from the Reserve Account.   Compl.

¶¶ 105-06;  *see also*  Ex. 11 (Taylor and Gibraltar's memorandum to Hillcrest explaining

withdrawals and loss of Hillcrest's principal).   Gibraltar and Taylor's actions violated the

Operating Agreement, and caused Hillcrest to lose its entire $8 million investment.

**Hillcrest Provides Notice of Default to Default Defendants**

On June 8, 2010, Hillcrest provided Taylor with written notice that Gibraltar Inc. and

Gibraltar were in default on the $1.2 million Note and the $8 million investment.   Compl.

¶¶ 109-110*; see also* Exs. 13 & 14 (copies of notices).   To date, neither Gibraltar Inc. nor

Gibraltar has responded to the notices of default.   Consequently, as explained in the Report and

Part II of this memorandum, Hillcrest has suffered losses of $7.9 million as a direct result of the

fraud perpetrated by the Default Defendants. Ex. 9 at 8.

Having not received any response from the Default Defendants, Hillcrest subsequently

filed the instant action on January 28, 2011.   All of the defendants, including the Default

Defendants, were timely served.   *See* ECF Nos. 6-13.   To date, the Default Defendants have not

answered the complaint, filed any paper with this Court, participated in discovery in any

meaningful way, or indicated any intent to defend against the claims Hillcrest asserts against

them.   The Clerk's Entry of Default was entered for each of these defendants on September 23,

2011.   *See* ECF Nos. 43-45.   Accordingly, Hillcrest now seeks entry of default judgment against

the Default Defendants.

## **ARGUMENT**

I.    **THIS COURT SHOULD ENTER A JUDGMENT BY DEFAULT AGAINST THE DEFAULT DEFENDANTS**

   A.    **Entry of Default Judgment Against Default Defendants is Appropriate**

It is within this Court's discretion to enter default judgment, where appropriate. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech,* 636 F.2d 831, 836 (D.C. Cir. 1980)). Entry of default judgment is warranted where the defendant is "a totally unresponsive" party and its default plainly willful, which is "reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C. 2011) (citing *Gutierrez v. Berg Contracting Inc.*, No. 99-3044, 2000 WL 331721 at *1 (D.D.C. Mar. 20, 2000)).  In this case, the Default Defendants have been unresponsive in every material respect, by failing to (1) answer or otherwise respond to the Complaint that was served over 20 months ago, even after this Court ordered a response at the September 8, 2011 conference (ECF No. 35), (2) respond to the entry of default, which has been entered by the Clerk for over 12 months (Ex. 23 ¶ 4), and (3) participate in discovery in any meaningful way.  It is precisely this type of deliberate inaction by defendants that Rule 55(b) was intended to protect against. *See Jackson v. Beech*, 636 F.2d at 836 ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").  Therefore, Hillcrest is entitled to judgment by default against the Default Defendants. *See* Fed. R. Civ. P. 55(b).  *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F. Supp. 2d 89, 94 (D.D.C. 2011).

Upon entry of default, the factual allegations in the Complaint "are…taken as true." *Int'l Painters*, 808 F. Supp. at 94; *see also Breaking the Chain Found., Inc. v. Capitol Ed. Support, Inc.*, 589 F. Supp. 2d 25, 29 (D.D.C. 2008).  "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."  *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d at 240 (D.D.C. 2007) (citation omitted).  Accordingly, all of the factual allegations in the Complaint are taken to be true, and those facts set forth the liability of the Default Defendants for breaching their contractual obligations, violating their fiduciary duties, and for their fraudulent misrepresentations to Hillcrest.

### B.     Counts I and II — Breach of Contract Against All Default Defendants

In order to prevail on a breach of contract claim under District of Columbia law, a plaintiff must demonstrate that (1) a contract existed, (2) the plaintiff performed its contractual obligations, (3) the defendant breached the contract, and (4) the plaintiff suffered damages due to the breach.  *See Greenwich Ins. Co. v. ICE Contractors, Inc.*, 541 F. Supp. 2d 327 (D.D.C. 2008).

The well-pled allegations of the Complaint and the documents submitted with this motion demonstrate that the four requirements for breach of contract are satisfied with respect to Gibraltar, Inc. and the Note, namely that (1) the $1.2 Note was a valid, enforceable contract between Gibraltar Inc. and Hillcrest (Ex. 3); (2) Hillcrest performed its contractual obligations when it loaned Gibraltar Inc. $1.2 million (Ex. 4); (3) Gibraltar Inc. breached its contractual obligation when it failed to repay the $1.2 million principal to Hillcrest as it was required to do (Compl. ¶ 99); and (4) Hillcrest suffered damages of at least $1.2 million as a result of Gibraltar Inc.'s breach.

The four requirements for breach of contract are also satisfied with respect to Taylor, Gibraltar, and the $8 million investment:  (1) the Operating Agreement is a valid, binding, and

enforceable contract between Hillcrest, on the one hand, and Taylor's and Gibraltar's alter ego,

Hillcrest Funding LLC, on the other (Ex. 7); (2) Hillcrest performed its contractual obligations

by authorizing the transfer of $8,003,486.78 into the Trading Account, which was comprised of

the $1.2 million original loan, and $6.8 million in cash and equities (Exs. 8-10); (3) Taylor and

Gibraltar breached the Operating Agreement through the unauthorized withdrawals of $7.65

million from the Trading Account (*see supra* at 5-6); and (4) Hillcrest suffered damages of no

less than $7.9 million as a result of Gibraltar and Taylor's breach. *See infra* at Part II.

Consequently, the Default Defendants should be found jointly and severally liable for $7.9

million for their respective contractual breaches.

### C.      Counts III and IV — Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Default Defendants

District of Columbia law recognizes that "in every contract there is an implied covenant

. . . of good faith and fair dealing." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F.

Supp. 2d 240, 319 (D.D.C. 2011) (quoting *Willens v. 2720 Wisconsin Ave. Coop. Ass'n, Inc.,* 844

A.2d 1126, 1135 (D.C. 2004) (internal quotation marks and citations omitted)).   The implied

covenant of good faith and fair dealing means "that 'neither party shall do anything which will

have the effect of destroying or injuring the right of the other party to receive the fruits of the

contract.'" *Nugent v. Unum Life Ins. Co. of America*, 752 F. Supp. 2d 46, 56 (D.D.C. 2010)

(quoting *Allworth v. Howard Univ.,* 890 A.2d 194, 201 (D.C. 2006)).   A party to a contract will

be liable for breach of the implied covenant of good faith and fair dealing if that party "'evades

the spirit of the contract, willfully renders imperfect performance, or interferes with performance

by the other party . . . .'" *Nugent*, 752 F. Supp. 2d at 56 (quoting *Allworth,* 890 A.2d at 201); *see*

*also Paul v. Howard Univ.,* 754 A.2d 297, 310 (D.C. 2000).

Gibraltar Inc.'s actions demonstrate that it breached the implied covenant of good faith and fair dealing in the Note by (1) convincing Hillcrest that it was a legitimate investment company that would execute a proprietary trading strategy, when in reality, Gibraltar Inc. was a Ponzi scheme and (2) stealing Hillcrest's $1.2 million investment.  Compl. ¶¶ 49, 99.  By doing so, Gibraltar Inc. unquestionably evaded the spirit of the contract and willfully rendered imperfect performance.

Moreover, Gibraltar and Taylor breached the implied covenant of good faith and fair dealing contained within the Loan Agreement and the Operating Agreement by:

- refusing to return the principal of Hillcrest's $8 million investment (including the failure to transfer or return the $1.2 million initial investment);

- refusing to provide the promised monthly interest payments to Hillcrest;

- failing to secure the authorization from the two Administrative Security Managers before withdrawing $7.65 million from the Trading Account;

- refusing to manage Hillcrest's funds through the use of the covered call strategy;

- refusing to providing monthly reports for the Trading Account;

- failing to maintain the collateral for Hillcrest; and

- failing to maintain and provide access to the financial statements, books, and records as required.

*See supra* at 5-7 n.3.  In essence, the contract between Gibraltar and Taylor and Hillcrest was rendered meaningless.  The Default Defendants had no intention to function as legitimate investment advisers to Hillcrest.  Instead, the Default Defendants wanted to obtain $8 million from Hillcrest to fuel their ongoing Ponzi scheme.

The Default Defendants' failure to return the $8 million amounts to imperfect performance under the terms of both contracts, and thereby destroys Hillcrest's right to receive

the full fruit of its contracts. Thus, the Default Defendants should be found liable for their respective breaches of the covenant of good faith and fair dealing.

### D. Count V — Breach of Fiduciary Duty Against All Default Defendants

Under District of Columbia law, in order for a breach of fiduciary duty claim to prevail, there must be (1) a fiduciary relationship, (2) a breach of duties associated with the fiduciary relationship, and (3) "injuries that were proximately caused by the breach of the fiduciary duties." *Armenian Genocide Museum and Mem'l, Inc. v. Cafesjian Family Found., Inc.,* 607 F. Supp. 2d 185, 190-91 (D.D.C. 2009) (citing *Paul v. Judicial Watch, Inc*., 543 F. Supp. 2d 1, 5-6 (D.D.C. 2008)). Section 206 of the Investment Advisers Act "establishes a statutory fiduciary duty for investment advisers to act for the benefit of their clients, requiring advisers to exercise the utmost good faith in dealing with clients, to disclose all material facts, and to employ reasonable care to avoid misleading clients." *SEC v. Bolla,* 401 F. Supp. 2d 43, 66 (D.D.C. 2005), *aff'd in part sub nom*, *SEC v. Washington Inv. Network*, 475 F.3d 392 (D.C. Cir. 2007), *vacated on other grounds*, *SEC v. Bolla,* 550 F. Supp. 2d 54 (D.D.C. 2008) (quoting *SEC v. Moran*, 922 F.Supp. 867, 888 (S.D.N.Y. 1996)) (internal quotation marks omitted). The fiduciary duty under Section 206 applies to investment advisers, who are, regardless of registration status, those who "manage the funds of others for compensation . . . ." *See Bolla*, 401 F. Supp. 2d at 59-60, 66 (quoting *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977)) (internal quotation marks omitted); *see also* § 202(a)(11) of the Investment Advisers Act, 15 U.S.C. § 80b-2(a)(11) (defining investment adviser as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.").

As pled in the Complaint, in June and July 2008, the Default Defendants represented themselves as reputable financial and investment advisers and gave two presentations to Hillcrest's Board explaining how, for compensation, they would manage Hillcrest's funds by investing in securities through the covered call strategy.[6]  The Default Defendants, acting as investment advisers to Hillcrest, owed Hillcrest a fiduciary duty to act for the benefit of Hillcrest, to exercise the utmost good faith in dealing with Hillcrest, to disclose all material facts, and to employ reasonable care to avoid misleading Hillcrest.

Gibraltar Inc. and Taylor breached the fiduciary duty owed to Hillcrest by (1) lying to Hillcrest regarding the safety and security of its $1.2 million investment, (2) failing to invest the funds provided by Hillcrest through the covered call strategy, as promised, and (3) stealing Hillcrest's $1.2 million principal despite Hillcrest's repeated demands to return the funds.  *See supra* at 5-7.

In addition to the ways in which Gibraltar and Taylor breached the covenant of good faith and fair dealing, *supra* at 11, Gibraltar and Taylor breached their fiduciary duty to Hillcrest by stealing $7.65 million and lying to Hillcrest that the funds transferred to Schwab Account 12807100 were going to a Reserve Account created for Hillcrest Funding LLC that would not be

---

[6]       At that time, the Default Defendants provided written materials to Hillcrest's Board that highlighted Taylor's extensive experience in the investment and financial services industries.  *See* Compl. ¶¶ 28, 31; Ex. 2 at 2, 5, 23.  After the initial presentation to Hillcrest, Taylor sent a follow-up letter thanking Hillcrest for the opportunity to present Gibraltar's "investment fund and strategies," recommending "[the addition of] Gibraltar to your team of investment managers," and commenting on the "great success" experienced by "other clients over the years . . . ." Ex. 15 at 1-2 (June 19, 2008 letter from Taylor to Hillcrest); *see* Compl. ¶¶ 41-42.

traded. [7]   In truth, that account was an actively traded account held by Garfield Taylor, Inc., that

was used to fund the ongoing Ponzi scheme.  *See supra* at 6 n.5   Put simply, everything the

Default Defendants did and said was to further their own interests and their ongoing fraud,

without the slightest regard for Hillcrest's interests.  As investment advisers, by failing to act in

the best interest of Hillcrest, the Default Defendants violated their fiduciary duties.  As a direct

and proximate result of the Default Defendants' breach of their fiduciary duties, Hillcrest

sustained damages of $7.9 million.

### E.   Count VI — Promissory Estoppel in the Alternative to Breach of Contract Against All Default Defendants

Under District of Columbia law, "[f]or promissory estoppel to lie, 'there must be

evidence of a promise, the promise must reasonably induce reliance upon it, and the promise

must be relied upon to the detriment of the promisee.'"  *Kauffman v. Int'l Brotherhood of*

*Teamsters,* 950 A.2d 44, 49 (D.C. 2008) (quoting *Simard v. Resolution Trust Corp.,* 639 A.2d

540, 552 (D.C. 1994)).

The Default Defendants, through their actions as set forth in the Complaint, and

supported by the documents submitted in conjunction with this motion, made specific promises

to Hillcrest regarding the safety of Hillcrest's investments and the trading strategy to be

employed for the benefit of Hillcrest's investments.  *See supra* at 2, 4.  The promises made by

---

[7]         In addition to acting as investment advisers, Taylor and Gibraltar owed Hillcrest a fiduciary duty because
of their role as joint venturers.  The Court of Appeals for the District of Columbia has recognized that "'[t]he
relationship of joint adventurers gives rise to certain reasonably well-defined fiduciary duties and obligations.'"
*Sind v. Pollin,* 356 A.2d 653, 655 (D.C. 1976) (quoting *Libby v. L. J. Corp.,* 247 F.2d 78, 81 (D.C. Cir. 1957)); *see
also EastBanc, Inc., v. Georgetown Park Assocs. II, L.P.,* 940 A.2d 996 (D.C. 2008).  "'The duty imposed is
essentially one of good faith, fair and open dealing and the utmost of candor and disclosure[.]'"  *Sind,* 356 A.2d at
655 (quoting *Libby,* 940 A.2d 996 at 81).  Gibraltar and Taylor have admitted that they were joint venturers with
Hillcrest.  Ex. 11 at 2 (explaining that the second investment option was for "Hillcrest and Gibraltar [to] form an
LLC as a joint investment venture called Hillcrest Funding LLC . . .").  Gibraltar and Taylor violated their fiduciary
duty as joint venturers when they withdrew funds from the Trading Account without the knowledge or consent of
Hillcrest, in direct contradiction of what was agreed to with Hillcrest.  Compl. ¶¶ 95-98; Ex. 5 at 10, 12; Ex. 7
¶¶ 4.2(b), 5.1-5.2; Ex. 16  at 2 (July 16, 2009 e-mail from Jerome Jackson explaining that funds were being
"transferred out to accounts that the HCC LLC do not control" and that "[f]unds are being tak[en] out of the account
without approval from our 2 members on the board.").

-14-

Gibraltar Inc., Gibraltar, and Taylor reasonably induced reliance because Hillcrest had no reason to doubt the safety of their investment or the success of the proprietary covered call investment strategy.  Hillcrest's reliance on the Default Defendants' representations was reasonable because of Taylor's and Gibraltar's touted investing experience and reputation within the community (Compl. ¶ 47; Ex. 2 at 5, 23), the written materials provided by Taylor that offered independent support for the covered call investment strategy (Ex. 17), Taylor's responses to all of the Board's questions regarding the viability of the investment strategy (Compl. ¶¶ 44-46, 61-63), and Gibraltar's ability to return $20,000 per month in "interest" during the 6-month trial period. Compl. ¶¶ 50-54, 66-67; Ex. 15 at 2 (promising an annualized return of $240,000, or $20,000 per month).

Moreover, Hillcrest was not alone in believing that Gibraltar was a legitimate investment company.  Members of Gibraltar's own advisory board, which included professionals within the business, finance and accounting community, agreed to serve as advisory board members because they also believed that Gibraltar was a legitimate investment management company.[8]  In addition, people who traded for Garfield Taylor considered him to be an intelligent person, one who was experienced in the financial and trading industry.[9]  Based on both Taylor's representations and independent research, these traders also believed that the covered call trading strategy worked regardless of market conditions.[10]  Hillcrest was not misled by an obvious sham.

---

[8]      See Ex. 18 (excerpts from the deposition of previous advisory board member Dean Sirjue, currently an Associate Dean for Finance and Administration at Georgetown University in the Georgetown Public Policy Institute, explaining that the investment strategy presented by Taylor appeared to be a credible strategy and that Taylor appeared to have the level of expertise needed to execute the strategy); Ex. 19 (excerpts from the deposition of previous advisory board member Crystal Reese, stating that she believed Gibraltar was a legitimate company).

[9]      See Ex. 20 (excerpts from the deposition of Anton Brown, a trader for Taylor, explaining how he was "taken []back by [Garfield Taylor's] knowledge" and believed him to be a trustworthy individual).

[10]      See Id.

Rather, the Default Defendants worked hard to shroud themselves with an air of legitimacy in order to induce big investors such as Hillcrest.

Hillcrest based its decision to invest with the Default Defendants on the promises regarding the safety of Hillcrest's principal investment and the effectiveness of the covered call strategy.  Compl. ¶¶ 48, 60, 68, 83.  Gibraltar Inc., Gibraltar and Taylor failed to uphold their promises, causing Hillcrest to suffer damages of $7.9 million.

### F.    Count VII — Fraudulent Inducement of Contract Against All Default Defendants

"Fraudulent inducement requires proof of: 1) a false misrepresentation; 2) made in reference to a material fact; 3) with knowledge of its falsity; 4) with the intent to deceive; and 5) action taken in reliance upon the misrepresentation."  *McWilliams Ballard, Inc. v. Level 2 Dev.,* 697 F. Supp. 2d 101, 108 (D.D.C. 2010) (citing *In re McKenney,* 953 A.2d 336, 342 (D.C. 2008)).  The breach of a contractual promise to repay a loan can be the subject of a fraudulent inducement of contract claim "if at the time of its making, the promisor had no present intention of carrying it out."  *McWilliams Ballard, Inc,* 697 F. Supp. 2d at 108 (quoting *Virginia Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs.,* 878 A.2d 1226, 1234 (D.C. 2005)).  When engaging in a loan transaction, the promise to repay is material because the lender "would not have made the loan but for the promise to repay[.]"  *Id.*  If the borrower made the promise to pay to induce the loan, knew at the time that they intended to not repay the principal, and the lender actually made the loan, the remaining elements of fraudulent inducement of contract are satisfied.  *Id*. at 108-9.

At the most fundamental level, Gibraltar and Taylor induced Hillcrest to loan $8 million, based on the promise to repay the loan and return a minimum of $200,000 per month in investment income.  Ex. 11 at 1-2 (memorandum from Gibraltar and Taylor to Hillcrest

explaining that Hillcrest agreed to "loan eight million dollars to [Hillcrest Funding LLC]" and "Gibraltar would provide a guarantee to HCC a minimum of $200,000.00 a month").   The promise to repay is material, because without it, Hillcrest would have never agreed to loan $8 million to Hillcrest Funding LLC, the alter ego of Gibraltar and Taylor.   Gibraltar and Taylor knew that the promise to return Hillcrest's funds was false because Gibraltar was a Ponzi scheme.   Rather than protect the principal investment, Gibraltar and Taylor intended, as they actually did, to remove funds from the Trading Account and disburse those funds to accounts not within Hillcrest's control.   *See* Exs. 9 and 10 (documenting withdrawals from the Trading Account starting immediately after Hillcrest began to fund the account).[11]

In addition, the Default Defendants falsely represented to Hillcrest material facts related to the strategy and risk of Hillcrest's investment.   *See supra* at 2, 4.   The Default Defendants made these misrepresentations with knowledge of their falsity because Gibraltar's "strategy" was risky, unproven and unsuccessful, and Gibraltar did not trade exclusively using the covered call strategy.[12]   *See supra* at 7.

All of these misrepresentations—the safety and return of the principal, the experience of the advisers, the success of prior investments, the type of investment strategy used, the risk associated with the strategy employed, the payment of investment income, the control maintained by the investor, and access to account statements—are material, such that a reasonable investor would consider them important when determining whether to invest with an

---

[11]     In addition, Taylor and Gibraltar knew that the proposed structure did not prohibit Taylor from withdrawing funds from the Trading Account without Hillcrest's consent and refused to provide the Trading Account statements despite Hillcrest's multiple requests.  *See* Compl. ¶¶ 93-94; *see* Ex. 8 (evidencing Mr. Jackson's request for access to the Trading Account).

[12]     Gibraltar principals knew that Taylor did not exclusively trade using the covered call strategy and had lost money trading.  *See* Ex. 27 (excerpt from the deposition of William Mitchell, Gibraltar's Executive Vice President of Strategic Planning from mid-2008 to February 2009 and President from February 2009 to August 2009, stating that even though he understood that Taylor was supposed to engage in the covered-call strategy, Taylor did not always trade using the covered call strategy); Ex. 23 (excerpt from deposition of Maurice Taylor, Chief Investment Officer and Executive Vice President of Gibraltar, acknowledging that Gibraltar had experienced trading losses and profits since its inception).

investment adviser. The Default Defendants made each of those material omissions and misrepresentations intentionally or recklessly to induce Hillcrest into agreeing to invest $8 million. Compl. ¶¶ 9, 40, 54. Hillcrest relied, to its detriment, on each of these representations when making its decision to invest with the Default Defendants and suffered damages of $7.9 million as a result.

### G.   Count VIII — Fraud Against Gibraltar and Taylor

To prevail on a fraud claim in the District of Columbia, the plaintiff must prove the following essential elements: "(1) a false representation, (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.,* 944 A.2d 1055, 1074 n. 22 (D.C. 2008) (quoting *Bennett v. Kiggins,* 377 A.2d 57, 59-60 (D.C. 1977)) (internal quotation omitted). The first element can also be satisfied with a showing that the defendant failed to disclose a material fact. *See Rodriguez v. Dist. of Columbia Dept. of Emp't Servs.,* 452 A.2d 1170, 1172 (D.C. 1982); *Jacobs v. Dist. Unemp't Comp. Bd.*, 382 A.2d 282, 286 (D.C. 1978). "[The] materiality requirement is met if the matter at issue is 'of importance to a reasonable person in making a decision about a particular matter or transaction.'" *Ca de Lupis v. Bonino,* 2010 WL 1328313 at *4 (D.D.C. Mar. 31, 2010) (quoting *United States. v. Philip Morris USA Inc.*, 566 F.3d 1095, 1122 (D.C. Cir. 1996); *see also Media Gen., Inc. v. Tomlin*, 2001 WL 1230880 at *9 (D.D.C. Aug. 9, 2001) (Under common law, "a misrepresentation is material 'if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question . . .'") (quoting *Restatement (Second) of Torts* § 538(2)(a) (1977)). The third element considers subjective knowledge, meaning that "it relates to the particular individual charged with the fraud, not to a hypothetical reasonable person." *Jacobs*, 382 A.2d at 287; *see also Powell v. Dist. of Columbia*

*Hous. Auth.,* 818 A.2d 188, 197-98 (D.C. 2003).  Further, "the scienter element is satisfied if the representation is recklessly and positively made without knowledge of its truth." *Jacobs*, 382 A.2d at 287 (internal citations and quotations omitted).  Finally, "the plaintiff must also have suffered some injury as a consequence of his reliance on the misrepresentation."  *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 275 (D.D.C. 2011) (internal citations omitted).

As discussed above, Gibraltar and Taylor knowingly made false representations regarding material facts with the intent to deceive Hillcrest. *See supra* at 2, 4.  Further, Gibraltar and Taylor failed to disclose material information, such as the fact that Gibraltar was a Ponzi scheme, that it did not follow the covered call strategy, that Hillcrest's principal would not be protected, and that the funds Hillcrest invested through Hillcrest Funding LLC would be immediately withdrawn and disbursed to other accounts. *Id.* at 5.  These statements are material because a reasonable person would consider the risk, reward, and strategy offered by an investment adviser to be important when making a decision about whether and how much to invest.  In reliance on these promises and the belief that Gibraltar and Taylor were legitimate investment advisers, Hillcrest directed Gibraltar to transfer its $1.2 million initial investment to the Trading Account, and funded the Trading Account with an additional $6.8 million.  Compl. ¶¶ 83-84.

Gibraltar and Taylor had actual knowledge of the misrepresentations and omissions of material facts or acted with reckless disregard for the truth.  Primarily, Taylor knew that he intended to steal Hillcrest's funds to float his ongoing Ponzi schemes.  Additionally, Taylor knew that he was not exclusively using the covered call strategy to trade. *See supra* at 17 n.12.  Gibraltar's and Taylor's actual knowledge or reckless disregard for the truth can be further inferred from (1) the Trading Account statements, which demonstrate that Gibraltar and Taylor

were not following a covered call strategy (Ex. 9 at 4, 14); (2) Gibraltar's and Taylor's refusal to provide access to the monthly bank statements as promised (Compl. ¶¶ 93-94) and (3) Gibraltar's own written admission that "[i]t was Gibraltar's decision to trade the reserve account" despite Gibraltar's and Taylor's representations that the Reserve Account for Hillcrest Funding LLC would not be traded.  Ex. 11 at 5.  *See supra* at 6 n.5.

Each of Gibraltar's and Taylor's misrepresentations and omissions were material to Hillcrest's decision to invest with Gibraltar and to continue to fund the investment.  Compl. ¶ 68. When Hillcrest decided to invest with Gibraltar and Taylor, Hillcrest actually relied on the false statements made by Taylor and Gibraltar.  *Id*. ¶¶ 48, 60, 83.  Had Hillcrest known the truth, it would not have invested $8 million with Gibraltar and Taylor.  As a result of Taylor's and Gibraltar's misrepresentations and omissions, Hillcrest suffered damages of $7.9 million.

## H.      Count IX — Conspiracy to Commit Fraud Against Taylor

"[I]n order to state a civil conspiracy claim under D.C. law, the plaintiff must allege '(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) injury caused by an unlawful overt act performed by one of parties to the agreement, and in furtherance of the common scheme."  *Busby*, 772 F. Supp. 2d at 278  (quoting *Hill v. Medlantic Health Care Grp.,* 933 A.2d 314, 334 (D.C. 2007)).  "Where there is no direct evidence of an agreement between the alleged co-conspirators, there must be circumstantial evidence from which a common intent can be inferred."  *Weishapl v. Sowers*, 771 A.2d 1014, 1024 (D.C. 2001) (citing *Halberstam v. Welch,* 705 F.2d 472, 480 (D.C. 1983)).

Taylor agreed with named defendants Benjamin Dalley ("Dalley"), Jeffrey King ("King"), Maurice Taylor ("M. Taylor"), Randolph Taylor ("R. Taylor") and Stuart Gary ("Gary") to fraudulently induce Hillcrest to invest $8 million with Hillcrest Funding LLC, the alter ego of Gibraltar and Taylor.  Compl. ¶ 167.  Such agreement is evidenced through

numerous coordinated representations, both written and oral, that Taylor and each named defendant affirmatively made to Hillcrest or supported.  The majority of these representations were made during meetings with Hillcrest attended by Taylor, Dalley, King, M. Taylor, R. Taylor, and/or Gary prior to Hillcrest's initial decision to invest $1.2 million with Gibraltar and Hillcrest's later decision to invest $8 million through Hillcrest Funding LLC.  Compl. ¶¶ 30-42, 56-59, 70-77.  These misrepresentations made by Taylor, Dalley, King, M. Taylor, R. Taylor and Gary were overt acts intentionally designed to perpetrate their agreed upon common scheme.  *See supra* at 16-19.  As a result of this conspiracy to defraud Hillcrest, Hillcrest suffered damages of $7.9 million.

## I.    Counts X and XI — Conversion Against All Default Defendants

"Under D.C. law, the elements of conversion are '(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto.'"   *Busby*, 772 F. Supp. 2d at 280 (quoting *O'Callaghan v. Dist. of Columbia,* 741 F. Supp. 273, 279 (D.D.C. 1990)).   "Even where defendant's initial possession of property is lawful, demand for its return by a plaintiff may render continued possession unlawful and show its adverse nature." *Calvetti v. Antcliff,* 346 F. Supp. 2d 92, 106 (D.D.C. 2004)) (citing *Savoy Const. Co., Inc. v. Atchison & Keller, Inc.,* 388 A.2d 1221, 1223 (D.C. 1978)).   "Money can be the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money."  *Calvetti,* 346 F. Supp. 2d at 106 (quoting *Curaflex Health Servs., Inc. v. Bruni,* 877 F. Supp. 30, 32 (D.D.C. 1995)).

Taylor and Gibraltar Inc. committed conversion when they failed to transfer the initial $1.2 million, an identifiable fund of money, into the Trading Account as Hillcrest instructed, thereby exercising unlawful control of Hillcrest's $1.2 million and denying Hillcrest's rights to those funds.  *See* Compl. ¶ 84.  Gibraltar Inc. and Taylor further denied Hillcrest its right to the

$1.2 million by failing to comply, in whole or in part, with Hillcrest's June 8, 2010 demand to return the investment. *See supra* at 7.

Taylor and Gibraltar committed conversion when they, improperly and without authorization, diverted approximately $7.65 million, again, an identifiable sum of money, to one or more bank accounts controlled by Taylor or Gibraltar. *See* Compl. ¶¶ 95-98; Exs. 9 (listing withdrawals and transfers from the Trading Account) & 10 (evidencing transfers to the Garfield Taylor, Inc. account). Neither Taylor nor Gibraltar has complied, in whole or in part, with Hillcrest's June 8, 2010 demand to return its $8 million principal investment, thereby exercising unlawful control over Hillcrest's property. *See* Compl. ¶ 110. Therefore, Hillcrest should be awarded damages of $6.6 million, plus interest, for the amount the Default Defendants stole from Hillcrest.

### J.    Counts XII and XIII — Negligent Misrepresentation Against All Default Defendants

"In order to assert a claim in the District of Columbia for negligent misrepresentation, a plaintiff must successfully plead that '(1) the defendants made a false statement or omission of a fact; (2) the statement was a violation of a duty to exercise reasonable care; (3) the false statement or omission involved a material issue; (4) the plaintiffs reasonably relied to their detriment on the false information; and (5) the defendants' challenged conduct proximately caused injury to the plaintiffs.'" *Simms v. Dist. of Columbia,* 699 F. Supp. 2d 217, 226 (D.D.C. 2010) (quoting *Burman v. Phoenix Worldwide Indus.,* 384 F. Supp. 2d 316, 336 n.17 (D.D.C. 2005)); *see also Redmond v. State Farm Ins. Co.,* 728 A.2d 1202, 1207 (D.C. 1999). Regarding the duty owed to use reasonable care, District of Columbia law draws from the Restatement (Second) of Torts, which "establishes a duty of care owed by commercial suppliers of information . . . to those who are intended to receive the information[.]" *Burlington Ins. Co. v.*

*Okie Dokie, Inc.,* 329 F. Supp. 2d 45, 48-49 (D.D.C. 2004) (citing *Restatement (Second) of Torts* § 552 (1977)).  A commercial supplier of information who breaches its duty is "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . ." *Id.*

In soliciting Hillcrest to invest with Gibraltar Inc. and Gibraltar, Taylor made numerous misrepresentations of material fact.  *See supra* at 2, 4.  Beyond the fiduciary duty owed by the Default Defendants to Hillcrest because of their role as investment advisers (*see supra* Part I.D), the Default Defendants owed a duty of care to Hillcrest as commercial suppliers of information: in the course of their business with Hillcrest, the Default Defendants provided false information in order to guide Hillcrest, the intended recipient of the information, into entering a business transaction with Gibraltar Inc. and Gibraltar.  Such misrepresentations included that the principal investment would remain intact, and that the funds would be traded using Gibraltar's proprietary covered call trading strategy.  *See supra* at 2, 4, 16-19.  All of these misrepresentations are statements made in violation of the Default Defendants' duty to exercise reasonable care.  All of the above misrepresentations were material to the transaction because a reasonable investor would have considered the past success, risk, and reward of an investment strategy, and whether the adviser was going to steal their funds, to be important when considering whether and how much to invest.

Hillcrest reasonably relied on all of the foregoing statements when deciding to invest $1.2 million with Gibraltar Inc. and a total of $8 million with Gibraltar.  *See* Compl. ¶¶ 48, 60, 83.  Moreover, the objective reasonableness of Hillcrest's reliance is evidenced by the fact that Gibraltar's own advisory board members believed Gibraltar to be a legitimate investment

adviser. *See supra* at 15-16.  The Default Defendants' misrepresentations and omissions directly and proximately caused injury to Hillcrest of $7.9 million.

### K.      Count XIV — Securities Fraud (§ 10(b) and Rule 10b-5) Against Taylor and Gibraltar

"Section 10(b) of the Securities Exchange Act makes it 'unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.'" *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 156 (2008) (quoting 15 U.S.C. § 78j).   "Rule 10b-5 encompasses only conduct already prohibited by § 10(b)", *Stoneridge Inv. Partners,* 552 U.S. 148 at 156 (citing *United States v. O'Hagan*, 521 U.S. 642, 651 (1997)), and makes it unlawful to "[t]o employ any device, scheme, or artifice to defraud . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5.

In order for a plaintiff to succeed in a § 10(b) private action, the "plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners,* 552 U.S. at 157 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). The materiality requirement of the first element is satisfied when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1318 (2011) (citations omitted).  The second requirement, scienter, requires the plaintiff to prove that the defendant acted with "'a mental state embracing intent to deceive, manipulate, or defraud.'"  *Id.* at 1323 (quoting *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 (2007)).  The Court of Appeals for the District of Columbia Circuit has held that scienter can be satisfied through the showing of "extreme recklessness," meaning an "extreme departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *In re Fannie Mae Sec. Litig.*, 503 F. Supp. 2d 25 (D.D.C. 2007) (quoting *SEC v. Steadman*, 967 F.2d 636, 641-42 (D.C. Cir. 1992)).  To prove the final element, loss causation, the "investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss."  *P. Erica John Fund, Inc. v. Halliburton Co.,* 131 S.Ct. 2179, 2185 (2011).

Taylor and Gibraltar engaged in a scheme to defraud Hillcrest in connection with the purchase and sale of securities held in the Trading Account.  In order to execute their fraudulent scheme, Taylor and Gibraltar made numerous material misrepresentations, while knowing these statements to be misleading and false, and failed to disclose material information such as the unauthorized withdrawals from the account and deciding not to use the covered call trading strategy.  *See* Compl. ¶¶ 56-59; *see supra* 4-6.  A reasonable investor would consider statements regarding the protection of principal, the investment strategy employed, the rate of return, and the degree of control the investor would retain over the investment as significantly altering the total mix of information available; thus rendering the misrepresentations material.

Taylor and Gibraltar had actual knowledge of the misrepresentations and omissions of material facts, or acted with extreme reckless disregard for the truth.  *See supra* Part I.F-G.  Hillcrest reasonably relied on the false and misleading statements made by the Default Defendants.  *See supra* at 15-16.  Moreover, Hillcrest's reliance should be presumed as

reasonable because Gibraltar and Taylor, as Hillcrest's investment adviser, had a fiduciary duty to disclose material facts, but failed to do so.[13]

Because Taylor and Gibraltar failed to disclose material information in efforts to obtain funds to trade securities, each purchase and sale of a security by Taylor and Gibraltar was deceptive, unauthorized, and a violation of Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5.  Hillcrest has suffered losses of $7.9 million as a result.

**L.      Count XV — Securities Fraud: Violation of D.C. Code § 31-5605.05(a)(3) Against All Default Defendants**

Under Section 31-5605.05(a)(3)(B) of the D.C. Code, a person shall be civilly liable to another if the person "(i) Receives directly or indirectly any consideration from the other person for advice as to the value of securities or their purchase or sale or for acting as an investment adviser . . . and, (ii) Employs an device, scheme, or artifice to defraud the other person or engages in an act, practice, or course of business which operates or would operate as a fraud or deceit on the other person."  The Default Defendants violated D.C. Code § 31-5605.05(a)(3)(B), when they employed a scheme to defraud Hillcrest and received compensation for acting as an investment adviser.  *See supra* Part I.E-F.  The Default Defendants received "consideration" for their "investment advice," by removing "profits" from the Trading Account without Hillcrest's authorization.  Ex. 11 at 3-5 (explaining that Gibraltar received $950,000 in "profits" from trading securities in the Trading Account in March 2009, $1,500,000 in April 2009, and $400,000 in May 2009).  Thus, the Default Defendants are liable for damages caused to Hillcrest as a result of this violation in an amount of $7.9 million.

---

[13]      *See Stoneridge Inv. Partners,* 552 U.S. at 159 ("A rebuttable presumption of reliance exists where "there is an omission of a material fact by one with a duty to disclose"); *Day v. Avery,* 548 F.2d 1018, 1026 (D.C. Cir. 1976) ( "[A] fiduciary voicing an opinion on which he knew his beneficiary might depend would be understood as having investigated the facts underlying it; thus, the expression of the opinion carried an implicit representation of those facts.").

**M.      Count XVI — Unjust Enrichment in the Alternative to Breach of Contract Against All Default Defendants**

"Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Communications, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (citing *4934, Inc. v. Dist. of Columbia Dep't of Emp't Servs.,* 605 A.2d 50, 55 (D.C. 1992)).  To conclude "that a recipient would be unjustly enriched by the retention of a given benefit requires a determination that: (a) absent liability in restitution, the claimant will not be compensated . . . (b) liability in restitution will not subject the recipient to an obligation from which it was understood by the parties that the recipient would be free; and (c) liability in restitution will not subject the recipient to a forced exchange."  *Id.* at 1222, n.5 (quoting *Restatement (Third) of Restitution and Unjust Enrichment* § 29 (Tentative Draft No. 3, (2004)) (internal quotation omitted).

Hillcrest conferred a benefit on the Default Defendants by providing a total of $8 million to invest on behalf of Hillcrest.  Instead of Taylor and Gibraltar Inc. returning Hillcrest's $1.2 million principal, and Taylor and Gibraltar investing Hillcrest's $8 million as promised, the Default Defendants stole the money for their own benefit.  *See* Ex. 9.  Because the Default Defendants are not entitled to the profits and other monies by contract or otherwise, they have been unjustly enriched and equity demands that the Default Defendants not be allowed to retain any portion of Hillcrest's $8 million investment.

II.     **Default Judgment Should be Entered Against the Default Defendants in the Amount of $6,603,536, Plus Pre- and Post-Judgment Interest**

   A.     **This Court Should Award $6,603,536 in Damages for the Loss of Hillcrest's Principal Investment**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Hillcrest seeks an entry of default judgment by the Court.[14]  Under this rule, the Court may make an independent determination of the sum to be awarded in the default judgment. *Adkins v. Teseo,* 180 F. Supp. 2d 15, 17 (D.D.C. 2001).  When making this determination, the "court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Flynn v. Mastro Masonry Contractors,* 237 F. Supp. 2d 66, 69 (D.D.C. 2002).  Notably, the "court has considerable latitude in determining the amount of damages" and is not required to conduct a hearing, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Carpenters Labor-Management Pension Fund,* 498 F. Supp. 2d 237, 240 (D.D.C. 2007) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)).  Moreover, "the movant is entitled to all reasonable inferences from the evidence offered." *Flynn,* 237 F. Supp. 2d at 69.

The amount Hillcrest seeks in damages is $7,913,606, which is the total of $6,603,536 plus $1,310,070 in pre-judgment interest.  As explained in the affidavit from Hillcrest's counsel (Ex. 23) and Mr. Wilczynksi's Report (Ex. 9), the sum of $6,603,536 consists of the $8,003,536 that Hillcrest loaned to the Default Defendants in total, and subtracts the $1.4 million that was "repaid" to Hillcrest in 2009.  Hillcrest is not seeking attorneys' fees, costs, or punitive damages.

---

[14]     Federal Rule of Civil Procedure 55(b)(2) allows an entry of default judgment against a minor or incompetent "only if represented by a general guardian, conservator, or other like fiduciary who has appeared."  The Default Defendants are neither minors nor incompetent.  The rule further provides that "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days prior to the hearing."  As explained above, Gibraltar, Gibraltar Inc., and Taylor have not appeared in this matter, and have not indicated to Hillcrest's counsel an intent to appear, plead, or otherwise defend themselves from the claims asserted against them. Ex. 23 ¶ 4.  Nevertheless, Hillcrest has served the Motion of Default Judgment and this memorandum in support on the Default Defendants, at their addresses of record.

Regarding the $8,003,536, pursuant to the Loan Agreement, Hillcrest was to loan Gibraltar and Taylor, through their alter ego Hillcrest Funding LLC, $8 million. Ex. 6 at 1. To accomplish this, Hillcrest (1) instructed the Default Defendants to transfer Hillcrest's $1.2 million initial investment to the Trading Account, and (2) transferred $6,803,536 to the Trading Account as of May 2009. Ex. 9 at 9. Thus, the total amount that Hillcrest loaned to the Default Defendants was $8,003,536.

With respect to the second figure, from April 2009 until October 2009, Hillcrest received monthly interest payments of $200,000 from the Default Defendants, for a total of $1,400,000. Ex. 9 at 7-8. If this $1,400,000 is considered to be the return of Hillcrest's principal investment rather than interest payments, a view that Hillcrest adopts for ease of administration and purposes of this motion, approximately $6.6 million of the $8 million principal remains with the Default Defendants. Ex. 9 at 8-9 (explaining that the divergence from the "Loan Agreement and Operating Agreement, as well as significant unauthorized withdrawals, resulted in a loss of $6.6 million in principal for Hillcrest . . . .").

For this reason, Hillcrest seeks to be awarded $6,603,536 in damages for the amount of funds loaned to and retained by the Default Defendants. Should this Court find that a hearing is necessary to conduct an accounting or determine the amount of damages, Hillcrest is prepared to present the evidence that serves as the basis for the Report and affidavit.

**B.      Hillcrest Should be Awarded Pre- and Post-Judgment Interest**

Prejudgment interest should be awarded when it is "necessary to fully compensate an aggrieved party." *Griffith v. Barnes,* 560 F. Supp. 2d 29, 36 (D.D.C. 2008) (citing *Fed. Mktg. Co. v. Virginia Impression Prods. Co., Inc.*, 823 A.2d 513, 532 (D.C. 2003)). When the plaintiff is a creditor to the debtor, and "[w]here the debtor should have paid what he owed but did not do so, a denial of pre-judgment interest would deny full compensation to the creditor while allowing

the recalcitrant party to take advantage of his own wrong and become the richer for it." *Id.* at 532 (quoting *Riggs Nat'l Bank v. District of Columbia,* 581 A.2d 1229, 1253 (D.C. 1990)) (internal quotation omitted); s*ee also Dist. Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 732 (D.C. 2003) (stating that prejudgment interest is "an element of complete compensation" to a creditor for the loss of use of money that a debtor wrongfully withholds). In the absence of an express contract establishing the rate of pre-judgment interest, the District of Columbia allows for a pre-judgment interest rate of six percent (6%). D.C. Code § 28-2203(a). *See also Griffith,* 560 F. Supp. 2d 29 at 35 (applying statutory  prejudgment interest rate of 6% per D.C. Code § 28-3302).

Here, pre-judgment interest is required to fully compensate Hillcrest. Hillcrest, as the creditor to the Default Defendants, has been deprived of interest and investment income it would have earned from the $8,003,536 had the Default Defendants invested the funds as promised, and/or returned Hillcrest's $8 million in June 2010. According to the Report, if Hillcrest were to be awarded pre-judgment interest at the statutory interest rate of 6% from March 2009, the date of Hillcrest's initial contribution, until March 2012, Hillcrest should be awarded $1,310,070 in interest in addition to the $6,603,536. Therefore, Hillcrest requests that this Court, enter default judgment against the Default Defendants for a total of  $7,913,606.

Moreover, Hillcrest respectively requests that this Court award post-judgment interest at the legal rate of three percent (3%) as established by D.C. Code § 28-2203(c) until the judgment amount is satisfied by the Default Defendants. 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter a default judgment in favor of Hillcrest and against Defendants Gibraltar Asset Management Group LLC,

Gibraltar Asset Management Group Inc., and Garfield Taylor, and grant the relief set forth in the proposed order.