# Exhibit 7

# OPERATING AGREEMENT

# HILLCREST FUNDING LLC

OPERATING AGREEMENT of **Hillcrest Funding LLC** a District of Columbia Limited Liability Company Dated as of February 2/6/9, 2009 (the "**Company**"), by and among the Members.

References to a "Schedule" or an "Exhibit" are, unless otherwise specified, to a Schedule or an Exhibit attached to this Agreement and references to a "section" or a "subsection" are, unless otherwise specified, to a section or a subsection of this Agreement.

## DEFINITIONS.

As used herein the following terms shall have the following respective meanings:

Act – as defined in section 1.1.

Administrative/Security Manager–Those Managers or their successors appointed pursuant to and as set forth in Section 5.1(a) ("A/SMGR").

Affected Member – as defined in section 7.2.

Affiliate – with reference to any Person, any other Person of which such Person is a member, director, officer, general partner or employee or any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such Person.

Agreement – means this Operating Agreement, as the same may be amended hereafter from time to time as provided herein.

Assignment – as defined in section 7.1.

Assumed Income Tax Rate – the highest effective marginal combined federal, state and local income tax rate for a fiscal year prescribed for any individual or corporation resident in the District of Columbia (taking into account to the extent applicable the deductibility of state and local income taxes for federal income tax purposes).

Authorized Representative – as defined in section 12.17.

Board of Managers– the Administrative/Security Manager and the Operations Manager shall be collectively referred to as the Board of Managers.

Book Value – with respect to any Company asset, the asset's adjusted basis for federal income tax purposes, except that the Book Values of all Company assets shall be adjusted to equal their respective fair market values, in accordance with the rules set forth in Section 1.704-1(b)(2)(iv)(f) of the Treasury Regulations, except as otherwise provided herein, immediately prior to: (a) the date of the acquisition of any additional Interest by any new or existing Member in exchange for more than a de minimis Capital Contribution; (b) the date of the distribution of more than a de minimis amount of Company property (other than a pro rata distribution) to a Member;

1

Exhibit 7 - Page 1 of 20

**Confidential Treatment Requested by Hillcrest Children's Center**

Hillcrest Funding Op. Agr.
2.6.2009

or (c) the date of the actual liquidation of the Company within the meaning of Section 1.704–1(b)(2)(ii)(g) of the Treasury Regulations; provided that adjustments pursuant to clauses (a) and (b) above shall be made only if the Manager determines in his sole discretion that such adjustments are necessary or appropriate to reflect the relative economic interests of the Members. The Book Value of any Company asset distributed to any Member shall be adjusted immediately prior to such distribution to equal its fair market value. The Book Value of any Company asset shall be adjusted to reflect any write-down which constitutes a Disposition.

Capital Accounts - as defined in section 3.2.

Capital Commitment - the amount set forth opposite such Member's name on Schedule A hereto.

Capital Contributions - as to any Member, the amount of contributions to the capital of the Company made pursuant to section 3.1.

Class A Members- The Member(s) set forth on Schedule A as Class A Member(s).  In the event the Hillcrest Loan which is being made by the parent of the Class A Member is not funded within fifteen (15) days of the execution of this Operating Agreement, then in that event, the Class A Membership Interest shall be terminated *nunc pro tunc*.  If at any time the Hillcrest Loan is repaid in full, the Class A Member shall immediately and automatically, without any further documentation or actions, be terminated and the Class A Member shall be deemed dissociated from the Company.

Class B Members- The Member(s) set forth on Schedule A as Class B Member(s).

Code - the Internal Revenue Code of 1986, as amended and as the same may be amended from time to time.

Company - Hillcrest Funding LLC a District of Columbia limited liability company.

Company Expenses - as defined in section 5.10.

Confidential Matter - as defined in section 12.17.

Damages - any and all damages, disbursements, suits, claims, liabilities, obligations, judgments, fines, penalties, charges, amounts paid in settlement, expenses, costs and expenses (including, without limitation, attorneys' fees and expenses) arising out of or related to litigation and interest on any of the foregoing.

Dissociation or Dissociated- when a Member's Membership Interest in the Company becomes subject to a Triggering Event, after which the Dissociated Member shall possess no rights to participate in the management of the Company, nor to vote in any matters affecting the Company. In the event a Member becomes a Dissociated Member, then any Manager(s) appointed by such Dissociated Member shall immediately, and without further action, cease to be Manager(s), and shall have no further authority to conduct affairs of the Company, nor to act in the name of the Company.

Disposition - the sale, exchange, redemption, assignment, transfer, repayment, repurchase or other disposition by the Company of all or any portion of a the Project or the Property for cash or for Marketable Securities which can be distributed to the Members pursuant to section 4.2 and shall include a distribution in kind to the Members of all or any portion of the Project or the Property as permitted hereby.

2

Exhibit 7 - Page 2 of 20

Confidential Treatment Requested by Hillcrest Children's Center

Distributable Cash - the excess of the sum of all cash receipts of all kinds over cash disbursements (or reserves therefor) for Company Expenses specifically including payment of the debt service on the Hillcrest Loan.

Event of Termination - as defined in section 9.1.

General Partner - the Company acting in its capacity as general partner of any Partnership.

Governmental Authority - any nation or government, any state or other political subdivision thereof and any other Person exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

Hillcrest Loan- the loan to the Company from Hillcrest Children's Center in the initial Principal Amount of Eight Million Dollars ($8,000,000).

Interest - the entire membership interest owned by a Member in the Company, including the right of such Member to any and all benefits to which a Member may be entitled as provided in this Agreement, together with the obligations of such Member to comply with all the terms and provisions of this Agreement.

Internal Revenue Service - The Internal Revenue Service or its successor.

Loan Agreement - The agreement governing the Hillcrest Loan entered into by the Company, as Borrower, and Hillcrest Children's Center, as Lender, on _____, 2009.

Majority in Interest - any percentage of Memberships Interests that is greater than fifty percent (50%) of all the Membership Interests.

Managers- those Managers or their successors as appointed as set forth in Section 5.1(a).

Members - the Members as set forth on Schedule A attached hereto and amended from time to time.

Membership Interest - with respect to any Member, the ownership interest in the Company as set forth on Schedule A as amended from time to time.

Note - the promissory note evidencing the Hillcrest Loan.

Net Income and Net Loss - for each fiscal year or other period, the taxable income or loss of the Company, or particular items thereof, determined in accordance with the accounting method used by the Company for federal income tax purposes with the following adjustments: (a) all items of income, gain, loss, deduction or expense specially allocated pursuant to this Agreement (including sections 3.4 and 4.2(d)) shall not be taken into account in computing such taxable income or loss; (b) any income of the Company that is exempt from federal income taxation and not otherwise taken into account in computing Net Income and Net Loss shall be added to such taxable income or loss; (c) if the Book Value of any asset differs from its adjusted tax basis for federal income tax purposes, any gain or loss resulting from a disposition of such asset shall be calculated with reference to such Book Value; (d) upon an adjustment to the Book Value of any asset pursuant to the definition of Book Value, the amount of the adjustment shall be included as gain or loss in computing such taxable income or loss; (e) if the Book Value of any asset differs from its adjusted tax basis for federal income tax purposes the amount of depreciation, amortization or cost recovery deductions with respect to such asset for purposes of

3

Exhibit 7 - Page 3 of 20

Confidential Treatment Requested by Hillcrest Children's Center

Hillcrest Funding Op. Agr.
2.6.2009

determining Net Income and Net Loss shall be an amount which bears the same ratio to such Book Value as the federal income tax depreciation, amortization or other cost recovery deductions bears to such adjusted tax basis (provided that if the federal income tax depreciation, amortization or other cost recovery deduction is zero, the Manager may use any reasonable method for purposes of determining depreciation, amortization or other cost recovery deductions in calculating Net Income and Net Loss); and (f) except for items in (a) above, any expenditures of the Company not deductible in computing taxable income or loss, not properly capitalizable and not otherwise taken into account in computing Net Income and Net Loss pursuant to this definition, shall be treated as deductible items.

Offering Member; Offeror – Any Member who wishes to transfer his Membership Interest in the Company pursuant to Section 7.1 below, or any Member who is deemed to desire such a transfer pursuant to Section 5.1(c).

Operational Manager– the Manager or its successor appointed pursuant to and as set forth in Section 5.1(a) ("OMGR").

Person – an individual, Company, limited Company, limited liability Company, limited partnership, corporation, trust or unincorporated organization, and a government or agency or political subdivision thereof.

Prime Rate - The prime rate (or base rate) reported in the "Money Rates" column or section of *The Wall Street Journal* as being the base rate on corporate loans at larger U.S. Money Center banks on the first date on which *The Wall Street Journal* is published in each month.  In the event *The Wall Street Journal* ceases publication of the Prime Rate, then the "Prime Rate" shall mean the "prime rate" or "base rate" announced by the bank with which the Company has its principal banking relationship (whether or not such rate has actually been charged by that bank) or as otherwise designated by the Management Team. In the event that bank discontinues the practice of announcing that rate, Prime Rate shall mean the highest rate charged by that bank on short-term, unsecured loans to its most credit-worthy large corporate borrowers, unless otherwise designated by the Management Team.

Principal - the initial amount of the Hillcrest Loan.

Property - the Trading Account

Representative - as defined in section 9.2.

Securities Act - the Securities Act of 1933, as the same may be hereafter amended from time to time.

Securities Exchange Act - the Securities Exchange Act of 1934, as the same may be hereafter amended from time to time.

Special Default - as defined in Section 4.2(c).

Substitute Member - any Person admitted to the Company as a substitute Member pursuant to section 7.3.

Tax Matters Member - as defined in section 5.7.

Triggering Event -- The death, dissolution, adjudication of incompetency, termination, Dissociation, or Bankruptcy of a Member or the occurrence of any other event that terminates the

Exhibit 7 - Page 4 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000559

Hillcrest Funding Op. Agr.
2.6.2009

continued membership of a Member of the Company or any event causing the dissolution of the Company under the Act, including:

1.    The Company's having notice of the Member's express will to resign as a Member on a later date specified by the Member in the notice or, if no later date is specified, the date of notice;

2.    Any event agreed to in the Articles of Organization or in this Agreement as causing the Member's Dissociation;

3.    The Member's expulsion pursuant to the Articles of Organization or this

4.    The Member's expulsion by the unanimous vote of the other Members if:

    a. It is unlawful to carry on the business of the Company with that Member; or

    b. There has been an assignment or transfer of all or substantially all of that Member's Membership Interest, other than a transfer for security purposes or a court order charging the Member's Interest which, in either case has not been foreclosed;

5.    On application by the Company or another Member, the Member's expulsion by judicial determination because:

    a. The Member engaged in wrongful conduct that adversely and materially affected the business of the Company;

    b. The Member willfully or persistently committed a material breach of the Articles of Organization or this Agreement; or

    c. The Member engaged in conduct relating to the business of the Company which makes it not reasonably practicable to carry on the business with the Member;

6. The Member's:

    a. Becoming a debtor in bankruptcy;

    b. Executing an assignment for the benefit of creditors;

    c. Seeking, consenting to, or acquiescing in the appointment of a trustee, receiver, or liquidator of that Member or of all or substantially all of that Member's property; or

    d. Failing, within ninety days after the appointment, to have vacated or stayed the appointment of a trustee, receiver, or liquidator of the Member or of all or substantially all of the Member's property obtained without the Member's consent or acquiescence, or failing within ninety days after the expiration of a stay to have the appointment vacated;

7.    The expiration of ninety days after the Company notifies a corporate Member that it will be expelled because it has filed articles of dissolution or the equivalent, its existence has been terminated or its charter has been revoked, or its right to conduct business has been suspended by the jurisdiction of its incorporation, if there is no revocation of the certificate of dissolution or no reinstatement of its existence, its charter or its right to conduct business; or

Exhibit 7 - Page 5 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000560

Hillcrest Funding Op. Agr.
2.6.2009

8.      A partnership or limited liability company that is a Member has been dissolved and its business is being wound up.

Trading Account– the Account maintained by the Company at Charles Schwab being Account No. _____ or any additional or replacement accounts.

Treasury Regulations – the Income Tax Regulations promulgated under the Code, as the same may be amended hereafter from time to time.

U.S. Dollars and $ shall mean lawful money of the United States of America.

PROVISIONS

## 1. ORGANIZATION.

1.1. **Formation.** The parties to this Agreement hereby agree to form the Company pursuant to a Certificate of Organization, dated as of January 23, 2009 and filed with the Mayor of the District of Columbia, pursuant to the provisions of the District of Columbia Limited Liability Company Act, of the 1994, as amended, District of Columbia Code Section 29–1001, et seq. ("Act"), and in accordance with the further terms and provisions of this Agreement.

1.2. **Name.** The name of the Company shall be Hillcrest Funding LLC or such other name or names as may be selected by the Board of Managers from time to time, and its business shall be carried on in such name with such variations and changes as the Board of Managers deems necessary to comply with requirements of the jurisdictions in which the Company's operations are conducted. The Board of Managers shall give the Members prompt written notice of any change in the name of the Company.

1.3. **Purpose.** The Company is organized primarily for the object and purpose of owning, managing and growing Company assets.

1.4. **Places of Business.** The Company shall have its principal place of business at 3408 Wisconsin Avenue, NW, Suite 212, Washington, DC 20016 or at such other place or places as the Managers may, from time to time, select. The Company may from time to time have such other place or places of business in such other jurisdictions as the Board of Managers may deem advisable.

1.5. **Registered Office and Agent.** The address of the Company's registered office in the District of Columbia is 4712 ½ Reservoir Road, NW, Washington, DC 20007. The name of the registered agent at that address is Stuart H. Gary.

1.6. **Fiscal Year.** The fiscal year of the Company shall end on the 31st day of December in each year. The Board of Managers shall have authority to change the ending date of the fiscal year to any other date required or allowed under the Code if the Board of Managers, in their sole discretion, shall determine such change to be necessary or appropriate. The Board of Managers shall promptly give notice of any such change to the Members.

## 2. MEMBERS.

2.1.    **Members.** The Company shall consist of the Class A and Class B Members, as set forth on Schedule A, as amended, and such additional and substituted Members as shall be

6

Exhibit 7 - Page 6 of 20

**Confidential Treatment Requested by Hillcrest Children's Center**

admitted to the Company pursuant to section 7. Schedule A shall be amended from time to time to reflect the admission of any Member or the removal, withdrawal, expulsion, dissolution or termination of any Member or the receipt by the Company of notice of any change of name of a Member.

**2.2.   Liability of Members.** None of the Members shall be liable to the Company, the Board of Managers or any affiliate of a Manager, except as otherwise set forth expressly herein, or to any third parties except to the extent of each Member's Capital Contribution.

**2.3.   Company Property; Company Interest.** No real or other property of the Company shall be deemed to be owned by any Member individually, but shall be owned by and title shall be vested solely in the Company. The interests of the Members in the Company shall constitute personal property.

### 3. CAPITAL CONTRIBUTIONS, CAPITAL ACCOUNTS, ALLOCATIONS.

**3.1.   Capital Contributions.** Each of the Members agrees to make an initial Capital Contribution to the Company in the amounts set forth on Schedule A, as amended from time to time.

**3.2.   Capital Accounts.** A capital account (a "Capital Account") shall be established and maintained for each Member to which shall be credited the Capital Contributions, if any, made by such Member and such Member's allocable share of Net Income (and items thereof), and from which shall be deducted distributions to such Member of cash or other property and such Member's allocable share of Net Loss (and items thereof). To the extent not provided for in the preceding sentence, the Capital Accounts of the Members shall be adjusted and maintained in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv).

**3.3.   Allocations to Capital Accounts.**

(a) General Rule. Except as provided in section 3.4(b) or elsewhere in this Agreement, Net Income (and items thereof) and Net Loss (and items thereof) for any fiscal year shall be allocated among the Members in a manner such that the Capital Account of each Member, immediately after giving effect to such allocation, is, as nearly as possible, equal (proportionately) to the amount equal to the distributions that hypothetically would be made to such Member during such fiscal year pursuant to section 4.2, if (i) the Company were dissolved and terminated; (ii) its affairs were wound up and each Company asset was sold for cash equal to its Book Value (except that any Company asset that is a Realized Investment in such fiscal year shall be treated as if sold for an amount of cash equal to the sum of (x) the amount of any net cash proceeds actually received by the Company in connection with such Disposition and (y) the fair market value of any property actually received by the Company in connection with such Disposition); (iii) all Company liabilities were satisfied (limited with respect to each nonrecourse liability to the Book Value of the assets securing such liability); and (iv) the net assets of the Company were distributed in accordance with section 4.2 to the Members immediately after giving effect to such allocation. The Manager may, in their reasonable discretion, make such other assumptions (whether or not consistent with the above assumptions) as they deem necessary or appropriate in order to effectuate the intended economic arrangement of the Members.

(b) Allocations Relating to Last Fiscal Year. Except as otherwise provided elsewhere in this Agreement, if upon the dissolution and termination of the Company pursuant to section 9 and after all other allocations provided for in sections 3.4 and 3.5 have been tentatively made as if this section 3.4(b) were not in this Agreement, a distribution to the Members under section 9 would be different from a distribution to the Members under section 4.2, then Net Income (and items

7

Exhibit 7 - Page 7 of 20

Confidential Treatment Requested by Hillcrest Children's Center          HCC-CIVLIT 00000562

thereof) and Net Loss (and items thereof) for the fiscal year in which the Company dissolves and terminates pursuant to section 9 shall be allocated among the Members in a manner such that the Capital Account of each Member, immediately after giving effect to such allocation, is, as nearly as possible, equal (proportionately) to the amount of the distributions that would be made to such Member during such last fiscal year pursuant to section 4.2. The Manager may, in their reasonable discretion, apply the principles of this section 3.4(b) to any fiscal year preceding the fiscal year in which the Company dissolves and terminates (including through application of Section 761(e) of the Code) if delaying application of the principles of this section 3.4(b) would likely result in distributions under section 9 that are materially different from distributions under section 4.2 in the fiscal year in which the Company dissolves and terminates.

3.4 Special Allocations.

(a) The following special allocations shall be made in the following order:

(i) Minimum Gain Chargeback. Notwithstanding any other provision of this section 3, if there is a net decrease in company minimum gain (as defined in Treasury Regulations Sections 1.704-2(b)(2) and (d)) during any fiscal year, each Member shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to the portion of such Member's share of the net decrease in company minimum gain, determined in accordance with Treasury Regulations Sections 1.704-2(f) and (g). This subsection 3.5(a)(i) is intended to comply with the minimum gain chargeback requirement in such section of the Treasury Regulations and shall be interpreted consistently therewith.

(ii) Member Minimum Gain Chargeback. Notwithstanding any other provision of this section 3, if there is a net decrease in Company nonrecourse debt minimum gain attributable to a Member nonrecourse debt (as defined in Treasury Regulation Section 1.704-2(i)) during any fiscal year, the Members shall be specially allocated items of Company income and gain for such fiscal year (and, if necessary, subsequent fiscal years) in an amount equal to the portion of such Member's share of the net decrease in Member nonrecourse debt minimum gain attributable to such Member's nonrecourse debt, determined in accordance with Treasury Regulation Section 1.704-2(i). This section 3.5(a)(ii) is intended to comply with the minimum gain chargeback requirement in such section of the Treasury Regulations and shall be interpreted consistently therewith.

(iii) Qualified Income Offset. In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (5) or (6), items of Company income and gain shall be specially allocated to each such Member in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations, the deficit, if any, in such Member's Capital Account (as determined under Treasury Regulations Section 1.704-1) as quickly as possible, provided that an allocation pursuant to this subsection 3.5(a)(iii) shall be made only if and to the extent that such Member would have such Capital Account deficit after all other allocations provided for in sections 3.4 and 3.5 have been tentatively made as if this subsection 3.5(a)(iii) were not in this Agreement. This section 3.5(c)(iii) is intended to comply with the qualified income offset provisions in Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(iv) Gross Income Allocation. In the event any Member has a deficit balance in such Member's Capital Account (as determined after crediting such Capital Account for any amounts that such Member is obligated to restore or is deemed obligated to restore pursuant to Treasury Regulations Section 1.704-2), items of Company income and gain shall be specially allocated to such Member in an amount and manner sufficient to eliminate such deficit (as so determined) of

8

Exhibit 7 - Page 8 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000563

such Member's Capital Account as quickly as possible; provided that an allocation pursuant to this section 3.5(a)(iv) shall be made only if and to the extent that such Member would have such Capital Account deficit (as so determined) after all other allocations provided for in sections 3.4 and 3.5 (other than section 3.5(a)(iii)) have been tentatively made as if this section 3.5(a)(iv) were not in this Agreement.

(v) Loss Allocation Limitation. No allocation of Net Loss (or items thereof) shall be made to any Member to the extent that such allocation would create or increase a deficit in such Member's Capital Account (as determined after debiting such Capital Account for the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4),(5) and (6) and crediting such Capital Account for any amounts that such Member is obligated to restore or is deemed obligated to restore pursuant to Treasury Regulations Section 1.704-2).

(b) Allocation Periods. In each fiscal year of the Company, Net Income (and items thereof) and Net Loss (and items thereof) shall be allocated:

(i) at the time of any distribution pursuant to section 4.2, for the period commencing on the later of (x) the first day of such fiscal year and (y) the date of the most recent prior distribution in such fiscal year, and ending on the date immediately preceding such distribution; and

(ii) as of the last day of each fiscal year of the Company, for the period commencing on the later of (x) the first day of such fiscal year and (y) the date of the most recent prior distribution in such fiscal year, and ending on such last day.

(c) Transfer of or Change in Interests. The Manager are authorized to adopt any convention or combination of conventions likely to be upheld for federal income tax purposes regarding the allocation and/or special allocation of items of Company income, gain, loss, deduction and expense with respect to a newly issued Interest, a transferred Interest and a redeemed Interest. A transferee of an Interest in the Company shall succeed to the Capital Account of the transferor Member to the extent it relates to the transferred Interest.

(d) Syndication and Organization Expenses. Syndication and organization expenses (as defined in Section 709(a) of the Code) for any fiscal year shall be allocated to the Capital Accounts of the Members so that, as nearly as possible, the cumulative amount of such expenses allocated with respect to each Member corresponds to the amount paid by such Member.

3.5. Tax Allocations.

(a) General Rules. Except for Tax Losses, which shall be allocated pro rata, and as otherwise provided in section 3.5(b), items of income, gain, loss, deduction and credit realized by the Company shall, for each fiscal period, be allocated, for federal, state and local income tax purposes, among the Members in the same manner as the Net Income (or items thereof) or Net Loss (or items thereof) of which such items are components were allocated pursuant to sections 3.3 and 3.4, subject, however, to any adjustment required to comply with the Treasury Regulations promulgated under Section 704 of the Code, including any adjustment arising as a result of the special tax allocations set forth in subsection 3.5(b) below.

(b) Section 704(c).

(i) Income, gains, losses and deductions, with respect to any property (other than cash) contributed or deemed contributed to the capital of the Company shall, solely for income tax purposes, be allocated among the Members so as to take account of any variation between the

9

Exhibit 7 - Page 9 of 20

Confidential Treatment Requested by Hillcrest Children's Center

adjusted basis of the property to the Company for federal income tax purposes and its fair market value at the time of the contribution in accordance with Section 704(c) of the Code and the Treasury Regulations promulgated thereunder. Such allocations shall be made in such manner and utilizing such permissible tax elections as determined in the sole and absolute discretion of the Manager.

      (ii) If there is a revaluation of Company property pursuant to the definition of Book Value, subsequent allocations of income, gain, loss and deduction with respect to such property shall be allocated among the Members so as to take account of any variation between the adjusted tax basis of such property to the Company for federal income tax purposes and its fair market value in accordance with Section 704(c) of the Code and the Treasury Regulations promulgated thereunder. Such allocations shall be made in such manner and utilizing such permissible tax elections as determined in the sole and absolute discretion of the Manager.

      (c) Capital Accounts Not Affected. Allocations pursuant to this section 3.5 are solely for federal, state and local tax purposes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or allocable share of Net Income (or items thereof) or Net Loss (or items thereof).

      (d) Tax Allocations Binding. The Members acknowledge that they are aware of the tax consequences of the allocations made by this section 3.5 and hereby agree to be bound by the provisions of this section 3.5 in reporting their respective shares of items of Company income, gain, loss, deduction and expense.

### 3.6. Determinations by Manager.

      All matters concerning the computation of Capital Accounts, the allocation of items of Company income, gain, loss, deduction and expense for all purposes of this Agreement and the adoption of any accounting procedures not expressly provided for by the terms of this Agreement shall be determined by the OMGR in its reasonable discretion. Such determinations shall be final and conclusive as to all the Members. Without in any way limiting the scope of the foregoing, if and to the extent that, for income tax purposes, any item of income, gain, loss, deduction or expense of any Member or the Company is constructively attributed to, respectively, the Company or any Member, or any contribution to or distribution by the Company or any payment by any Member or the Company is recharacterized, the OMGR may, in its reasonable discretion and without limitation, specially allocate items of Company income, gain, loss, deduction and expense and/or make correlative adjustments to the Capital Accounts of the Members in a manner so that the net amount of income, gain, loss, deduction and expense realized by each relevant party (after taking into account such special allocations) and the net Capital Account balances of the Members (after taking into account such special allocations and adjustments) shall, as nearly as possible, be equal, respectively, to the amount of income, gain, loss, deduction and expense that would have been realized by each relevant party and the Capital Account balances of the Members that would have existed if such attribution and/or recharacterization and the application of this sentence of this section 3.6 had not occurred. Notwithstanding anything expressed or implied to the contrary in this Agreement, in the event the OMGR shall determine, in its reasonable discretion, that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto, are computed in order to effectuate the intended economic sharing arrangement of the Members, the Manager may make such modification.

      3.7. Section 7701 Election. It is the intention of the Members that the Company be treated as a Partnership for federal income tax purposes. Garfield Taylor shall be authorized to make a protective election for the Company to be treated as a Partnership for federal income tax purposes or IRS Form 8832, Entity Classification, Election, in the manner described in Section

Exhibit 7 - Page 10 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000565

301.7701-3(c) of the Treasury Regulations. By executing this Agreement, each of the Members hereby consents to any election made by Garfield Taylor on behalf of the Company to be treated as a Company for federal income tax purposes.

### 4. DISTRIBUTIONS.

**4.1. No Right to Withdraw.** No Member shall have the right to withdraw or demand distributions of any amount in its Capital Accounts, except as expressly provided in this section 4.

**4.2. Ordinary Distributions.**

(a) **Timing.** Subject to the provisions of and distributions required in Sections 4.2(b) and 4.4, after provision for sufficient working capital consistent with good fiscal operating policy and management and such other needs of the Company as the OMGR, in its reasonable discretion, shall deem necessary, the Company shall cause Distributable Cash to be distributed As follows:

(i) The first One Hundred Eighty-Nine Thousand Dollars ($189,000) shall be distributed to the Class A Member; and then

(ii) The next Three Hundred Thousand Dollars ($300,000) shall be distributed to the Class B Member; and then

(iii) The balance, if any, shall be distributed to the Members in proportion to their Membership Interests.

(b) **Reserve Account.** As security for the Hillcrest Loan, the Company has agreed to establish a Reserve Account. Until the Reserve Account reaches a balance equal to twenty-five percent (25%) of the Principal of the Hillcrest Loan ("**Fully Funded**"), Distributable Cash shall be disbursed as follows:

(i) The first One Hundred Eighty-Nine Thousand Dollars ($189,000) shall be distributed to the Class A Member; and then

(ii) The lesser of (a) twenty percent (20%) of the total Distributable Cash, or (b) all Distributable Cash remaining after making the required distribution, as set forth in Section 4.2 (b) (i) immediately above to the Class A Member, shall be deposited into the Reserve Account, which shall be held in an interest-bearing, federally insured banking account acceptable to the Board of Managers; and then

(iii) The next Three Hundred Thousand Dollars ($300,000) shall be distributed to the Class B Member; and then

(iv) The balance, if any, shall be distributed to the Members in proportion to their Membership Interests.

Upon the Reserve Account being Fully Funded, all distributions of Distributable Cash shall be made in accordance with Section 4.2(a) above.  Once the Reserve Account becomes "Distributable" (as defined in the Loan Agreement), then seventy percent (70%) of funds therein shall be distributed to the Class B Member, and thirty percent (30%) shall be distributed to the Class A Member, and the Reserve Account shall be closed.

(c) **Special Default.** The distributions set forth in Sections 4.2(a)(i) and 4.2(b)(i) above shall be "**Required Distributions**", which if not made shall give the Class A Member the option to

Exhibit 7 - Page 11 of 20

Confidential Treatment Requested by Hillcrest Children's Center        HCC-CIVLIT 00000566

declare a Special Default which shall be an Event of Termination. For purposes of this provision, the determination of whether the Required Distribution was satisfied shall be made by dividing all distributions made to the Class A Member over a fiscal quarter by three (3) in order to arrive at an average monthly distribution ("AMD") figure for that quarter. If the AMD is equal to or greater than the Required Distribution then there shall be no Special Default. If the AMD is less than the Required Distribution then the Class A Member may exercise its option to declare a Special Default, provided however that any such declaration must be made in writing and delivered to the Operations Manager prior to any further distributions being made to the Class A Member or the option shall be deemed waived.

**4.3. Distributions in Kind.** Distributions in kind shall not be permitted.

**4.4. Restrictions on Distributions.** The foregoing provisions of this section 4 to the contrary notwithstanding, no distribution shall be made (a) if such distribution would violate any contract or agreement to which the Company is then a party or any law, rule, regulation, order or directive of any Governmental Authority then applicable to the Company, (b) to the extent that the OMGR reasonably determines that any amount otherwise distributable should be retained by the Company to pay, or to establish a reserve for the payment of, any liability or obligation of the Company, whether liquidated, fixed, contingent or otherwise or (c) to the extent that the OMGR reasonably determines that the cash available to the Company is insufficient to permit such distribution.

**4.5. Record Holders.** Any distribution of Company assets, whether pursuant to this section 4 or otherwise, shall be made only to Persons who, according to the books and records of the Company, were the holders of record of Interests on the date determined by the Board of Managers as of which the Members are entitled to any such distribution.

**4.6. Final Distribution.** The final distributions following dissolution of the Company shall be made in accordance with the provisions of section 9.5.

**5. MANAGEMENT.**

**5.1.   Manager.**

(a)     The Company's business shall be managed by three Managers. The Class B Member shall appoint one (1) Manager who shall be called the Operations Manager ("OMGR"). The Class A Member shall appoint two (2) Managers who shall collectively be called the Administrative Security Manager ("A/SMGR"). A Manager may resign at any time. A Manager may be removed, and a successor selected, by the Class of Members that appointed that Manager. In the event of death, disability or incapacity of a Manager, which prohibits said Manager from competently functioning as a Manager, then in that event, the Class of Members that appointed this Manager shall immediately appoint a successor Manager .

(b)     A Manager shall not be entitled to compensation for the services performed by the Manager for the Company.

(c)     The Board of Managers shall be entitled to utilize for the Company such contractors, consultants, attorneys, employees or others, whether firms or individuals, whether or not affiliated with Members, as the Manager deem reasonable for furtherance of the Company's business or protection of the Company's assets.

**5.2.   Management.**

12

**Exhibit 7 - Page 12 of 20**

**Confidential Treatment Requested by Hillcrest Children's Center**

**HCC-CIVLIT 00000567**

Hillcrest Funding Op. Agr.
2.6.2009

(a)     Subject to the restrictions in Section 5.4, the **Board of Managers** shall have the exclusive right, power and authority:

(i)     To manage the business of the Company and to make all decisions regarding the business of the Company. The Board of Managers may delegate prescribed functions to any employee, agent, or consultant;

(ii)     To borrow money and issue evidences of indebtedness in furtherance of any or all of the purposes of the Company, and to secure the repayment by deed of trust, mortgage, security interest, pledge, or other lien or encumbrance on Company properties or any other assets of the Company;

(iii)     Subject to a proposal initiated by and vote of a Majority in Interest, to prepay in whole or in part, negotiate, refinance, recast, increase, renew, modify, or extend any secured or other indebtedness affecting Company assets and in connection therewith to execute any extensions, renewals or modifications of any evidences of indebtedness secured by deeds of trust, mortgages, security interests, pledges, or other encumbrances covering such assets;

(iv)     To authorize, by a unanimous vote, each withdrawal of funds from the Trading Account, which vote shall take place on the last day of each month, and which authorization shall be given upon the Board of Managers finding that (A) an amount equal to the original principal of the Hillcrest Loan shall remain in the Trading Account subsequent to the proposed withdrawal, (B) the Company is not in default under the Hillcrest Loan, and (C) that the Company's Purpose shall not be impeded, impaired or otherwise harmed by the proposed withdrawal. All withdrawals shall be deposited directly into the Company's bank account and then immediately distributed in accordance with Section 4.2 of this Agreement.

(b)     Subject to the restrictions in Section 5.4, the **Operations Manager** is granted the exclusive right, power, and authority:

(i)     To own, acquire by lease or purchase, develop, maintain, improve, grant options with respect to, sell, convey, finance, assign, mortgage, or lease real estate and/or personal property and/or incidental to the accomplishment of the purposes of the Company.

(ii)     To execute any and all agreements, contracts, documents, certifications, and instruments necessary or convenient in connection with the Company's Purpose;

(iii)     To have exclusive authority to direct the activities in the Trading Account

(iv)     To enter into any kind of contract or activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of the purposes of the Company, so long as those activities and contracts may be lawfully carried on or performed by a limited liability company under applicable laws and regulations; and

(v)     To make all authorized disbursements from the Company for all Company Expenses and disbursements to the Members as specifically set forth herein and more specifically in Section 4.2 above.

Exhibit 7 - Page 13 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000568

Hillcrest Funding Op. Agr.
2.6.2009

(c)     Subject to the restrictions in Section 5.4, the **Administrative/Security Manager** is granted the exclusive right, power, and authority to authorize any withdrawal of funds from the Trading Account where such withdrawal would reduce the balance of the Trading Account to less than the full amount of the Principal of the Hillcrest Loan. The foregoing notwithstanding, if a Majority in Interest votes to prepay the Hillcrest Loan, then the A/SMGR shall authorize the withdrawal of the Principal.

(d)     All actions taken by the Board of Managers on behalf of the Company from the date of its organization to the date of this Agreement are ratified and confirmed.

### 5.3.   Duties of the Manager.

(a)     The OMGR shall provide for the operation of the Company business and shall devote so much of its time thereto as it determines to be necessary for the efficient operation and management of the Company's business.

(b)     The Board of Managers shall promptly provide each Member with copies of all notices of default or claim of default by (A) any creditor or other party who is a party to a contract or other agreement with the Company for an aggregate consideration in excess of $10,000, (B) any lender or other party whose obligations are secured by a lien upon any assets of the Company.

(c)     The A/SMGR shall promptly advise and inform the Members of any transaction, notice, event or proposal that does or could significantly affect, either adversely or favorably, the assets or business of the Company.

(d)     The A/SMGR shall cause the Company to carry and maintain in force, at the expense of the Company, the insurance deemed reasonably prudent by the Manager.

### 5.4.   Approval Rights of Members.

Notwithstanding the following Major Decisions shall require the prior written consent of Members holding at least seventy-five percent (75%) of the Interests:

(i)     Electing to dissolve the Company.

### 5.5.   Execution of Documents.

(a)     Any instrument may be executed and delivered on behalf of the Company by the Board of Managers, including any deed, deed of trust, note, or other evidence of indebtedness, lease agreement, security agreement, financing statement, contract of sale, or other instrument purporting to convey or encumber, in whole or in part, any or all of the assets of the Company, at any time held in its name, or any receipt or compromise or settlement agreement with respect to the accounts receivable and claims of the Company; and no other signature shall be required for any such instrument to be valid, binding, and enforceable against the Company in accordance with its terms. All persons may rely thereon and shall be exonerated from any and all liability if they deal with the Manager on the basis of documents approved and executed on behalf of the Company by the Board of Managers.

(b)     Any person dealing with the Company, a Manager, the Board of Managers, or a Member may rely upon the certificate signed by the Board of Managers as to:

(i)     the identity of the Members or Managers;

14

Exhibit 7 - Page 14 of 20

Confidential Treatment Requested by Hillcrest Children's Center

Hillcrest Funding Op. Agr.
2.6.2009

   (ii) acts by the Members or Managers;

   (iii) any act or failure to act by the Company or as to any other matter whatsoever involving the Company or any Member.

 5.6. Action by Members.

  Any approval or action that under this Agreement may be given or taken by Members holding a specified percentage of the Interests may be given or taken with the written consent or approval of Members holding that specified percentage of the Interests.

  5.7. Designation of Tax Matters Member. Garfield Taylor is hereby designated as the "Tax Matters Member" under Section 6231(a)(7) of the Code, to manage administrative tax proceedings conducted at the Company level by the Internal Revenue Service with respect to Company matters Garfield Taylor is specifically directed and authorized to take whatever steps he, in his sole discretion, deems necessary or desirable to perfect such designation, including, without limitation, filing any forms or documents with the Internal Revenue Service and taking such other action as may from time to time be required under Treasury Regulations. Expenses of administrative proceedings relating to the determination of Company items at the Company level undertaken by the Tax Matters Member shall be Company expenses. Without limiting the generality of the foregoing, Garfield Taylor shall have the sole and exclusive authority to make any elections on behalf of the Company permitted to be made pursuant to Section 754 or any other section of the Code or the regulations promulgated thereunder.

  5.8. Other Activities of the Members and Related Persons.

  (a) Each Member expressly agrees that, except as otherwise set forth expressly herein, the other Members, their respective Affiliates, and their respective officers, directors, agents and employees may engage independently or with others, for their own accounts and for the accounts of others, in other business ventures and activities of every nature and description whether such ventures are competitive with the business of the Company or otherwise, including, without limitation, purchasing, selling or holding Securities for the account of any other Person or enterprise or for its or his own account, regardless of whether or not any such Securities are also purchased, sold or held for the account of the Company or the Company.

  (b) The Board of Managers may, from time to time, employ any Person or engage third parties to render services to the Company on such terms and for such compensation as the Manager may reasonably determine, including, without limitation, attorneys, investment consultants, brokers or finders, independent auditors and printers. Such employees and third parties may be Affiliates of any Member. Persons retained, engaged or employed by the Company may also be engaged, retained or employed by and act on behalf of one or more Members or any of their respective Affiliates.

  (c) No Related Person or affiliate of any Member shall be obligated to disclose or refer to the Company any particular investment opportunity.

  5.9. Certificates and Fictitious Name Filings.

  (a) Authority. The Board of Managers are hereby authorized to execute and file a certificate of formation pursuant to the Act and to execute or cause to be executed all other instruments, certificates, notices and documents, and to do or cause to be done all such filing, recording, publishing and other acts as may be deemed by the Board of Managers to be necessary or

Exhibit 7 - Page 15 of 20

Confidential Treatment Requested by Hillcrest Children's Center          HCC-CIVLIT 00000570

Hillcrest Funding Op. Agr.
2.6.2009

appropriate from time to time to comply with all applicable requirements for the formation or operation or, when appropriate, termination of a limited liability company in the District of Columbia and all other jurisdictions where the Company does or shall desire to conduct its business.

(b) Further Assurances. If requested by the Board of Managers, the Members shall immediately execute all certificates and other documents consistent with the terms of this Agreement necessary for the Manager to accomplish all filing, recording, publishing and other acts as may be appropriate to comply with all requirements for: (i) the formation and operation of a limited liability company under the laws of the District of Columbia; (ii) if the Board of Managers deems it advisable, the operation of the Company as a limited liability company, or an entity in which the Members have limited liability, in all jurisdictions where the Company proposes to operate; and (iii) all other filings required to be made by the Company.

5.10. Expenses. The Company will be responsible for all expenses of the Company ("Company Expenses"), including, without limitation, (i) all expenses incurred in connection with Company operations, including payment of the debt service on the Hillcrest Loan and all third party out-of-pocket costs and expenses of custodians, paying agent, registrar, counsel and independent accountants, and any taxes, fees or other government charges levied against the Company, (ii) all costs incurred in connection with the preparation of or relating to reports made to the Members, (iii) all costs of, but not awards related to litigation involving the Company, directly or indirectly, including, without limitation, attorneys' fees incurred in connection therewith, (iv) all costs related to the Company's indemnification obligations set forth in Section 8 and (v) all costs related to organization, including attorney's fees for preparation of this Agreement and the Hillcrest Loan documents.

6. BOOKS OF ACCOUNT, RECORDS AND REPORTS.

6.1. Maintenance of Books and Records, Etc. The Company shall maintain books and records in such manner as is utilized in preparing the Company's United States federal information tax return in compliance with Section 6031 of the Code, and such other records as may be required in connection with the preparation and filing of the Company's required United States federal, state and local income tax returns or other tax returns or reports of foreign jurisdictions, including, without limitation, the records reflecting the Capital Accounts and adjustments thereto specified in section 3. All such books and records shall at all times be made available at the principal office of the Company and shall be open to the reasonable inspection and examination of the Members or their duly authorized representatives during normal business hours.

6.2. United States Federal, State and Local Income Tax Information. The Manager will use their best efforts to cause the Company to transmit, within ninety (90) days after the end of each fiscal year of the Company, to each Person who was a Member at any time during the fiscal year then ended (including any permitted assignee of a Member who so requests in writing) an Internal Revenue Service Schedule K-1 and such Company tax information as the Manager reasonably believes shall be necessary for the preparation by such Person of his United States federal, state and local tax returns in accordance with any applicable laws, rules and regulations then prevailing. Such information shall include a statement showing such Person's share of distributions, income, gain, loss, deductions and credits and other relevant fiscal items of the Company for such fiscal year. Promptly upon the request of any Member, the Manager will cause the Company to furnish such Member all United States federal, state and local income tax returns or information returns, if any, which the Company is required to file.

6.3. Financial Statements and Other Reports.

16

Exhibit 7 - Page 16 of 20

Confidential Treatment Requested by Hillcrest Children's Center                    HCC-CIVLIT 00000571

Hillcrest Funding Op. Agr.
2.6.2009

(a) Annual Financial Information. Subject to the Board of Managers receiving all necessary information from third parties, within ninety (90) days after the end of each fiscal year of the Company, the Board of Managers shall send to each Person who was a Member of the Company at any time during the fiscal year then ended an internally prepared statement of assets, liabilities and Members' capital as of the end of such fiscal year and related statements of income or loss and changes in assets, liabilities and Members' capital, all prepared on the same basis used for the computation of adjustments to Capital Accounts.

(b) Semi-Annual Financial Information. Promptly after the end of the first six calendar months in each year, the Board of Managers shall mail to each Person who is a Member on the date of dispatch an report providing narrative and summary financial information with respect to the Company.

### 7. TRANSFER OF INTERESTS; SUBSTITUTE AND ADDITIONAL MEMBERS.

**7.1. Assignments.** No Member may withdraw from the Company or make a demand for paid-in capital until the termination of the Company. No Member may sell, transfer, assign, hypothecate, pledge or otherwise dispose of or encumber (each, an "**Assignment**") all or any part of such Member's interest in the Company (whether voluntarily, involuntarily or by operation of law) without the prior written consent of a Majority in Interest of the Members. Each Member and each assignee thereof hereby agrees that it will not effect any Assignment of all or any part of its interest in the Company (whether voluntarily, involuntarily or by operation of law) in any manner contrary to the terms of this Agreement or that violates or causes the Company or the Members to violate the Securities Act, the Securities Exchange Act, the Investment Company Act, or the laws, rules, regulations, orders and other directives of any Governmental Authority, or to cause the Company any adverse tax consequences.

**7.2. Effect of Retirement, Withdrawal, Dissociation, Bankruptcy, Dissolution, Death, Etc. of Member.** The retirement, withdrawal, dissociation, bankruptcy, death, incapacity or adjudication of incompetency of a Member (such Member herein referred to as the "**Affected Member**") shall have no effect upon the continuation of the Company. The trustee, executor, administrator, committee or guardian of the Affected Member or of the Affected Member's estate, as the case may be, shall have all the rights of the Affected Member solely for the purpose of settling or managing the estate and only such power as the Affected Member possessed to assign all or part of the Affected Member's Membership Interest.

**7.3. Substitute Members.** No assignee of all or any part of Membership Interest in the Company shall be admitted to the Company as a substitute member (a "**Substitute Member**") unless and until (a) a Majority in Interest of the Members shall have consented in writing to such admission, (b) the assignee has executed a counterpart of this Agreement (as modified or amended from time to time) and such other instruments as the Manager may reasonably deem necessary or appropriate to confirm the undertaking of the assignee to be bound by all the terms and provisions of this Agreement and (c) the assignee has undertaken in writing to pay all expenses incurred by the Company in connection with such assignment and substitution. Unless and until an assignee of an interest in the Company becomes a Substitute Member, such assignee shall not be entitled to exercise any vote, consent or any other right or entitlement with respect to such interest in the Company.

### 8. INDEMNIFICATION OF MANAGER.

**8.1. In General.** The Company shall, to the maximum extent permitted by applicable law, indemnify and hold harmless each Manager, Related Persons and the Company and each Member

17

Exhibit 7 - Page 17 of 20

Confidential Treatment Requested by Hillcrest Children's Center                                        HCC-CIVLIT 00000572

Hillcrest Funding Op. Agr.
2.6.2009

shall release each Manager or Related Person, to the fullest extent permitted by law, from and against any and all Damages, including, without limitation, Damages incurred in investigating, preparing or defending any action, claim, suit, inquiry, proceeding, investigation or appeal taken from any of the foregoing by or before any court or Governmental Authority, whether pending or threatened, whether or not Manager or Related Person is or may be a party thereto, which arises out of, relates to or is in connection with this Agreement or the management or conduct of the business or affairs of the Company, the Company, any Person in which the Company has a direct or indirect interest or any of their respective Affiliates (including, without limitation, actions taken or not taken by any Related Person as a director of any Person in which the Company has a direct or indirect interest or any Affiliates of such Person or activities of any Related Person which relate to the offering and selling of interests in the Company), except for any such Damages that are finally found by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence or intentional misconduct of, or breach of this Agreement or knowing violation of law by, the Person seeking indemnification. Such attorneys' fees and expenses shall be paid by the Company as they are incurred upon receipt, in each case, of an undertaking by or on behalf of the Manager or Related Person on whose behalf such expenses are incurred to repay such amounts if it is ultimately determined that such Manager or Related Person is not entitled to indemnification with respect thereto.

The termination of any proceeding by settlement shall not be deemed to create a presumption that the Manager or Related Person involved in such settlement acted in a manner which constituted bad faith, gross negligence, intentional misconduct, a breach of this Agreement or a knowing violation of law. The indemnification provisions of this section 8.1 may be asserted and enforced by, and shall be for the benefit of, each Manager or Related Person, and each Manager or Related Person is hereby specifically empowered to assert and enforce such right. The right of any Manager or Related Person to the indemnification provided herein shall be cumulative of, and in addition to, any and all rights to which such Manager or Related Person may otherwise be entitled by contract or as a matter of law or equity and shall extend to his or its heirs, successors, assigns and legal representatives. All judgments against a Manager or Related Person wherein such Manager or Related Person is entitled to indemnification shall, to the extent available, be satisfied from Company assets.

8.2. **Contribution.** If for any reason the indemnity provided for in section 8.1 and to which a Manager or Related Person is otherwise entitled is unavailable to such Manager or Related Person in respect of any Damages, then the Company, in lieu of indemnifying such Manager or Related Person, shall contribute to the amount paid or payable by such Manager or Related Person as a result of such Damages in the proportion the total capital of the Company (exclusive of the balance in the Manager or Related Person's Capital Accounts (which, for purposes of this section 8.2 in the case of a Related Person which is not a Member, shall mean the Capital Account of the Member with respect to which such Related Person is an Affiliate)) bears to the total capital of the Company (including the balance in the Manager or Related Person's Capital Accounts), which contribution shall be treated as an expense of the Company.

8.3. **Obligations of the Members.** Except as specifically set forth to the contrary herein, no Member shall be obligated with respect to any indemnification or contribution provided for in this Agreement for any amount which exceeds the amount of such Members, Capital Commitment, plus the sum of any distributions made to such Member.

8.4. **Not Liable for Return of Capital.** No Member nor any Affiliate, officer, director, manager, member, stockholder, partner, employee or agent of any Member or of any such Person shall be personally liable for the return of the Capital Contributions of any other Member or any portion thereof or interest thereon, and such return shall be made solely from available Company assets, if any.

**Exhibit 7 - Page 18 of 20**

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000573

Hillcrest Funding Op. Agr.
2.6.2009

## 9. DURATION AND TERMINATION OF THE COMPANY.

9.1. **Term.** The existence of the Company shall commence on the date of the filing of a certificate of formation described in the office of the Mayor of the District of Columbia in accordance with the Act and shall continue until the first to occur of the following events (an "Event of Termination"):

(a) a determination by the Members, in accordance with Section 5.4, to terminate the Company; or

(b) repayment in full of the Hillcrest Loan; or

(c) failure of the parties to renew or agree upon the terms of renewal of the Hillcrest Loan; or

(d) the occurrence of a Special Default; or

(e) any event set forth under the Act.

9.2. **Winding-Up.** Upon the occurrence of an Event of Termination, the Company shall be dissolved and wound-up. In connection with the dissolution and winding-up of the Company, the Board of Managers or, if the Board of Managers chooses to appoint a liquidator or other representative (the "Representative"), such Representative shall proceed with the sale or liquidation of all of the assets of the Company (including the conversion to cash or cash equivalents of its notes or accounts receivable) and shall apply and distribute the proceeds of such sale or liquidation in the following order of priority, unless otherwise required by mandatory provisions of applicable law:

(a) first, to pay (or make provision for payment of) all expenses of the liquidation in satisfaction of all obligations of the Company for such expenses of liquidation;

(b) second, to pay (or to make provision for the payment of) all creditors of the Company (including Members who are creditors of the Company) and the expenses of liquidation, in the order of priority provided by law or otherwise, in satisfaction of all debts, liabilities or obligations of the Company due such creditors and of such expenses of liquidation;

(c) third, to the establishment of any reserve which the Board of Managers or the Representative, as the case may be, may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company (such reserve may be paid over by the Board of Managers or the Representative to an escrow agent acceptable to the Board of Managers or the Representative, to be held for disbursement in payment of any of the aforementioned liabilities and, at the expiration of such period as shall be deemed advisable by the Board of Managers or the Representative, for distribution of the balance in the manner hereinafter provided in this section 9.2); and

(d) fourth, after the payment (or the provision for payment) of all debts, liabilities and obligations of the Company in accordance with clauses (a) and (b) above, to the Members or their legal representatives in proportion to balances in their respective positive Capital Accounts as adjusted pursuant to section 3 for all Company operations up to and including such liquidation no later than the end of the fiscal year in which the Event of Termination occurs or, if later, within ninety days after the date of the liquidation of the Company.

Exhibit 7 - Page 19 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000574

Hillcrest Funding Op. Agr.
2.6.2009

(e) fifth, as set forth in Sections 4.2(a) above.

9.3. **Distributions in Cash or in Kind.** Upon dissolution, the Board of Managers or the Representative, as the case may be, may at its discretion (a) liquidate all or a portion of the Company assets and apply the proceeds of such liquidation in the manner set forth in section 9.2 or (b) hire independent appraisers to appraise the fair market value of Company assets not sold or otherwise disposed of (the cost of such appraisal to be considered an expense of the Company) and allocate any unrealized gain or loss determined by such appraisal to the Members' respective Capital Accounts as though the properties in question had been sold on the date of distribution and, after giving effect to any such adjustment, distribute said assets in the manner set forth in section 9.2, provided that the Board of Managers or the Representative shall in good faith attempt to liquidate sufficient Company assets to satisfy in cash the debts and liabilities described in section 9.2.

9.4. **Time for Liquidation.** A reasonable amount of time shall be allowed for the orderly liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Board of Managers or the Representative to minimize the losses attendant upon such liquidation.

9.5. **Termination.** Upon compliance with the foregoing distribution plan, the Company shall cease to be such, and the Board of Managers or the Representative, as the case may be, shall execute, acknowledge and cause to be filed with the office of the Mayor of the District of Columbia a certificate of cancellation of the Company pursuant to the power of attorney contained in section 12.13. The provisions of this Agreement shall remain in full force and effect during the period of winding up and until the filing of such certificate of cancellation of the Company with the office of the Mayor of the District of Columbia.

10. AMENDMENTS.

10.1. **Consent to Amendments.** Sections 3.1, 3.2, 3.3, 4.2, 5.1, 5.2, 5.3, 5.4, 8.1, 8.2, 9.1, 10, 12.13 and 12.18 of this Agreement (and all defined terms as used therein) may be modified or amended only with the written consent of a Majority in Interest and the Board of Managers.

10.2. **Amendments by Members.** Notwithstanding the provisions of section 10.1 and this section 10.2, the Board of Managers shall have the authority to amend or modify this Agreement without any vote or other action by the other Members, as expressly permitted by section 12.13 or to satisfy any requirements, conditions, guidelines, directives, orders, rulings or regulations of any Governmental Authority, or as otherwise required by applicable law. Subject to the provisions of section 10.1, the Board of Managers shall have the authority to amend or modify this Agreement without any vote or other action by the other Members (a) to reflect the transfers of interests of Members pursuant to section 7, (b) to form, qualify or continue the Company as a limited liability company in all jurisdictions in which the Company conducts or plans to conduct business, (c) to change the name of the Company, (d) to cure any ambiguity or correct or supplement any provision herein contained which may be incomplete or inconsistent with any other provision herein contained or (e) to correct any typographical errors contained herein. A copy of each amendment and modification of this Agreement shall be sent to the Members.

11. ACCOUNTING TERMS; INTERPRETATIONS.

11.1. **Accounting Terms and Determinations.** All accounting terms used in this Agreement and not otherwise defined shall be accepted accounting principles, consistently applied.

11.2. **Interpretation.**

Exhibit 7 - Page 20 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000575

Hillcrest Funding Op. Agr.
2.6.2009

(a) Plural. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or neuter gender shall include the masculine, the feminine and the neuter.

(b) Captions. Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend or otherwise affect the scope or intent of this Agreement or any provision hereof.

11.3. **Manager's Standard of Care.** Whenever in this Agreement a Manager (whether the OMGR, A/SMGR or the Board of Managers) is permitted or required to make a decision (a) in its "sole and absolute discretion," "sole discretion," "discretion" or under a grant of similar authority or latitude, the Manager shall be entitled to consider such interests and factors as it desires, including its own interests or (b) in its "good faith" or under another express standard, the Manager shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or other applicable law.

## 12. MISCELLANEOUS.

12.1. **Waiver of Partition.** Each of the Members hereby irrevocably waives any and all rights that such Member may have to maintain any action for partition of any of the Company's property.

12.2. **Entire Agreement.** This Agreement together with the documents expressly referred to herein, each as amended or supplemented, constitutes the entire agreement among the parties with respect to the subject matter herein or therein. They supersede any prior agreement or understanding among the parties hereto.

12.3. **Choice of Law.** THIS AGREEMENT AND THE RIGHTS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE DISTRICT OF COLUMBIA AND, WITHOUT LIMITATION THEREOF, THAT THE ACT AS NOW ADOPTED OR AS MAY BE HEREAFTER AMENDED SHALL GOVERN THE LIMITED LIABILITY COMPANY ASPECTS OF THIS AGREEMENT.

12.4. **Successors and Assigns.** Except as otherwise specifically provided herein, this Agreement shall be binding upon and inure to the benefit of the parties and their legal representatives, heirs, administrators, executors, successors and assigns.

12.5. **Interpretation.** Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or neuter gender shall include the masculine, the feminine and the neuter.

12.6. **Captions.** Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend or otherwise affect the scope or intent of this Agreement or any provision hereof.

12.7. **Severability.** If any provision of this Agreement, or the application of such provision to any Person or circumstance, shall be held invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement, or the application of such provision in jurisdictions or to Persons or circumstances other than those to which it is held invalid, illegal or unenforceable shall not be affected thereby.

12.8. **Counterparts.** This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument. It shall not be necessary for all Members to execute the same counterpart hereof.

Exhibit 7 - Page 21 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000576

Hillcrest Funding Op. Agr.
2.6.2009

12.9. **Additional Documents.** Subject to the provisions of this Agreement, each party hereto agrees to execute, with acknowledgment or affidavit, if required, any and all documents and writings which may be necessary or expedient in connection with the creation of the Company and the achievement of its purposes, specifically including (a) any amendments to this Agreement and such certificates and other documents as the Board of Managers deems necessary or appropriate to form, qualify or continue the Company as a limited liability company in all jurisdictions in which the Company conducts or plans to conduct business and (b) all such agreements, certificates, tax statements, tax returns and other documents as may be required of the Company or its Members by the laws of the United States of America or any jurisdiction in which the Company conducts or plans to conduct business, or any political subdivision or agency thereof.

12.10. **Non-Waiver.** No provision of this Agreement shall be deemed to have been waived unless such waiver is contained in a written notice given to the party claiming such waiver has occurred, provided that no such waiver shall be deemed to be a waiver of any other or further obligation or liability of the party or parties in whose favor the waiver was given.

12.11. **Manner of Consent.** Any consent or approval required by this Agreement may be given as follows:

(a) by a written consent given by the consenting Member at or prior to the taking of the action for which the consent is solicited, provided that such consent shall not have been nullified by either (i) notification to other Members by the consenting Member at or prior to the time of, or the negative vote by such consenting Member at, any meeting held to consider the taking of such action or (ii) notification to other Members by the consenting Member prior to the taking of any action which is not subject to approval at such meetings; or

(b) by the affirmative vote of the consenting Member to the taking of the action for which the consent is solicited at any meeting duly called and held to consider the taking of such action.

12.12. **Notices.** To be effective, unless otherwise specified in this Agreement, all notices and demands, consents and other communications under this Agreement must be in writing and must be given (a) by depositing the same in the United States mail, postage prepaid, certified or registered, return receipt requested, (b) by prepaid telegram, (c) by delivering the same in person and receiving a signed receipt therefore, (d) by sending the same by an internationally recognized overnight delivery service, (e) by facsimile, or (f) by email communication or other electronic communication. For purposes of notices, demands, consents and other communications under this Agreement, the addresses of the Members shall be as set forth on Schedule A to this Agreement and the address of the Company shall be as set forth in Section 1.4. Notices, demands, consents and other communications mailed in accordance with the foregoing clause (a) shall be deemed to have been given and made three Business Days following the date so mailed, provided that any notice to a Manager shall be effective only if and when received by such Manager. Notices, demands, consents and other communications given in accordance with the foregoing clauses (b) and (e) shall be deemed to have been given when sent. Notices, demands, consents and other communications given in accordance with the foregoing clauses (c) and (d) shall be deemed to have been given when delivered. Any Member or its assignee may designate a different address to which notices or demands shall thereafter be directed and such designation shall be made by written notice given in the manner hereinabove required. Notices to any assignee of a Member shall be given to such Member unless such assignee has designated a different address therefore by written notice given in the manner hereinabove required.

Exhibit 7 - Page 22 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000577

Hillcrest Funding Op. Agr.
2.6.2009

12.13. **Grant of Power of Attorney.** Each Member hereby irrevocably constitutes and appoints the Board of Managers as its true and lawful attorney and agent, in its name, place and stead to make, execute, acknowledge and, if necessary, to file and record:

(a) any certificates or other instruments or amendments thereof which the Company may be required to file under the Act or any other laws of the District of Columbia or pursuant to the requirements of any Governmental Authority having jurisdiction over the Company or which the Board of Managers shall deem it advisable to file, including, without limitation, this Agreement, any amended Agreement and a certificate of cancellation as provided in section 9.5;

(b) any certificates or other instruments (including counterparts of this Agreement with such changes as may be required by the law of other jurisdictions) and all amendments thereto which the Board of Managers deem appropriate or necessary to qualify, or continue the qualification of, the Company as a limited liability company and to preserve the limited liability status of the Company in the jurisdictions in which the Company may acquire investment interests;

(c) any certificates or other instruments which may be required in order to effectuate any change in the membership of the Company or to effectuate the dissolution and termination of the Company pursuant to section 9; and

(d) any amendments to any certificate or to this Agreement necessary to reflect any other changes made pursuant to the exercise of the powers of attorney contained in this section or pursuant to this Agreement.

12.14. **Irrevocable and Coupled with an Interest; Copies to Be Transmitted.** The powers of attorney granted under section 12.13 shall be deemed irrevocable and to be coupled with an interest. A copy of each document executed by the Board of Managers pursuant to the powers of attorney granted in section 12.13 shall be transmitted to each Member promptly after the date of the execution of any such document.

12.15. **Investment Purposes of Membership.** Each Member, by executing this Agreement, represents and warrants that its interest in the Company has been acquired by it for its own account for investment and not with a view to resale or distribution thereof and that it is fully aware that in agreeing to admit it as a Member, the other Members and the Company are relying upon the truth and accuracy of this representation and warranty.

12.16. **Limitation of Power of Attorney.** Except as expressly set forth in section 10, the powers of attorney granted under section 12.13 cannot be utilized by any Member for the purpose of increasing or extending any financial obligation or liability of any other Member or altering the method of division of profits and losses or the method of distributions in connection with the investment of a Member without the written consent of such Member.

12.17. **Confidentiality.** Each Member agrees, as set forth below, with respect to any information pertaining to the Company or its investments or Affiliates that is provided to such Member pursuant to this Agreement or otherwise (collectively, "Confidential Matter"), to treat as confidential all such information, together with any analyses, studies or other documents or records prepared by such Member, its Affiliates, or any representative or other Person acting on behalf of such Member (collectively, its "Authorized Representatives"), which contain or otherwise reflect or are generated from Confidential Matters, and will not, and will not permit any of its Authorized Representatives to, disclose any Confidential Matter, provided that any Member (or its Authorized Representative) may disclose any such information (a) as has become generally available to the public, (b) as to which such Member has received from a third party and about

23

Exhibit 7 - Page 23 of 20

Confidential Treatment Requested by Hillcrest Children's Center                    HCC-CIVLIT 00000578

Hillcrest Funding Op. Agr.
2.6.2009

which such Member has no knowledge of a confidentiality agreement between such third party and the Company, (c) as may be required or appropriate in any report, statement or testimony submitted to any Governmental Authority having or claiming to have jurisdiction over such Member (or its Authorized Representative) but only that portion of the data and information which, in the written opinion of counsel for such Member or Authorized Representative is required or would be required to be furnished to avoid liability for contempt or the imposition of any other material judicial or governmental penalty or censure, (d) as may be required or appropriate in response to any summons or subpoena or in connection with any litigation or (e) as to which each of the other Members has consented in writing.

12.18. Waiver of Trial by Jury. TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT OF TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY MATTER ARISING HEREUNDER.

### 13. DISPUTES

THIS PROVISION IS A WAIVER OF YOUR RIGHT TO HAVE DISPUTES OR CLAIMS ARISING OUT OF THIS ENGAGEMENT RESOLVED IN THE COURTS, INCLUDING THE RIGHT TO A TRIAL BY JURY. IF YOU HAVE ANY QUESTIONS OR RESERVATIONS ABOUT THIS PROVISION YOU SHOULD DISCUSS THIS MORE FULLY WITH US OR ANY ATTORNEY OF YOUR SELECTION PRIOR TO SIGNING.

13.1. Binding Arbitration. All disputes and claims of any type or description whatsoever arising out of, or in any way related to, this Agreement, whether between any or all of the Company, a Manager, and/or the Members, shall be submitted to and determined by final and binding arbitration.

13.2. Arbitration Notice. Arbitration proceedings may be initiated any party hereto upon notice (the "Arbitration Notice") to Board of Managers and the other party(s) to the dispute. The Arbitration Notice must specify all alleged disputes or claims.

13.3. Appointment of Arbitrator. The Board of Managers, upon receiving an Arbitration Notice, shall appoint an arbitrator from an arbitration entity that is recognized and based in the Washington, D.C. metropolitan area. Such arbitrator must be neutral, have no interest in the Company or any business of the Company, and be unaffiliated with any parties to the dispute. In the event that the Board of Managers fails to timely appoint an arbitrator, then the aggrieved party shall have the right to choose an arbitrator from an arbitration entity that is recognized and based in the Washington, D.C. metropolitan area.

13.4. Arbitration Costs. Each party to the arbitration shall bear all of its own costs and expenses, and its pro-rata share of the fees and expenses of the arbitrator in connection with the arbitration; provided, however, that if the arbitrator determines that an arbitration proceeding was commenced or caused by a party frivolously, without a reasonable belief, or primarily for the purpose of harassment or delay, the arbitrator may assess to such party the cost of such proceeding, including reasonable attorney's fees, to such party. Judgment on the award of the arbitrator may be entered in any court of competent jurisdiction.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands as of the date first set forth above.

Exhibit 7 - Page 24 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000579

Hillcrest Funding Op. Agr.
2.6.2009

Gibraltar SPE LLC

By: Garfield Taylor
Its: Manager

Hillcrest SPE LLC

By:
Its: Manager

THE MEMBERSHIP INTERESTS OF THE COMPANY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933 AS AMENDED (THE "ACT") OR ANY STATE SECURITIES LAWS OR THE LAWS OF ANY OTHER NATION OR JURISDICTION AND MAY NOT BE SOLD OR OTHERWISE TRANSFERRED UNLESS THE SAME HAVE BEEN INCLUDED IN AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE MANAGER OF THE COMPANY HAS BEEN RENDERED TO THE COMPANY THAT AN EXEMPTION FROM REGISTRATION UNDER APPLICABLE SECURITIES LAWS IS AVAILABLE. IN ADDITION, TRANSFER OR OTHER DISPOSITION OF THE MEMBERSHIP INTERESTS IS RESTRICTED AS PROVIDED IN THE OPERATING AGREEMENT.

25

Exhibit 7 - Page 25 of 20

Confidential Treatment Requested by Hillcrest Children's Center

HCC-CIVLIT 00000580

Hillcrest Funding Op. Agr.
2.6.2009

## Schedule A

| Class A Member | Membership Interest | Capital Contributions |
| --- | --- | --- |
| Hillcrest SPE LLC | 40% | $4,000 |

| Class B Member | Membership Interest | Capital Contributions |
| --- | --- | --- |
| Gibraltar SPE LLC | 60% | $6,000 |

| Total Interests | 100% | $10,000 |

26

Exhibit 7 - Page 26 of 20

**Confidential Treatment Requested by Hillcrest Children's Center**