# Exhibit 9

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HILLCREST CHILDREN'S CENTER, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. |
| | ) | 11-CV-00223 (JEB) |
| GIBRALTAR ASSET MANAGEMENT GROUP, LLC, | ) | |
| GIBRALTAR ASSET MANAGEMENT GROUP, INC., | ) | |
| GARFIELD TAYLOR, JEFFREY A. KING, | ) | |
| MAURICE TAYLOR, RANDOLPH TAYLOR, | ) | |
| BENJAMIN DALLEY, STUART H. GARY | ) | |
| and GARY & REGENHARDT PLLC, | ) | |
| Defendants. | ) | |
| | ) | |

EXPERT REPORT OF MARTIN S. WILCZYNSKI

May 7, 2012

Exhibit 9 - Page 1 of 26

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

# Table of Contents

I. INTRODUCTION ................................................................................................ 3

II. QUALIFICATIONS AND EXPERIENCE ....................................................... 3

III. DOCUMENTS CONSIDERED ....................................................................... 3

IV. SUMMARY OF OPINIONS ............................................................................ 4

V. BACKGROUND ................................................................................................ 5

VI. SUPPORT FOR OPINIONS ........................................................................... 8

EXHIBIT A - BIOGRAPHY ................................................................................. A-1

EXHIBIT B – DOCUMENTS CONSIDERED .................................................... B-1

EXHIBIT C – EXPERT DISCLOSURES ............................................................ C-1

EXHIBIT D 1-4 - INTEREST CALCULATION ON PRINCIPAL BETWEEN
MARCH 4, 2009 TO MARCH 31, 2012 ............................................................ D -1

EXHIBIT E - DETAIL OF TRANSACTIONS, GAINS/LOSSES AND BALANCE OF
HILLCREST FUNDING ACCOUNT ................................................................ E-1

Exhibit 9 - Page 2 of 26

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

# I. INTRODUCTION

This report is submitted for use in the captioned matter.  Counsel for the Plaintiff, Wilmer Cutler Pickering Hale and Dorr LLP, has asked me to provide opinions regarding the consistency of the defendants' trading activities and related withdrawals and payments with marketing presentations and Loan and Operating Agreements executed with the plaintiff, Hillcrest Children's Center ("Hillcrest").  In addition, Counsel for the Plaintiff has asked me to determine the amount of loss suffered by Hillcrest due to any inconsistency of trading strategy or otherwise unauthorized transactions executed by the defendants.

# II. QUALIFICATIONS AND EXPERIENCE

I am a Certified Public Accountant ("CPA"), a Certified Fraud Examiner, and am Certified in Financial Forensics by the American Institute of Certified Public Accountants.  I am a Senior Managing Director in the Forensic & Litigation Consulting division of FTI Consulting ("FTI"), an international consulting firm, where I lead the Forensic Accounting and Advisory Services practice.  My background includes 30 years of experience in public accounting, consulting and at the Securities and Exchange Commission.

My experience relevant to this assignment includes my role as co-leader of the global FTI team providing investigative support to the Trustee and his counsel in the landmark Bernard L. Madoff Investment Securities matter.  The Bernard L. Madoff ("Madoff") scheme is reported to be the greatest Ponzi scheme of all time and is alleged to have gone undetected for at least twenty years.  My involvement in the Madoff matter has enhanced my experience and knowledge of the various practices used within the investment advisory and trading industry.  Among other things, my work and the work of my team on Madoff included the (1) reconstruction, determination and measurement of cash inflows and outflows received from and made to account holders, (2) analysis of purported trading activity, (3) assessment of the trading strategies articulated by Madoff and the information reported on the account statements, and (4) analysis of the rates of returns reported by Madoff versus other then-existing securities market benchmarks.

Additional information concerning my qualifications and experience is contained in **Exhibit A** and **Exhibit C** to this Report.

# III. DOCUMENTS CONSIDERED

In performing this engagement, I and/or staff working under my direction have considered the documents detailed in **Exhibit B** to this Report.  I was provided with access to all the available documents I requested.  My opinions and conclusions throughout this report are based on my review of the discovery

3

Exhibit 9 - Page 3 of 26

record as well as my knowledge, training and experience.  As I understand, discovery is ongoing in this matter.  I may review additional documents, reports of experts, testimony of witnesses, and other material before I testify at trial, and I reserve the right to amend my opinions if required.

# IV. SUMMARY OF OPINIONS

### A. Representatives of Gibraltar Asset Management Group ("GAM"), neither returned Hillcrest's $8 million loan principal, nor fully paid the interest due on that loan

It is my opinion that representatives of GAM, acting through the Hillcrest Funding LLC account ("Hillcrest Funding") that they controlled, diverged from the 2009 Loan and Security Agreement ("Loan Agreement") and the 2009 Operating Agreement for Hillcrest Funding ("Operating Agreement"), and made significant unauthorized withdrawals. This conduct resulted in a loss of $6.6 million in principal for Hillcrest, and between $1.3 million and $5.0 million in interest on the principal entrusted to representatives of GAM.   In other words, it is my opinion that representatives of GAM's actions resulted in a total loss of between $7.9 million and $11.6 million for Hillcrest.  As detailed in this report, Hillcrest's loss of principal related to unauthorized withdrawals rather than to trading activity occurring in the Hillcrest Funding account.

### B. The $7.65 million withdrawn from the Hillcrest Funding account was unauthorized and did not meet the criteria for withdrawals in the Operating Agreement

In my review of the documents produced in this case, I have not seen any documentation evidencing analysis of the Hillcrest Funding account performance to ensure consistency with the criteria established in the Operating Agreement for Hillcrest Funding LLC; nor have I seen the results of votes by the Board of Managers (as defined by the Operating Agreement) authorizing any of the withdrawals from the Hillcrest Funding account.  Therefore, it is my opinion that the withdrawals made from the Hillcrest Funding account by representatives of GAM were not properly authorized.

### C. Trading activities by representatives of GAM, acting through the Hillcrest Funding account that they controlled, were inconsistent with the "covered call" options strategy GAM represented to Hillcrest

In documents provided by GAM to Hillcrest, GAM represented that it would use a "covered call" options trading strategy to invest the funds entrusted to them by the Hillcrest.  I have reviewed the detail of the transactions executed in the Hillcrest Funding account at Charles Schwab and have found that none of the approximate 2,750 trades were executed consistent with the described "covered call" options strategy.

### D. Representatives of GAM depleted the contributions made by Hillcrest by withdrawing $7.65 million and retaining the initial loan of $1.2 million

4

Exhibit 9 - Page 4 of 26

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

Although representatives of GAM, acting through the Hillcrest Funding account that they controlled, departed from the "covered call" options strategy GAM represented to Hillcrest, the trading activities within the Hillcrest Funding account during the period from the March 2009 inception to June 2010, when a notice of default was filed, resulted in a gain of $833,658. However, it was the withdrawals from the Hillcrest Funding account of $7.65 million that largely depleted the contributions made by Hillcrest. As discussed previously, the withdrawals were unauthorized and were not remitted to Hillcrest.

# V. BACKGROUND

### A.   History of Hillcrest Children's Center

Hillcrest Children's Center ("Hillcrest") is a non-profit entity founded in 1815 by an act of Congress. Originally called "Washington Orphan Society," it was founded to provide a home and care for orphaned and abandoned children after the War of 1812. Since then, Hillcrest has dedicated itself to helping children in need. It has grown into a center that provides outpatient mental health services for families, focused particularly on impoverished single mothers and their children. Hillcrest offers a wide range of services, including substance abuse treatment and prevention, psychiatric evaluation, parenting education, anger and stress management, crisis intervention, a range of counseling services, and other community services.[1]

### B.   Description of Solicitation by GAM and the "Covered Call" Strategy

During 2008, the overall US stock market was declining,[2] and the Hillcrest Board of Directors ("Hillcrest BOD") became dissatisfied with the companies providing investment advisory services for its endowment portfolio. As Hillcrest relies on the income from their endowment to provide services, the Hillcrest BOD decided it should conduct a search for a new investment advisor. The Hillcrest BOD identified several possible investment advisors and invited each of them to make a presentation of their investment advisory services.[3]

I have been informed by counsel that GAM made at least two presentations between June 16, 2008 and July 8, 2008. I have been further informed that Garfield Taylor ("Taylor") led the presentations at both of these meetings and that he touted GAM's investment management skills and "proprietary trading strategy."[4] In addition, the presentations stressed that GAM's professionals had "over 30 years of experience in the equity market, investment banking, and financial management."[5]

---

[1] www.hillcrest-dc.org, accessed on April 16, 2012.
[2] From 1/2/2008 through 12/31/2008, the S&P 500 was down 37.6% per information available on Yahoo Finance.
[3] Hillcrest BOD minutes from 10/16/2008, HCC-CIVLIT 00000789-792.
[4] HCC-CIVLIT 00000600.
[5] HCC-CIVLIT 00000599.

5

Exhibit 9 - Page 5 of 26

During these meetings, Taylor and other GAM representatives described GAM's "proprietary covered call" investment strategy as one that allowed them to pay below market prices on numerous stocks, giving the investments downside protection while still obtaining profits if the stock price increases, decreases or remains the same.[6]

## C.   Initial Loan of $1.2 Million from Hillcrest to GAM

After reviewing GAM's presentations and documentation, the Hillcrest BOD invested $1.2 million with Gibraltar Asset Management Group, Inc. ("GAM, Inc.") and executed a promissory note on July 14, 2008 for a six month trial period.  Although the initial loan agreement was made with Gibraltar Asset Management Group, Inc., I have seen nothing to suggest that this entity is different from Gibraltar Asset Management Group, LLC.  For example, all checks for interest payments made to Hillcrest were written from the Gibraltar Asset Management Group LLC account. This note required GAM to make monthly interest payments of $20,000 for six months with the entire $1.2 million principal due on January 14, 2009.[7]  GAM made interest payments in accordance with the terms of the promissory note, presumably confirming to the Hillcrest BOD that GAM could deliver on its claims.

## D.   New Loan of $8 Million from Hillcrest to GAM through Hillcrest Funding, LLC

In the fall of 2008, Hillcrest BOD continued to meet with investment advisors.  During the October 2008 Hillcrest BOD meeting, GAM representatives Taylor and Benjamin Dalley encouraged the Hillcrest BOD to invest more money with GAM and provided the Hillcrest BOD additional marketing materials touting GAM's investment capabilities.

At the January 13, 2009 Hillcrest BOD meeting, GAM's attorneys, Gary & Regenhardt PLLC, presented two investment options for Hillcrest.[8]  One option was to form a limited liability company that would be managed by Taylor and GAM and function as an investment vehicle.  This limited liability company would be owned by two special purpose entities – Gibraltar SPE, LLC and Hillcrest SPE, LLC.  The presentation by GAM's attorneys also indicated that there would be three managers of the limited liability company.  Gibraltar SPE, LLC would appoint an operations manager, and Hillcrest would appoint two administrative security mangers.[9]  Hillcrest would receive minimum monthly payments of $200,000 if Hillcrest invested $8 million in this option.[10]  According to the presentation by GAM's attorneys, Hillcrest's second option was to invest its funds pursuant to a private placement memorandum, which

---

[6] HCC-CIVLIT 0000601-614.
[7] HCC-CIVLIT 00000539-541.
[8] HCC-CIVLIT 00000800-802, HCC-CIVLIT 00000465-479.
[9] HCC-CIVLIT 00000465-479.
[10] HCC-CIVLIT 00001133.

Exhibit 9 - Page 6 of 26

offered Hillcrest "[l]ess control and less profit."[11] Ultimately, the Hillcrest BOD decided to invest additional funds with GAM under the first option presented at this January Hillcrest BOD meeting.[12]

With the assistance of GAM's attorneys, Gary & Regenhardt PLLC, the necessary entities were formed. In addition, a brokerage account was opened for Hillcrest Funding LLC at Charles Schwab ("Hillcrest Funding account").[13] On February 28, 2009, Hillcrest and GAM, acting through Hillcrest Funding LLC, executed the Loan Agreement and Operating Agreement.[14] According to the Operating Agreement, Hillcrest Funding, LLC consisted of two special purpose entities: Gibraltar SPE, LLC, and Hillcrest SPE, LLC. Gibraltar SPE, LLC would own 60% of Hillcrest Funding, LLC, and Hillcrest SPE, LLC, would own 40% of Hillcrest Funding, LLC.

### E. Terms of the new $8 Million Loan from Hillcrest

The Loan Agreement executed on February 28, 2009 does not include the rate for which the $8 million loan would accrue interest. Rather, it refers to the "form and substance" of an Exhibit A; however, Exhibit A has not been produced. However, in a July 2009 letter from GAM to the Hillcrest BOD, GAM provided its understanding of the $8 million loan arrangement whereby "Gibraltar would provide a guarantee to HCC a minimum of $200,000.00 a month" on the $8 million loan.[15] These $200,000 payments would equate to a 30% interest rate on the new loan, and as described below, were consistent with the monthly payments that GAM made to Hillcrest upon commencement of the $8 million investment arrangement.

### F. Transactions Related to the $8 Million Loan from Hillcrest

In order to fund the new $8 million loan to Hillcrest Funding, the Hillcrest BOD chose to transfer the $1.2 million in principal from their initial loan to GAM, Inc.[16] Rather than deposit check #1063 from GAM for the "Final Loan Repayment,"[17] Hillcrest's BOD instructed representatives of GAM, acting through Hillcrest Funding, to use the $1.2 million as part of the funding for the $8 million loan. As is detailed further in my Expert Report, beginning in March 2009, Hillcrest transferred the remaining $6.8 million to the Hillcrest Funding account. From April to October 2009, GAM made a total of $1.4 million in interest payments to Hillcrest on the $8 million loan, or $200,000 per month. Between March 2009 and March 2010, my analysis shows that representatives of GAM, acting through the Hillcrest Funding account that

---

[11] HCC-CIVLIT 00000465-479.
[12] HCC-CIVLIT 00000800-802.
[13] HCC-CIVLIT 00000465-479, Charles Schwab account #9248-1658.
[14] HCC-CIVLIT 00000548-553, HCC-CIVLIT 00000556-581.
[15] HCC-CIVLIT 00001133.
[16] HCC-CIVLIT 00000800-802.
[17] HCC-CIVLIT 00002042.

Exhibit 9 - Page 7 of 26

they controlled, withdrew or transferred approximately $7.65 Million in withdrawals (or transfers to accounts not controlled by Hillcrest).

# VI. SUPPORT FOR OPINIONS

## A. Representatives of GAM have neither returned Hillcrest Children's Center total $8 million loan principal nor fully paid the interest due on that loan

It is my opinion that the divergence by representatives of GAM, acting through the Hillcrest Funding account that they controlled, from the Loan Agreement and Operating Agreement, as well as significant unauthorized withdrawals resulted in a loss of $6.6 million in principal for Hillcrest Children's Center, and between $1.3 million and $5.0 million in interest on the principal entrusted to representatives of GAM.   In other words, it is my opinion that these actions resulted in a total loss of between $7.9 million and $11.6 million for Hillcrest.  As detailed in this report, Hillcrest's loss of principal related to unauthorized withdrawals rather than to trading activity occurring in the Hillcrest Funding account. Representative assumptions in support of my analysis are summarized in greater detail in the table and narrative that follows:

| Scenario | Principal[3] | Interest Earned | Total |
|---|---|---|---|
| Scenario 1 - Return on Investment in S&P 500 Index | $ 6,603,536 | $ 5,033,111 | $ 11,636,647 |
| Scenario 2 - $200,000 per Month Minimum | $ 6,603,536 | $ 3,890,548 | $ 10,494,084 |
| Scenario 3 - GAM Inc's Promised Interest Rate | $ 6,603,536 | $ 2,755,330 | $ 9,358,866 |
| Scenario 4 - DC Statutory Interest Rate | $ 6,603,536 | $ 1,310,070 | $ 7,913,606 |

### 1) Principal Contributions and Loss

In connection with the Loan Agreement, Hillcrest made just over $8 million in transfers of cash and securities to the Hillcrest Funding account between March and May 2009.  In return, Hillcrest received several monthly payments of $200,000, which Hillcrest understood to be interest payments related to the Loan Agreement.  For purposes of my analysis, however, I have considered the monthly "interest" payments as a return of Hillcrest's principal and analyzed the interest portion of the Loan Agreement separately.  The principal contributions and monthly payments from GAM to Hillcrest are detailed below.[18]  This $6.6 million of principal has not been returned to Hillcrest.

---

[18] Hillcrest chose to transfer the $1.2 million in principal from their previous loan to Gibraltar into this new $8 million loan (HCC-CIVLIT 00000548-553).  Hillcrest was paid interest on the initial loan of $1.2 million until May 6, 2009 (HCC-CIVLIT 00002045).  Although the $1.2 million was never deposited into the Hillcrest Funding LLC account, I have included the $1.2 million of principal as having been deposited on May 13, 2009 since it was in GAM's possession at that time.  The figures in the chart below may be subject to immaterial rounding.

8

Exhibit 9 - Page 8 of 26

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

| Month | Principal from Hillcrest to Hillcrest Funding LLC | Payments from GAM to Hillcrest Children's Center | Net Principal Provided to Hillcrest Funding | Source |
|---|---|---|---|---|
| Mar-09 | $ 2,482,159 | | $ 2,482,159 | HCC-CIVLIT 00000016-17 |
| Apr-09 | $ 3,321,328 | $ (200,000) | $ 5,603,486 | HCC-CIVLIT 00000070-73, 2044 |
| May-09 | $ 2,200,050 | $ (200,000) | $ 7,603,536 | HCC-CIVLIT 00000172, 1898, 2042 |
| Jun-09 | | $ (200,000) | $ 7,403,536 | HCC-CIVLIT 00001900 |
| Jul-09 | | $ (200,000) | $ 7,203,536 | HCC-CIVLIT 00001901 |
| Aug-09 | | $ (200,000) | $ 7,003,536 | HCC-CIVLIT 00001902 |
| Sep-09 | | $ (200,000) | $ 6,803,536 | HCC-CIVLIT 00001903 |
| Oct-09 | | $ (200,000) | $ 6,603,536 | HCC-CIVLIT 00001904 |
| | $ 8,003,536 | $ (1,400,000) | $ 6,603,536 | |

## 2) Interest Payments and Loss

As mentioned above, the Loan Agreement does not include the rate for which the $8 million loan would accrue interest. Rather, it refers to the "form and substance" of an Exhibit A; however, Exhibit A has not been produced. In the absence of a single agreement identifying a precise interest rate for the $8 million loan for Hillcrest, I have outlined four plausible scenarios for the interest that is due to Hillcrest on the loan as described below and as supported by **Exhibits D.1 to D.4** to this Report.

### Interest Scenario 1 – Standard &Poor's 500 Index ("S&P 500")

The majority of Hillcrest's principal contributions that were made to Hillcrest Funding were the contributions of existing equities holdings. If Hillcrest had held those equities and continued with a similar profile of investing, their returns may more closely have aligned with the rate of returns from the S&P 500. "The S&P 500 has been widely regarded as the best single gauge of the large cap U.S. Equities market since the index was first published in 1957...The index includes 500 leading companies in leading industries of the U.S. Economy, capturing 75% coverage of U.S. equities."[19] I have also used this benchmark in my work to determine an appropriate rate of return in similar trading loss cases. Using the S&P 500 index from the date of the principal contributions through March 2012 results in returns due to Hillcrest of $5,033,111.

---

[19] http://www.standardandpoors.com/indices/sp-500/en/us/?indexId=spusa-500-usduf--p-us-l--, accessed on April 19, 2012.

9

Exhibit 9 - Page 9 of 26

**Interest Scenario 2 - $200,000 per month minimum**

In a July 2009 letter from GAM to the Hillcrest BOD, GAM provided its understanding of the arrangement whereby "Gibraltar would provide a guarantee to HCC a minimum of $200,000.00 a month."[20] This scenario is consistent with the stream of payments that had been made to that point by GAM and continued until October 2009. For purposes of my analysis, I have included the $200,000 per month as interest earned from inception through Hillcrest's notice of default in June 2010. From June 2010 to March 2012, I have used the DC Statutory rate of 6%. Under this scenario, Hillcrest is due $3,890,548 in interest.

**Interest Scenario 3 – 20% annual rate of return**

As described above, in July 2008 Hillcrest entered into a $1.2 million loan with GAM, Inc. with a stated interest rate of 20%.[21] In this scenario I have assumed a similar interest rate of 20%, and used this rate in the calculation of interest on the initial contributions made by Hillcrest in March 2009 through the date of Hillcrest's notice of default in June 2010. From June 2010 to March 2012, I have used the DC Statutory rate of 6% to calculate the interest. Under this scenario, Hillcrest is due $2,755,330 in interest.

**Interest Scenario 4 – DC Statutory Rate of 6%**

The District has an established statutory rate for situations where the interest is not expressly stated in the contract. "The rate of interest in the District upon the loan … in the absence of expressed contract, is 6% per annum."[22] This scenario assumes the 6% rate from the date of the initial contribution or March 2009 through March 2012. Hillcrest is due $1,310,070 under this scenario.

**B. The $7,651,000 withdrawn from the Hillcrest Funding account was unauthorized and did not meet the criteria for withdrawals in the Operating Agreement**

The process for authorization of withdrawals from Hillcrest Funding is established in the Operating Agreement[23] dated February 28, 2009. Section 5.2 (a) of the Operating Agreement describes various instances in which the "Board of Managers shall have the exclusive right, power and authority." The Operating Agreement defines the Board of Managers as the Administrative/Security Manager (Two Managers appointed by Hillcrest SPE LLC) and the Operations Manager (One Manager appointed by

---

[20] HCC-CIVLIT 00001133.
[21] HCC-CIVLIT 00000539 - HCC-CIVLIT 00000541.
[22] DC ST § 28-3302.
[23] HCC-CIVLIT 00000556-581.

10

Exhibit 9 - Page 10 of 26

Gibraltar SPE LLC).[24]  Section 5.2 (a) (iv) describes the Board of Managers power with respect to withdrawals as follows:

> *(iv) To authorize, by a unanimous vote, each withdrawal of funds from the Trading Account, which vote shall take place on the last day of each month, and which authorization shall be given upon the Board of Managers finding that (A) an amount equal to the original principal of the Hillcrest Loan shall remain in the Trading Account subsequent to the proposed withdrawal, (B) the Company is not in default under the Hillcrest Loan, and (C) that the Company's Purpose shall not be impeded, impaired or otherwise harmed by the proposed withdrawal.  All withdrawals shall be deposited directly into the Company's bank account and then immediately distributed in accordance with Section 4.2 of this Agreement.[25]*

And section 4.2 (b) describes the distribution of funds as follows:

> *(b) Reserve Account.  As security for the Hillcrest Loan, the Company has agreed to establish a Reserve Account.  Until the Reserve Account reaches a balance equal to twenty-five percent (25%) of the Principal of the Hillcrest Loan ("Fully Funded"), Distributable Cash shall be disbursed as follows:*
>
> *(i) The first One Hundred Eighty-Nine Thousand Dollars ($189,000) shall be distributed to the Class A Member[26]; and then*
>
> *(ii) The lesser of (a) twenty percent (20%) of the total Distributable Cash, or (b) all Distributable Cash remaining after making the required distributions, as set forth in Section 4.2 (b) (i) immediately above to the Class A Member, shall be deposited into the Reserve Account, which shall be held in an interest-bearing, federally insured banking account acceptable to the Board of Managers; and then*
>
> *(iii) The next Three Hundred Thousand Dollars ($300,000) shall be distributed to the Class B Member; and then*
>
> *(iv) The balance, if any, shall be distributed to the Members in proportion to their Membership Interests.[27]*

---

[24] HCC-CIVLIT 00000556, HCC-CIVLIT 00000567-568 and HCC-CIVLIT 00000581.
[25] HCC-CIVLIT 00000568.
[26] Per Schedule A to the Operating Agreement, Hillcrest SPE LLC is the "Class A" member and Gibraltar SPE LLC is the "Class B" member.
[27] HCC-CIVLIT 00000566.

11

Exhibit 9 - Page 11 of 26

The following withdrawals were made from the Hillcrest Funding account:

| Date | Disbursed to Unknown Recipient | | Disbursed to Schwab Account 12807100[28] | | Source |
|------|---|---|---|---|--------|
| 3/10/09 | $ | (300,000) | | | HCC-CIVLIT 00000016 |
| 3/13/09 | $ | (800,000) | | | HCC-CIVLIT 00000016 |
| 3/23/09 | | | $ | (250,000) | HCC-CIVLIT 00000016 |
| 3/30/09 | $ | (300,000) | | | HCC-CIVLIT 00000016 |
| 4/3/09 | $ | (1,500,000) | | | HCC-CIVLIT 00000070 |
| 4/6/09 | | | $ | (400,000) | HCC-CIVLIT 00000070 |
| 5/5/09 | | | $ | (2,500,000) | HCC-CIVLIT 00000171 |
| 5/11/09 | $ | (300,000) | | | HCC-CIVLIT 00000171 |
| 5/22/09 | $ | (300,000) | | | HCC-CIVLIT 00000171 |
| 6/9/09 | $ | (340,000) | | | HCC-CIVLIT 00000251 |
| 6/16/09 | $ | (115,000) | | | HCC-CIVLIT 00000251 |
| 6/23/09 | $ | (111,000) | | | HCC-CIVLIT 00000252 |
| 7/2/09 | $ | (100,000) | | | HCC-CIVLIT 00000291 |
| 7/24/09 | | | $ | (200,000) | HCC-CIVLIT 00000291 |
| 8/20/09 | | | $ | (110,000) | HCC-CIVLIT 00000300 |
| 3/4/10 | $ | (25,000) | | | HCC-CIVLIT 00000358 |
| | **$** | **(4,191,000)** | **$** | **(3,460,000)** | **Total $7,651,000** |

In my review of the documents produced in this case, I have not seen any documentation evidencing analysis to ensure consistency with the Operating Agreement criteria in section 5.2(a)(iv)(A)-(C) quoted above or the results of votes by the Board of Managers authorizing any of the withdrawals from the Hillcrest Funding account.  Therefore, the withdrawals from the Hillcrest Funding account do not appear to have been properly authorized.

In the absence of evidence of authorization, I analyzed whether the withdrawals could have met the criteria outlined within the Operating Agreement as required by Sections 5.2 and 4.2, as outlined above. My conclusion is that the Hillcrest Funding account never met all of the criteria required for distribution. A summary of the results of my analysis is included below:

---

[28] I am not aware that an actual "Reserve Account" was established or funded according to the Operating Agreement provisions.  My analysis recognizes the possibility that distributions from Hillcrest Funding to Charles Schwab Account 12807100 represented funding of the Reserve Account.  However, since the statements for Charles Schwab Account 12807100 have not yet been produced, and because the actual status, ownership and activity conducted within this account (including the account balance) are therefore not currently known, I have assumed that this Charles Schwab Account 12807100 is controlled by the defendants.

Exhibit 9 - Page 12 of 26

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

| Operating Agreement Criteria Governing Withdrawals | Was Operating Agreement Criteria for Withdrawals Met? | | | | | |
|---|---|---|---|---|---|---|
| | **Mar-09** | **Apr-09** | **May-09** | **Jun-09** | **Jul-09** | **Aug-09** |
| 5.2 (a) (iv) (A) – an amount equal to the original principal[29] of the Hillcrest Loan shall remain in the Trading Account subsequent to the proposed withdrawal[30] | ✓ | ✓ | ✗ | ✗ | ✗ | ✗ |
| 5.2 (a) (iv) (B) – the Company is not in default under the Hillcrest Loan | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 5.2 (a) (iv) (C) – the Company's Purpose (owning, managing and growing Company assets) are not impeded, impaired or otherwise harmed | ✓ | ✗ | ✗ | ✗ | ✗ | ✗ |
| 4.2 (b) – Was the Reserve Account funded to 25% of the Hillcrest Principal?[31] | ✗ | ✗ | O | O | O | O |

✓  =Criteria was met

✗  =Criteria was not met

O  =It is unclear if the criteria was met

## C. Trading activities made by representatives of GAM, acting through the Hillcrest Funding account that they controlled, were inconsistent with the "covered call" options strategy GAM represented to Hillcrest

In documents provided by GAM to Hillcrest Children's Center, GAM represented that it would use a "covered call" options trading strategy to invest the funds entrusted to them by Hillcrest. GAM further described the covered call options strategy as follows:

> The covered call strategy is an investment strategy in which an investor buys a certain amount of shares of a stock and sells a call option contract for the shares the investor owns…The stock is held in the same brokerage account from which the investor writes the call, and the stock fully collateralizes, or "covers," the obligation conveyed by writing a call option contract.

> Buying a call option provides the right for someone to buy a specified quantity of a security at a set price ("strike price") at some time on or before

---

[29] For purposes of my analysis, I have assumed that the "original principal" amount was equal to the cumulative cash and securities that Hillcrest had transferred into the Hillcrest Funding account at the point in time being analyzed.

[30] Further to this point, Section 4.1 of the Operating Agreement expressly states "no member shall have the right to withdraw or demand distributions of any amount in its Capital Accounts, except as expressly provided in this Section 4." Section 5.2(c) of the Operating Agreement states explicitly that "the Administrative/Security Manager [a representative to be appointed by Hillcrest] is granted the exclusive right, power, and authority to authorize any withdrawal of funds from the trading account where such a withdrawal would reduce the balance of the Trading Account to less than the full amount of the Principal of the Hillcrest Loan."

[31] As stated previously, the actual status, ownership and activity conducted within Charles Schwab Account 12807100 (including the account balance) are not currently known. As such, it is unclear if the balance reflected therein meets the criteria. The transfers into Charles Schwab Account 12807100 in March and April 2009 would not have been sufficient to adequately fund the account. Subsequently, although it is possible the balance met the 25% criteria, because I have been unable to review the account activity in Charles Schwab Account 12807100, I cannot say whether the requirement was met.

13

Exhibit 9 - Page 13 of 26

> *expiration...Upon the option holder's choice to exercise the option, the party who sold...the option must fulfill the terms of the contract.*[32]

This description is consistent with my understanding of a "covered call" strategy. It involves (1) buying shares of stock for a specific company and (2) selling a call option for the same stock and number of shares held. I have reviewed the detail of the transactions executed in the Hillcrest Funding account and found that none of the approximate 2,750 trades were executed consistent with this strategy.

GAM also represented to Hillcrest that it would pursue a conservative investment plan for the funds that Hillcrest had loaned to GAM. The materials provided by GAM to Hillcrest state:

> *The covered call is widely regarded as a **conservative strategy** because it decreases the risk of stock ownership.*

> *..the covered call strategy is considered one of the <u>least risky</u> options trading strategies. Studies show that covered call strategies have the effect of enhancing the average, reducing the standard deviation of returns, and improving the risk-adjusted returns of a balanced portfolio.*[32]

In addition to GAM departing from its self-described conservative "covered call" strategy, representatives of GAM, acting through the Hillcrest Funding account that they controlled, engaged in other trading activity that was also inconsistent with representations made to Hillcrest, including the following:

Actual Trading Activity in Hillcrest Funding Account
9248-1658
(March 2009 – September 2010)

| GAM Representation | |
|---|---|
| "Gibraltar does not buy options; we sell them."[32] | Gibraltar purchased 1340 options contracts totaling approximately $45 million. |
| "...Gibraltar **NEVER** uses margin, or, in other words never borrows money to purchase stock."[32] | The account was in a margin position on 33 days and reached a maximum margin loan from Charles Schwab of $8,771,504, resulting in a cost to Hillcrest Funding of $23,400 in margin interest. See Exhibit E for further detail. |

## D. Representatives of GAM depleted the contributions made by Hillcrest by withdrawing $7.65 million and retaining the initial loan of $1.2 million

Although GAM departed from the "covered call" options strategy it represented to Hillcrest, the trading activities within the Hillcrest Funding account during the period from March 2009 through April 30, 2010, the date when account activity effectively ceased, resulted in a gain of $833,658.[33] It was the

---

[32] Attachment to email produced by Benjamin Dalley dated September 16, 2008 from Benjamin Dalley to MFreeman@hillcrestchildrenscenter.org – Subject: Gibraltar Information. It is my understanding that documents produced by Benjamin Dalley were not bates stamped.

[33] Gains from trading activities were not at all unexpected as the overall stock market performed exceptionally well during this time period. From March 1, 2009 through April 30, 2010, the S&P 500 jumped 61%, the Russell 2000 Index soared 84%, and the Dow Jones Industrial Average increased 56%. In addition, the vast majority of trading in the Hillcrest Funding account occurred during the period from March through August 2009. Overall market gains during this period were similarly impressive: The S&P 500 index rose 39%, the Russell 2000 Index increased 47%,

14

Exhibit 9 - Page 14 of 26

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

*withdrawals* from the Hillcrest Funding account made by representatives of GAM that largely depleted the contributions made by Hillcrest as shown below.  As discussed previously, the withdrawals identified were unauthorized and were not remitted to Hillcrest.

|  | Hillcrest Funding | GAM, Inc. | Total |
|---|---|---|---|
| Cash and Equities Contributed by Hillcrest | $    6,803,536 | $   1,200,000 | $   8,003,536 |
| Net Gain on Equities Trading | $    2,459,650 |  | $   2,459,650 |
| Net Loss on Options Trading | $  (1,625,992) |  | $  (1,625,992) |
| Dividends and Interest Earned, net | $        37,498 |  | $        37,498 |
| Margin Interest and Fees | $      (23,480) |  | $      (23,480) |
| Withdrawals | $  (7,651,000) | $  (1,200,000) | $  (8,851,000) |
| Balance at April 30, 2010 | $           212 | $          - | $           212 |

See additional detail and composition of trading activity within the Hillcrest Funding account in **Exhibit E** to this Report.

\*\*\*\*\*

Executed this 7th day of May 2012 at Washington, District of Columbia

Martin S. Wilczynski

---

and the Dow Jones Industrial Average jumped 34%.  Given the stock market's performance during these periods, it is reasonable that a positive return was generated from trading within the Hillcrest Funding investment portfolio.

Exhibit 9 - Page 15 of 26

## Exhibit A - Biography

Martin Wilczynski is a senior managing director in the FTI Consulting Forensic and Litigation practice and is the leader of its Forensic Accounting Investigations practice. Based in Washington DC, Mr. Wilczynski is an accounting and investigative professional with nearly 30 years of professional experience. His background includes 10 years of auditing experience at an international accounting firm and 6 years on the staff of the United States Securities and Exchange Commission, where he served for 5 years within the Enforcement Division.

Since leaving the SEC in 1998, Mr. Wilczynski has focused his consulting practice almost exclusively on SEC enforcement proceedings, internal and forensic investigations, FCPA and anti-corruption reviews, litigation support, financial reporting and revenue recognition issues. He has worked with outside counsel in representing boards and special committees in a number of complex, fact-finding accounting investigations involving financial restatements, whistleblower allegations and SEC enforcement and reporting issues. He has also been responsible for conducting several forensic "Section 10A" examinations resulting from concerns raised by auditors of public companies. Mr. Wilczynski has assisted counsel on many occasions in translating and communicating the results of those investigations to the SEC staff as well as to other regulators.

Among other high profile engagements, Mr. Wilczynski serves as co-leader of the global FTI Consulting team providing investigative and litigation support to the Trustee and his counsel on the landmark Bernard L. Madoff Investment Securities matter. Mr. Wilczynski also led a team providing technical accounting and consulting assistance to counsel on the UnitedHealth Group Inc. options backdating engagement, as well as a number of other global accounting investigations.

While he was at the SEC, Mr. Wilczynski was responsible for numerous financial and accounting investigations, including the critical evaluation of investigatory evidence used in making recommendations to the Commission. In addition, he has expertise with respect to actions brought against accounting and auditing professionals pursuant to Rule 102(e) of the Commission's Rules of Practice. In 1997, Mr. Wilczynski was awarded the SEC's Sydney C. Orbach Award in recognition of significant accounting contributions to the commission's full disclosure program and to the protection of investors.

Mr. Wilczynski received an M.B.A. in Finance from the Fuqua School of Business at Duke University and a B.S. in Accounting with highest honors from the Rochester Institute of Technology. He is a certified public accountant, a certified fraud examiner and is credentialed as a certified financial forensics

Exhibit 9 - Page 16 of 26

professional with the AICPA. He is a member of the American Institute of Certified Public Accountants, Association of Certified Fraud Examiners, Association of SEC Alumni and the SEC Historical Society.

A-2

Exhibit 9 - Page 17 of 26

## Exhibit B – Documents Considered

As cited in my report and:

1) Pleadings, including:

    a.  Complaint: Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al. dated January 28, 2011

    b.  United States Securities and Exchange Commission vs. Garfield Taylor, Incorporated, et al. dated November 18, 2011

2) Documents produced in discovery including:

B-1

Exhibit 9 - Page 18 of 26

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

| Beginning | Ending |
|---|---|
| HCC-CIVLIT 00000001 | HCC-CIVLIT 00000014 |
| HCC-CIVLIT 00000015 | HCC-CIVLIT 00000038 |
| HCC-CIVLIT 00000039 | HCC-CIVLIT 00000076 |
| HCC-CIVLIT 00000077 | HCC-CIVLIT 00000176 |
| HCC-CIVLIT 00000177 | HCC-CIVLIT 00000254 |
| HCC-CIVLIT 00000255 | HCC-CIVLIT 00000292 |
| HCC-CIVLIT 00000293 | HCC-CIVLIT 00000300 |
| HCC-CIVLIT 00000301 | HCC-CIVLIT 00000308 |
| HCC-CIVLIT 00000309 | HCC-CIVLIT 00000320 |
| HCC-CIVLIT 00000321 | HCC-CIVLIT 00000326 |
| HCC-CIVLIT 00000327 | HCC-CIVLIT 00000332 |
| HCC-CIVLIT 00000333 | HCC-CIVLIT 00000340 |
| HCC-CIVLIT 00000341 | HCC-CIVLIT 00000350 |
| HCC-CIVLIT 00000351 | HCC-CIVLIT 00000360 |
| HCC-CIVLIT 00000361 | HCC-CIVLIT 00000366 |
| HCC-CIVLIT 00000367 | HCC-CIVLIT 00000372 |
| HCC-CIVLIT 00000373 | HCC-CIVLIT 00000378 |
| HCC-CIVLIT 00000379 | HCC-CIVLIT 00000382 |
| HCC-CIVLIT 00000383 | HCC-CIVLIT 00000392 |
| HCC-CIVLIT 00000393 | HCC-CIVLIT 00000400 |
| HCC-CIVLIT 00000401 | HCC-CIVLIT 00000406 |
| HCC-CIVLIT 00000407 | HCC-CIVLIT 00000412 |
| HCC-CIVLIT 00000413 | HCC-CIVLIT 00000418 |
| HCC-CIVLIT 00000419 | HCC-CIVLIT 00000424 |
| HCC-CIVLIT 00000425 | HCC-CIVLIT 00000430 |
| HCC-CIVLIT 00000431 | HCC-CIVLIT 00000436 |
| HCC-CIVLIT 00000437 | HCC-CIVLIT 00000442 |
| HCC-CIVLIT 00000443 | HCC-CIVLIT 00000446 |
| HCC-CIVLIT 00000447 | HCC-CIVLIT 00000450 |
| HCC-CIVLIT 00000451 | HCC-CIVLIT 00000454 |
| HCC-CIVLIT 00000458 | HCC-CIVLIT 00000459 |
| HCC-CIVLIT 00000460 | |
| HCC-CIVLIT 00000461 | HCC-CIVLIT 00000462 |
| HCC-CIVLIT 00000463 | |
| HCC-CIVLIT 00000464 | |
| HCC-CIVLIT 00000465 | HCC-CIVLIT 00000479 |
| HCC-CIVLIT 00000539 | HCC-CIVLIT 00000541 |
| HCC-CIVLIT 00000548 | HCC-CIVLIT 00000553 |
| HCC-CIVLIT 00000556 | HCC-CIVLIT 00000581 |
| HCC-CIVLIT 00000598 | HCC-CIVLIT 00000627 |

B-2

Exhibit 9 - Page 19 of 26

| Beginning | Ending |
| --- | --- |
| HCC-CIVLIT 00000658 | HCC-CIVLIT 00000661 |
| HCC-CIVLIT 00000662 | HCC-CIVLIT 00000665 |
| HCC-CIVLIT 00000666 | HCC-CIVLIT 00000667 |
| HCC-CIVLIT 00000668 | HCC-CIVLIT 00000671 |
| HCC-CIVLIT 00000672 | HCC-CIVLIT 00000674 |
| HCC-CIVLIT 00000675 | HCC-CIVLIT 00000677 |
| HCC-CIVLIT 00000678 | HCC-CIVLIT 00000686 |
| HCC-CIVLIT 00000687 | HCC-CIVLIT 00000689 |
| HCC-CIVLIT 00000690 | HCC-CIVLIT 00000695 |
| HCC-CIVLIT 00000734 | HCC-CIVLIT 00000759 |
| HCC-CIVLIT 00000789 | HCC-CIVLIT 00000792 |
| HCC-CIVLIT 00000793 | HCC-CIVLIT 00000797 |
| HCC-CIVLIT 00000800 | HCC-CIVLIT 00000802 |
| HCC-CIVLIT 00000936 | HCC-CIVLIT 00000937 |
| HCC-CIVLIT 00000938 | HCC-CIVLIT 00000952 |
| HCC-CIVLIT 00000965 | HCC-CIVLIT 00000966 |
| HCC-CIVLIT 00000981 | |
| HCC-CIVLIT 00001131 | |
| HCC-CIVLIT 00001132 | HCC-CIVLIT 00001137 |
| HCC-CIVLIT 00001132 | HCC-CIVLIT 00001137 |
| HCC-CIVLIT 00001158 | |
| HCC-CIVLIT 00001898 | |
| HCC-CIVLIT 00001899 | |
| HCC-CIVLIT 00001900 | |
| HCC-CIVLIT 00001901 | |
| HCC-CIVLIT 00001902 | |
| HCC-CIVLIT 00001903 | |
| HCC-CIVLIT 00001904 | |
| HCC-CIVLIT 00001905 | |
| HCC-CIVLIT 00002041 | HCC-CIVLIT 00002044 |
| HCC-CIVLIT 00002045 | HCC-CIVLIT 00002046 |

Gibraltar FAQ email dated September 16, 2008 and FAQ attachment

January 2009 - Mary 2009 Gibraltar Financials.pdf

www.hillcrest-dc.org

finance.yahoo.com

www.standardandpoors.com

District of Columbia Official Code § 28-3302

B-3

Exhibit 9 - Page 20 of 26

## Exhibit C – Expert Disclosures

1) **Expert Testimony (Last 4 years)**

    a.   Deposition Testimony – No Trial Testimony

        i.   Ronald W. Davis vs Engineered Support Systems, Inc. (Circuit Court of St. Louis, Missouri; Twenty First Judicial Circuit – 2011)

            1.   Testimony on behalf of plaintiff concerning unjust enrichment claims relating to stock option awards. (Trial pending).

2) **List of Publications (Last 10 years)** – none

3) **Fee Arrangements -** FTI Consulting is typically compensated at separate hourly rates for each staff member devoting time to the engagement. Invoices are rendered monthly after the completion of services. Professional staff hourly rates for staff working on this matter range from $250 to $675. My billing rate is $675 per hour. FTI Consulting has agreed to provide our services to Hillcrest Children's Center on a pro bono basis.

Exhibit 9 - Page 21 of 26

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

Exhibit D.1

**Interest Calculation on Principal between March 4, 2009 to March 31, 2012**
**Scenario 1 - S&P 500 Monthly Rate of Return**

| Month | Beginning Balance | Investment1 | Payments to Hillcrest | S&P Monthly ROR | Interest Earned2 | Ending Balance |
|---|---|---|---|---|---|---|
| Mar-09 | - | 2,482,158.72 | | 0.09 | 184,619.11 | 2,666,777.83 |
| Apr-09 | 2,666,777.83 | 3,321,327.70 | (200,000.00) | 0.09 | 340,688.23 | 6,128,793.76 |
| May-09 | 6,128,793.76 | 2,200,050.00 | (200,000.00) | 0.05 | 384,598.60 | 8,513,442.36 |
| Jun-09 | 8,513,442.36 | | (200,000.00) | 0.00 | 1,677.59 | 8,315,119.95 |
| Jul-09 | 8,315,119.95 | | (200,000.00) | 0.07 | 614,978.71 | 8,730,098.66 |
| Aug-09 | 8,730,098.66 | | (200,000.00) | 0.03 | 292,423.77 | 8,822,522.43 |
| Sep-09 | 8,822,522.43 | | (200,000.00) | 0.04 | 314,878.83 | 8,937,401.26 |
| Oct-09 | 8,937,401.26 | | (200,000.00) | (0.02) | (176,442.78) | 8,560,958.48 |
| Nov-09 | 8,560,958.48 | | | 0.06 | 491,047.12 | 9,052,005.60 |
| Dec-09 | 9,052,005.60 | | | 0.02 | 160,884.34 | 9,212,889.93 |
| Jan-10 | 9,212,889.93 | | | (0.04) | (340,671.94) | 8,872,217.99 |
| Feb-10 | 8,872,217.99 | | | 0.03 | 253,012.99 | 9,125,230.98 |
| Mar-10 | 9,125,230.98 | | | 0.06 | 536,512.45 | 9,661,743.43 |
| Apr-10 | 9,661,743.43 | | | 0.01 | 142,584.19 | 9,804,327.62 |
| May-10 | 9,804,327.62 | | | (0.08) | (803,744.20) | 9,000,583.42 |
| Jun-10 | 9,000,583.42 | | | (0.05) | (484,941.56) | 8,515,641.86 |
| Jul-10 | 8,515,641.86 | | | 0.07 | 585,662.61 | 9,101,304.46 |
| Aug-10 | 9,101,304.46 | | | (0.05) | (431,858.73) | 8,669,445.73 |
| Sep-10 | 8,669,445.73 | | | 0.09 | 759,063.75 | 9,428,509.48 |
| Oct-10 | 9,428,509.48 | | | 0.04 | 347,471.50 | 9,775,980.98 |
| Nov-10 | 9,775,980.98 | | | (0.00) | (22,348.49) | 9,753,632.49 |
| Dec-10 | 9,753,632.49 | | | 0.07 | 636,853.45 | 10,390,485.94 |
| Jan-11 | 10,390,485.94 | | | 0.02 | 235,340.74 | 10,625,826.68 |
| Feb-11 | 10,625,826.68 | | | 0.03 | 339,589.63 | 10,965,416.31 |
| Mar-11 | 10,965,416.31 | | | (0.00) | (11,541.90) | 10,953,874.41 |
| Apr-11 | 10,953,874.41 | | | 0.03 | 312,176.58 | 11,266,051.00 |
| May-11 | 11,266,051.00 | | | (0.01) | (152,143.23) | 11,113,907.77 |
| Jun-11 | 11,113,907.77 | | | (0.02) | (202,896.19) | 10,911,011.58 |
| Jul-11 | 10,911,011.58 | | | (0.02) | (234,274.96) | 10,676,736.63 |
| Aug-11 | 10,676,736.63 | | | (0.06) | (606,333.93) | 10,070,402.70 |
| Sep-11 | 10,070,402.70 | | | (0.07) | (722,703.05) | 9,347,699.65 |
| Oct-11 | 9,347,699.65 | | | 0.11 | 1,006,929.56 | 10,354,629.21 |
| Nov-11 | 10,354,629.21 | | | (0.01) | (52,347.51) | 10,302,281.70 |
| Dec-11 | 10,302,281.70 | | | 0.01 | 87,948.12 | 10,390,229.82 |
| Jan-12 | 10,390,229.82 | | | 0.04 | 452,794.43 | 10,843,024.26 |
| Feb-12 | 10,843,024.26 | | | 0.04 | 440,137.18 | 11,283,161.43 |
| Mar-12 | 11,283,161.43 | | | 0.03 | 353,486.18 | 11,636,647.61 |
| | | 8,003,536.42 | (1,400,000.00) | | 5,033,111.19 | |

Notes:

1 - Hillcrest chose to transfer the $1.2 million in principle from their previous loan to Gibraltar into the new $8 million loan (HCC-CIVLIT 00000548-553). Hillcrest was paid interest on the initial loan of $1.2 million until May 6, 2009 (HCC-CIVLIT 00002045). Although the $1.2 million was never deposited into the Hillcrest Funding LLC account, I have included the $1.2 million of principal as having been deposited on May 13, 2009 since it was in GAM's possession.

2 -Interest is calculated based upon the dates of transfer, and is calculated using the end of month change of the S&P 500. In addition, this calculation uses simple compounding of the principle amount.

Sources: HCC-CIVLIT 00002045-46; HCC-CIVLIT 00002041-42; HCC-CIVLIT 00000015 - 176; S&P 500 Index Data

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

Exhibit D.2

**Interest Calculation on Principal between March 4, 2009 to March 31, 2012**
**Scenario 2 - $200,000 Per Month Minimum**

| Month | Beginning Balance | Investment1 | Payments to Hillcrest | Interest Earned2 | Ending Balance |
|-------|------------------|-------------|----------------------|------------------|----------------|
| Mar-09 | - | 2,482,158.72 | | | 2,482,158.72 |
| Apr-09 | 2,482,158.72 | 3,321,327.70 | (200,000.00) | 200,000.00 | 5,803,486.42 |
| May-09 | 5,803,486.42 | 2,200,050.00 | (200,000.00) | 200,000.00 | 8,003,536.42 |
| Jun-09 | 8,003,536.42 | | (200,000.00) | 200,000.00 | 8,003,536.42 |
| Jul-09 | 8,003,536.42 | | (200,000.00) | 200,000.00 | 8,003,536.42 |
| Aug-09 | 8,003,536.42 | | (200,000.00) | 200,000.00 | 8,003,536.42 |
| Sep-09 | 8,003,536.42 | | (200,000.00) | 200,000.00 | 8,003,536.42 |
| Oct-09 | 8,003,536.42 | | (200,000.00) | 200,000.00 | 8,003,536.42 |
| Nov-09 | 8,003,536.42 | | | 200,000.00 | 8,203,536.42 |
| Dec-09 | 8,203,536.42 | | | 200,000.00 | 8,403,536.42 |
| Jan-10 | 8,403,536.42 | | | 200,000.00 | 8,603,536.42 |
| Feb-10 | 8,603,536.42 | | | 200,000.00 | 8,803,536.42 |
| Mar-10 | 8,803,536.42 | | | 200,000.00 | 9,003,536.42 |
| Apr-10 | 9,003,536.42 | | | 200,000.00 | 9,203,536.42 |
| May-10 | 9,203,536.42 | | | 200,000.00 | 9,403,536.42 |
| Jun-10 | 9,403,536.42 | | | 47,017.68 | 9,450,554.10 |
| Jul-10 | 9,450,554.10 | | | 47,252.77 | 9,497,806.87 |
| Aug-10 | 9,497,806.87 | | | 47,489.03 | 9,545,295.91 |
| Sep-10 | 9,545,295.91 | | | 47,726.48 | 9,593,022.39 |
| Oct-10 | 9,593,022.39 | | | 47,965.11 | 9,640,987.50 |
| Nov-10 | 9,640,987.50 | | | 48,204.94 | 9,689,192.44 |
| Dec-10 | 9,689,192.44 | | | 48,445.96 | 9,737,638.40 |
| Jan-11 | 9,737,638.40 | | | 48,688.19 | 9,786,326.59 |
| Feb-11 | 9,786,326.59 | | | 48,931.63 | 9,835,258.22 |
| Mar-11 | 9,835,258.22 | | | 49,176.29 | 9,884,434.51 |
| Apr-11 | 9,884,434.51 | | | 49,422.17 | 9,933,856.69 |
| May-11 | 9,933,856.69 | | | 49,669.28 | 9,983,525.97 |
| Jun-11 | 9,983,525.97 | | | 49,917.63 | 10,033,443.60 |
| Jul-11 | 10,033,443.60 | | | 50,167.22 | 10,083,610.82 |
| Aug-11 | 10,083,610.82 | | | 50,418.05 | 10,134,028.87 |
| Sep-11 | 10,134,028.87 | | | 50,670.14 | 10,184,699.02 |
| Oct-11 | 10,184,699.02 | | | 50,923.50 | 10,235,622.51 |
| Nov-11 | 10,235,622.51 | | | 51,178.11 | 10,286,800.62 |
| Dec-11 | 10,286,800.62 | | | 51,434.00 | 10,338,234.63 |
| Jan-12 | 10,338,234.63 | | | 51,691.17 | 10,389,925.80 |
| Feb-12 | 10,389,925.80 | | | 51,949.63 | 10,441,875.43 |
| Mar-12 | 10,441,875.43 | | | 52,209.38 | 10,494,084.81 |
| | | 8,003,536.42 | (1,400,000.00) | 3,890,548.39 | |

Notes:

1 - Hillcrest chose to transfer the $1.2 million in principle from their previous loan to Gibraltar into the new $8 million loan (HCC-CIVLIT 00000548-553). Hillcrest was paid interest on the initial loan of $1.2 million until May 6, 2009 (HCC-CIVLIT 00002045). Although the $1.2 million was never deposited into the Hillcrest Funding LLC account, I have included the $1.2 million of principal as having been deposited on May 13, 2009 since it was in GAM's possession.

2 - Interest payments are assumed to be $200,000 per month through May 2010. After Hillcrest's default filing on June 8, 2010, the DC statutory interest rate of 6% is used (June 9, 2012 to March 31, 2012). This calculation scenario assumes that after the June 8th default filing, Hillcrest no longer expected to receive $200,000 per month in interest.

Sources: HCC-CIVLIT 00002045-46; HCC-CIVLIT 00002041-42; HCC-CIVLIT 00000015 - 176; DC ST § 28-3302

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

Exhibit D.3

**Interest Calculation on Principal between March 4, 2009 to March 31, 2012**
**Scenario 3 - 20% Annual Rate of Return**

| Month | Beginning Balance | Investment1 | Payments to Hillcrest | Interest Earned2 | Ending Balance |
|---|---|---|---|---|---|
| Mar-09 | - | 2,482,158.72 | | 36,031.34 | 2,518,190.06 |
| Apr-09 | 2,518,190.06 | 3,321,327.70 | (200,000.00) | 57,977.21 | 5,697,494.97 |
| May-09 | 5,697,494.97 | 2,200,050.00 | (200,000.00) | 113,560.88 | 7,811,105.85 |
| Jun-09 | 7,811,105.85 | | (200,000.00) | 127,962.88 | 7,739,068.73 |
| Jul-09 | 7,739,068.73 | | (200,000.00) | 128,661.90 | 7,667,730.62 |
| Aug-09 | 7,667,730.62 | | (200,000.00) | 127,472.93 | 7,595,203.55 |
| Sep-09 | 7,595,203.55 | | (200,000.00) | 126,475.61 | 7,521,679.17 |
| Oct-09 | 7,521,679.17 | | (200,000.00) | 125,253.79 | 7,446,932.96 |
| Nov-09 | 7,446,932.96 | | | 124,115.55 | 7,571,048.51 |
| Dec-09 | 7,571,048.51 | | | 126,184.14 | 7,697,232.65 |
| Jan-10 | 7,697,232.65 | | | 128,287.21 | 7,825,519.86 |
| Feb-10 | 7,825,519.86 | | | 130,425.33 | 7,955,945.19 |
| Mar-10 | 7,955,945.19 | | | 132,599.09 | 8,088,544.28 |
| Apr-10 | 8,088,544.28 | | | 134,809.07 | 8,223,353.35 |
| May-10 | 8,223,353.35 | | | 137,055.89 | 8,360,409.24 |
| Jun-10 | 8,360,409.24 | | | 67,812.21 | 8,428,221.45 |
| Jul-10 | 8,428,221.45 | | | 42,141.11 | 8,470,362.56 |
| Aug-10 | 8,470,362.56 | | | 42,351.81 | 8,512,714.37 |
| Sep-10 | 8,512,714.37 | | | 42,563.57 | 8,555,277.94 |
| Oct-10 | 8,555,277.94 | | | 42,776.39 | 8,598,054.33 |
| Nov-10 | 8,598,054.33 | | | 42,990.27 | 8,641,044.60 |
| Dec-10 | 8,641,044.60 | | | 43,205.22 | 8,684,249.83 |
| Jan-11 | 8,684,249.83 | | | 43,421.25 | 8,727,671.07 |
| Feb-11 | 8,727,671.07 | | | 43,638.36 | 8,771,309.43 |
| Mar-11 | 8,771,309.43 | | | 43,856.55 | 8,815,165.98 |
| Apr-11 | 8,815,165.98 | | | 44,075.83 | 8,859,241.81 |
| May-11 | 8,859,241.81 | | | 44,296.21 | 8,903,538.02 |
| Jun-11 | 8,903,538.02 | | | 44,517.69 | 8,948,055.71 |
| Jul-11 | 8,948,055.71 | | | 44,740.28 | 8,992,795.98 |
| Aug-11 | 8,992,795.98 | | | 44,963.98 | 9,037,759.96 |
| Sep-11 | 9,037,759.96 | | | 45,188.80 | 9,082,948.76 |
| Oct-11 | 9,082,948.76 | | | 45,414.74 | 9,128,363.51 |
| Nov-11 | 9,128,363.51 | | | 45,641.82 | 9,174,005.33 |
| Dec-11 | 9,174,005.33 | | | 45,870.03 | 9,219,875.35 |
| Jan-12 | 9,219,875.35 | | | 46,099.38 | 9,265,974.73 |
| Feb-12 | 9,265,974.73 | | | 46,329.87 | 9,312,304.60 |
| Mar-12 | 9,312,304.60 | | | 46,561.52 | 9,358,866.13 |
| | | 8,003,536.42 | (1,400,000.00) | 2,755,329.71 | |

Notes:

1 - Hillcrest chose to transfer the $1.2 million in principle from their previous loan to Gibraltar into the new $8 million loan (HCC-CIVLIT 00000548-553). Hillcrest was paid interest on the initial loan of $1.2 million until May 6, 2009 (HCC-CIVLIT 00002045). Although the $1.2 million was never deposited into the Hillcrest Funding LLC account, I have included the $1.2 million of principal as having been deposited on May 13, 2009 since it was in GAM's possession.

2 - Interest is calculated based upon the dates of transfer and compounding the interest monthly. An interest rate of 20% is used through June 8, 2010. From June 9, 2012 to March 31, 2012, the DC statutory interest rate of 6% is used. This calculation scenario assumes that after the June 8th default filing, Hillcrest no longer expected to receive 20% interest.

Sources: HCC-CIVLIT 00002045-46; HCC-CIVLIT 00002041-42; HCC-CIVLIT 00000015 - 176; DC ST § 28-3302

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

**Exhibit D.4**

**Interest Calculation on Principal between March 4, 2009 to March 31, 2012**
**Scenario 4 - DC Statutory Rate of 6%**

| Month | Beginning Balance | Investment1 | Payments to Hillcrest | Interest Earned2 | Ending Balance |
|---|---|---|---|---|---|
| Mar-09 | - | 2,482,158.72 | | 10,809.40 | 2,492,968.12 |
| Apr-09 | 2,492,968.12 | 3,321,327.70 | (200,000.00) | 17,267.05 | 5,631,562.87 |
| May-09 | 5,631,562.87 | 2,200,050.00 | (200,000.00) | 33,738.60 | 7,665,351.48 |
| Jun-09 | 7,665,351.48 | | (200,000.00) | 37,660.09 | 7,503,011.57 |
| Jul-09 | 7,503,011.57 | | (200,000.00) | 37,418.28 | 7,340,429.85 |
| Aug-09 | 7,340,429.85 | | (200,000.00) | 36,605.38 | 7,177,035.23 |
| Sep-09 | 7,177,035.23 | | (200,000.00) | 35,851.84 | 7,012,887.07 |
| Oct-09 | 7,012,887.07 | | (200,000.00) | 35,032.18 | 6,847,919.25 |
| Nov-09 | 6,847,919.25 | | | 34,239.60 | 6,882,158.84 |
| Dec-09 | 6,882,158.84 | | | 34,410.79 | 6,916,569.64 |
| Jan-10 | 6,916,569.64 | | | 34,582.85 | 6,951,152.49 |
| Feb-10 | 6,951,152.49 | | | 34,755.76 | 6,985,908.25 |
| Mar-10 | 6,985,908.25 | | | 34,929.54 | 7,020,837.79 |
| Apr-10 | 7,020,837.79 | | | 35,104.19 | 7,055,941.98 |
| May-10 | 7,055,941.98 | | | 35,279.71 | 7,091,221.69 |
| Jun-10 | 7,091,221.69 | | | 35,456.11 | 7,126,677.80 |
| Jul-10 | 7,126,677.80 | | | 35,633.39 | 7,162,311.19 |
| Aug-10 | 7,162,311.19 | | | 35,811.56 | 7,198,122.74 |
| Sep-10 | 7,198,122.74 | | | 35,990.61 | 7,234,113.36 |
| Oct-10 | 7,234,113.36 | | | 36,170.57 | 7,270,283.92 |
| Nov-10 | 7,270,283.92 | | | 36,351.42 | 7,306,635.34 |
| Dec-10 | 7,306,635.34 | | | 36,533.18 | 7,343,168.52 |
| Jan-11 | 7,343,168.52 | | | 36,715.84 | 7,379,884.36 |
| Feb-11 | 7,379,884.36 | | | 36,899.42 | 7,416,783.78 |
| Mar-11 | 7,416,783.78 | | | 37,083.92 | 7,453,867.70 |
| Apr-11 | 7,453,867.70 | | | 37,269.34 | 7,491,137.04 |
| May-11 | 7,491,137.04 | | | 37,455.69 | 7,528,592.73 |
| Jun-11 | 7,528,592.73 | | | 37,642.96 | 7,566,235.69 |
| Jul-11 | 7,566,235.69 | | | 37,831.18 | 7,604,066.87 |
| Aug-11 | 7,604,066.87 | | | 38,020.33 | 7,642,087.20 |
| Sep-11 | 7,642,087.20 | | | 38,210.44 | 7,680,297.64 |
| Oct-11 | 7,680,297.64 | | | 38,401.49 | 7,718,699.13 |
| Nov-11 | 7,718,699.13 | | | 38,593.50 | 7,757,292.62 |
| Dec-11 | 7,757,292.62 | | | 38,786.46 | 7,796,079.09 |
| Jan-12 | 7,796,079.09 | | | 38,980.40 | 7,835,059.48 |
| Feb-12 | 7,835,059.48 | | | 39,175.30 | 7,874,234.78 |
| Mar-12 | 7,874,234.78 | | | 39,371.17 | 7,913,605.95 |
| | | 8,003,536.42 | (1,400,000.00) | 1,310,069.53 | |

Notes:

1 - Hillcrest chose to transfer the $1.2 million in principle from their previous loan to Gibraltar into the new $8 million loan (HCC-CIVLIT 00000548-553). Hillcrest was paid interest on the initial loan of $1.2 million until May 6, 2009 (HCC-CIVLIT 00002045). Although the $1.2 million was never deposited into the Hillcrest Funding LLC account, I have included the $1.2 million of principal as having been deposited on May 13, 2009 since it was in GAM's possession.

2 - Interest is calculated based upon the dates of transfer, and simple compounding is used to calculate the interest earned at the DC statutory rate of 6% per year.

Sources: HCC-CIVLIT 00002045-46; HCC-CIVLIT 00002041-42; HCC-CIVLIT 00000015 - 176; DC ST § 28-3302

D-4

Exhibit 9 - Page 25 of 26

Hillcrest Children's Center vs. Gibraltar Asset Management Group, LLC, et al.
Expert Report of Martin S. Wilczynski
May 7, 2012

Exhibit E

**Detail of Transactions, Gains/Losses and Balance of Hillcrest Funding Account**
**Compiled from Charles Schwab Bank Statements for Hillcrest Funding LLC**

| Cash Transactions | Mar-09 | Apr-09 | May-09 | Jun-09 | Jul-09 | Aug-09 | SubTotal March 2009 - August 2009 | Sep 2009 - April 2010 | All Activity |
|---|---|---|---|---|---|---|---|---|---|
| Cash Contributed by Hillcrest | $ 57,594.47 | $ 332,598.70 | $ | $ | | | $ 390,193.17 | | $ 390,193.17 |
| Shares Contributed by Hillcrest | 2,424,564.25 | 2,988,729.36 | 1,000,050.00 | | | | 6,413,343.61 | | 6,413,343.61 |
| Dividends and Interest Earned | 1,527.71 | 5.83 | 2,348.23 | 2,100.47 | 4.82 | 1.11 | 5,988.17 | 1.38 | 5,989.55 |
| Less: Margin Interest Paid | (2,557.13) | (11,616.06) | (9,225.74) | | | | (23,398.93) | (23,398.93) | (23,398.93) |
| Less: Fees | - | | (75.00) | (75.00) | | | (75.00) | (5.73) | (80.73) |
| Less: Income Reinvested | | (2,336.17) | (2,336.17) | | | | (2,336.17) | | (2,336.17) |
| Less: Withdrawals | (1,650,000.00) | (1,900,000.00) | (3,100,000.00) | (566,000.00) | (300,000.00) | (110,000.00) | (7,626,000.00) | (25,000.00) | (7,651,000.00) |
| Net Increase (Decrease) from Cash Transactions | 831,129.30 | 1,409,717.83 | (2,109,163.68) | (563,974.53) | (299,995.18) | (109,998.89) | (942,285.15) | (25,004.35) | (867,289.50) |
| **Composition of Securities Trading Activities** | | | | | | | | | |
| Net Realized Gains (Losses) On: | | | | | | | | | |
| Equities Transferred by Hillcrest | (93,447.43) | (20,910.59) | | 10,179.10 | | | (104,178.92) | | (104,178.92) |
| Equities Transactions | 630,776.52 | 158,953.04 | 1,774,099.27 | | | | 2,563,828.83 | - | 2,563,828.83 |
| Options Transactions | 1,510,190.89 | 2,366,771.16 | (959,780.40) | (3,352,005.82) | 319,847.71 | (1,505,394.47) | (1,620,370.93) | (5,620.86) | (1,625,991.79) |
| Net Unrealized Gains (Losses) On: | | | | | | | | | |
| Equities Transferred by Hillcrest Held at Month End | | | 6,856.17 | | | | - | | |
| Equities Held at End of Month | (113,385.00) | 225,545.88 | - | | | | - | | |
| Options Held At End of Month | | 65,645.02 | (460,806.03) | 52,831.94 | (730,239.65) | (15,661.45) | (15,661.45) | | |
| Interest on Corp. Bonds and Govt Obligations | - | 33,844.21 | - | | | | 33,844.21 | | 33,844.21 |
| Reverse Unrealized Position from Prior Period | | 113,385.00 | (291,190.90) | 453,949.86 | (52,831.94) | 730,239.65 | | 15,661.45 | |
| Net Gain (Loss) from Securities Trading Transactions | 1,934,134.98 | 2,943,233.72 | 69,178.11 | (2,835,044.92) | (463,223.88) | (790,816.27) | 857,461.74 | 10,040.59 | 867,502.33 |
| Ending Balance in Hillcrest Funding LLC Account | $ 2,765,264.28 | $ 7,118,215.83 | $ 5,078,230.26 | $ 1,679,210.81 | $ 915,991.75 | $ 15,176.59 | $ 15,176.59 | $ 212.83 | $ 212.83 |
| **Composition of Ending Balance** | | | | | | | | | |
| Cash | $ 323,265.09 | $ | $ 688,403.68 | 259,730.40 | 306,111.34 | $ 2,006.18 | $ 2,006.18 | 212.42 | $ 212.42 |
| Equities | 2,442,000.00 | $ 11,264,618.00 | | | | $ | $ - | $ - | $ - |
| Mutual Funds | | | 1,006,906.17 | | | $ | $ - | $ - | $ - |
| Options | | 851,030.00 | 3,382,920.00 | 1,419,480.00 | 609,880.00 | $ 13,170.00 | 13,170.00 | $ - | $ - |
| Margin Loan Balance | | (4,997,432.54) | | | | | $ - | $ - | $ - |
| | $ 2,765,265.09 | $ 7,118,215.46 | 5,078,229.85 | 1,679,210.49 | 915,991.34 | $ 15,176.18 | 15,176.18 | 212.42 | 212.42 |
| Difference | $ 0.81 | $ (0.37) | $ (0.41) | $ (0.41) | $ (0.41) | $ (0.41) | $ (0.41) | $ (0.41) | $ (0.41) |

E-1

Exhibit 9 - Page 26 of 26